## UNITED STATES DISTRICT COURT
## DISTRICT OF HAWAII

**UNITED STATES OF AMERICA**

    **v.**

**SANDWICH ISLES COMMUNICATIONS, INC.,**

**ALBERT S. N. HEE,**

**RANDALL Y. C. HO,**

**JANEEN-ANN OLDS,**

**CLEARCOM, INC.,**

**HOʻOPAʻA INSURANCE CORP.,**

**PA MAKANI LLC**

**PANIOLO CABLE COMPANY, LLC,**

**WAIMANA ENTERPRISES, INC.,**

**HAWAII NATIONAL BANK,**

**MAUI ELECTRIC CO. LTD.,**

**HAWAIIAN ELECTRIC COMPANY, INC.,**

**CENTRAL PACIFIC BANK,**

**KEKAULUOHI, INC.,**

**DELL FINANCIAL SERVICES LLC, and**

**Case No. 18-145**

1

**R. M. TOWILL CORPORATION**

    **Defendants.**

## COMPLAINT

As and for its Complaint against Sandwich Isles Communications, Inc. ("SIC"), Albert S. N. Hee ("Hee"), Randall Y. C. Ho ("Ho"), Janeen-Ann Olds ("Olds"), ClearCom, Inc. ("ClearCom"), Hoʻopaʻa Insurance Corp. ("Hoʻopaʻa"), Pa Makani LLC ("Pa Makani"), Paniolo Cable Company, LLC ("Paniolo"), Waimana Enterprises, Inc. ("Waimana"), Hawaii National Bank, Maui Electric Co. Ltd. ("Maui Electric"), Hawaiian Electric Company, Inc. ("Hawaiian Electric"), Central Pacific Bank, Kekauluohi, Inc. ("Kekauluohi"), Dell Financial Services LLC ("Dell Financial"), and R. M. Towill Corporation ("Towill"), the United States, on behalf of the Rural Utilities Service ("RUS"), alleges as follows:

## OVERVIEW

1.    RUS loaned money to SIC to finance SIC's acquisition and installation of the equipment needed for a telecommunications network in Hawaii.

2.    As security for the loan described in the preceding paragraph, RUS received and perfected a first mortgage in SIC's real property and a first priority security interest in all of SIC's personal property except its vehicles.

2

3.     SIC has breached agreements relating to the loans that RUS provided.

4.     Consequently, RUS is entitled to a judgment against SIC for money damages and for interest, charges to cover the United States' cost of processing and handling a delinquent claim, penalties, and the United States' costs of collection, including its attorneys' reasonable fees, and for foreclosure on property pledged by SIC to RUS to the exclusion of the rights of the other persons potentially having an interest in this property, including SIC, Hawaii National Bank, Maui Electric, Hawaiian Electric, Central Pacific Bank, Kekauluohi, Dell Financial and Towill.

5.     On information and belief, SIC became insolvent no later than May 1, 2013.

6.     In view of this insolvency, the United States is entitled to judgment on behalf of RUS for claims (a) under the Federal Debt Collection Procedures Act, 28 U.S.C. §§ 3001–3008 (the "FDCPA"), for SIC's making post-insolvency transfers and incurring obligations to Waimana, ClearCom, Ho'opa'a, Paniolo, Pa Makani and others; (b) under the Federal Priority Statute, 31 U.S.C. § 3713, against Hee, Ho, and Olds for causing SIC to make post-insolvency payments on some or all of SIC's debt to SIC's parent and its affiliates in preference to paying the United States' claim against SIC; and (c) against Hee and Olds, as SIC's Directors, for breaching their

fiduciary duties to the United States as a creditor of SIC by authorizing or permitting SIC's post-insolvency payments to one or more SIC affiliates or insiders in preference to the United States.

## PARTIES

7.     With respect to the loans by RUS, the United States has acted through the Department of Agriculture (the "Department") and the Administrator of RUS.

8.     RUS is an agency of the Department through which loans are made to persons providing telephone service in rural areas as a means of assuring the availability of adequate telephone service to the widest practicable number of rural users of such service.

9.     On information and belief, SIC is a Hawaii corporation.

10.     On information and belief, SIC's mailing address is 77-808 Kamehameha Highway, Mililani, HI 96789.

11.     On information and belief, Breanne Hee Kahalewai is SIC's corporate agent.

12.     On information and belief, Olds's address is 118 Kailuana Pl, Kailua, HI 96734-1662.

13.     On information and belief, at times relevant to the facts alleged in this

Complaint, Olds has been SIC's President and Secretary and one of its Directors.

14.     On information and belief, Olds became SIC's President on a date in 2013 after August 30, 2013.

15.     On information and belief, Olds became a SIC Director and its Secretary during 2013.

16.     On information and belief, at times relevant to the facts alleged in this Complaint, Hee has been SIC's President and Secretary and one of its Directors.

17.     On information and belief, at times relevant to the facts alleged in this Complaint, Hee's mailing address has been 1155 Akipola St., Kailua, HI 96734.

18.     Hee is presently incarcerated at the Federal Correctional Institution, 4200 Bureau Rd. N., Terre Haute, IN 47802.

19.     On information and belief, Hee was SIC's President until a date in 2013 after August 30, 2013.

20.     On information and belief, Hee remained SIC's Secretary until a date in 2013.

21.     On information and belief, Hee remained a SIC Director until July 13, 2015.

22.     On information and belief, Ho is one of SIC's officers and at times

5

relevant to the facts alleged in this Complaint has been SIC's Chief Financial Officer.

23.     On information and belief, Ho's mailing address is 3876 Nikolo St., Honolulu, HI 96815.

24.     On information and belief, ClearCom is a Hawaii corporation.

25.     On information and belief, ClearCom's mailing address is P.O. Box 893128, Mililani, HI 96789, and the name and address of its corporate agent are Wendy Hee, 77-808 Kamehameha Highway, Mililani, HI 96789.

26.     On information and belief, Hoʻopaʻa is a Hawaii corporation.

27.     On information and belief, Hoʻopaʻa's mailing address is c/o Artex Risk Solutions Inc., 1357 Kapiolani Blvd., Suite 1430, Honolulu, HI 96814, and the name and address of its corporate agent are Fay Okamoto, c/o Artex Risk Solutions Inc., 1357 Kapiolani Blvd., Suite 1430, Honolulu, HI 96814.

28.     On information and belief, Pa Makani is a Hawaii corporation.

29.     On information and belief, Pa Makani's mailing address is P.O. Box 893128, Mililani, HI 96789, and the name and address of its corporate agent are Waimana Enterprises, Inc., 77-808 Kamehameha Hwy., Mililani, HI 96789

30.     On information and belief, Paniolo is a Delaware limited liability

6

company.

31.   On information and belief, Paniolo's mailing address is P.O. Box 6182, Kaneohe, HI 96744.

32.   On information and belief, the name and address of Paniolo's corporate agent are Lex R. Smith, 999 Bishop Street, Suite 2600, Honolulu, HI 96813.

33.   On information and belief, Waimana is a Hawaii corporation.

34.   On information and belief, Waimana's mailing address is P.O. Box 893128, Mililani, HI 96789.

35.   On information and belief, the name and address of Waimana's corporate agent are Wendy Roylo Hee, 77-808 Kamehameha Highway, Mililani, HI 96789.

36.   On information and belief, Hawaii National Bank is a bank organized under the federal banking laws of the United States.

37.   On information and belief, Hawaii National Bank's address is 45 North King Street, 7th Floor, Honolulu, HI 96817.

38.   On information and belief, Maui Electric is a Hawaii corporation.

39.   On information and belief, Maui Electric's mailing address is Attn. Corporate Secretary, P.O. Box 2750, Honolulu, HI 96840.

40.     On information and belief, the name and address of Maui Electric's corporate agent are Susan A. Li, 900 Richards Street, Room 414, Honolulu, HI 96813.

41.     On information and belief, Hawaiian Electric is a Hawaii corporation.

42.     On information and belief, Hawaiian Electric's address is Attn. Corporate Secretary, P.O. Box 2750, Honolulu, HI 96840.

43.     On information and belief, the name and address of Hawaiian Electric's corporate agent are Susan A. Li, 900 Richards Street, Room 414, Honolulu, HI 96813.

44.     On information and belief, Central Pacific Bank is a bank organized under the laws of Hawaii.

45.     On information and belief, the name and address of Central Pacific Bank's corporate agent are Glenn K.C. Ching, 220 South King Street, Honolulu, HI 96813.

46.     On information and belief, Kekauluohi was a Hawaii corporation that has been dissolved.

47.     On information and belief, Kekauluohi's last known mailing address is 1003 Bishop St., Suite 2700, Honolulu, HI 96813.

48.     On information and belief, the last known name and address of Kekauluohi's corporate agent are Hee, 1003 Bishop St., Floor 27, Honolulu, HI 96813.

49.     On information and belief, Dell Financial is a Delaware limited liability company.

50.     On information and belief, Dell Financial's registered agent and its address are Corporation Service Company, 251 Little Falls Dr., Wilmington, DE 19808.

51.     On information and belief, Towill is a Hawaii corporation.

52.     On information and belief, Towill's registered agent and his address are Greg Hiyakumoto, 2024 N. King St., Suite 200, Honolulu, HI 96819.

## JURISDICTION

53.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because it arises under the Rural Electrification Act of 1936, as amended, 7 U.S.C. §§ 901-950bb-2, under 28 U.S.C. § 2410, under the Federal Debt Collection Procedure Act, 28 U.S.C. §§ 3001–3308, and under the Federal Priority Statute, 31 U.S.C. § 3713.

54.     This Court also has subject matter jurisdiction over this action under 28

U.S.C. § 1345 because the United States has commenced it.

55.     Jurisdiction over Hee, Ho, Olds, Waimana, ClearCom, Hoʻopaʻa, Paniolo, and Pa Makani is also proper under 28 U.S.C. § 3012.

## VENUE

56.     Venue is proper in this district under 28 U.S.C. § 1391(b).

## FACTUAL BASIS FOR CLAIMS

### SIC's Obligations to RUS

57.     SIC, as borrower, and the United States and the Rural Telephone Bank, as lenders, entered into Telephone Loan Contracts dated as of September 26, 1997, January 22, 1999, and April 2, 2001 (each, a "Loan Agreement").

58.     At the time of the Loan Agreements, the Rural Telephone Bank was a corporate instrumentality of the United States subject to the supervision and direction of the Department's Secretary.

59.     The Loan Agreements relate to extensions of credit to SIC by RUS and the Rural Telephone Bank (such extensions of credit as defined in the recitals of the Loan Agreements and as used herein collectively, the "Loan").

60.     A true copy of the September 26, 1997 Loan Agreement is attached hereto as Exhibit 1.

61.     A true copy of the January 22, 1999 Loan Agreement is attached hereto

10

as Exhibit 2.

62.     A true copy of the April 2, 2001 Loan Agreement is attached hereto as Exhibit 3.

63.     The September 26, 1997 Loan Agreement (at § 1.1) permitted SIC to use proceeds from the Loans "to partially finance the Project."

64.     The September 26, 1997 Loan Agreement's recitals define the "Project" as "the improvement and operation of the Existing Facilities and the construction and operation of additional telephone facilities to serve approximately four thousand eight hundred thirty-nine subscribers in addition to those now being served . . . ."

65.     The September 26, 1997 Loan Agreement's recitals define SIC's existing facilities as those "serving approximately -0- subscribers."

66.     With its application for the Loan, SIC provided RUS with a map of its proposed telephone service area (the "Service Area").

67.     To obtain the Loan, in the September 26, 1997 Loan Agreement (at § 4.5), SIC agreed to "furnish adequate telephone service to the widest practicable number of rural users in" the Service Area.

68.     In connection with the Loan, SIC executed and delivered to the United

11

States three promissory notes dated March 2, 1998, June 1, 1999 and April 2, 2001 (each, a "RUS Note").

69.     A true copy of the March 2, 1998 RUS Note is attached hereto as Exhibit 4.

70.     A true copy of the June 1, 1999 RUS Note is attached hereto as Exhibit 5.

71.     A true copy of the April 2, 2001 RUS Note is attached hereto as Exhibit 6.

72.     Also in connection with the Loan, SIC executed and delivered to the Rural Telephone Bank three promissory notes dated March 2, 1998, June 1, 1999 and April 2, 2001 (each, an "RTB Note").

73.     A true copy of the March 2, 1998 RTB Note is attached hereto as Exhibit 7.

74.     A true copy of the June 1, 1999 RTB Note is attached hereto as Exhibit 8.

75.     A true copy of the April 2, 2001 RTB Note is attached hereto as Exhibit 9.

76.     In 2006, the Rural Telephone Bank was dissolved and RUS succeeded

to its interests.

77.    SIC borrowed a total of $166,749,150 in principal amount under the RUS Notes and the RTB Notes.

78.    Through March 31, 2018, on the RUS Notes and the RTB Notes, SIC owes principal and interest totaling more than $128 million.

79.    As of January 1, 2013, for the advances under the RUS Notes and the RTB Notes, SIC was obligated to make to RUS monthly installment payments of principal and interest totaling over $1 million (the "Installment Amount").

<u>SIC's Pledges of Its Real and Personal Property</u>

80.    To secure the Loan, SIC entered into a Mortgage, Security Agreement and Financing Statement dated as of March 2, 1998 (the "Original Mortgage").

81.    SIC and RUS entered into amendments to the Original Mortgage dated November 2, 1998 and March 28, 2000 (each, a "Mortgage Amendment").

82.    SIC and RUS also entered into supplements to the Original Mortgage dated June 1, 1999 and April 2, 2001 (each, a "Mortgage Supplement").

83.    A true copy of the Original Mortgage is attached hereto as Exhibit 10.

84.    A true copy of the November 2, 1998 Mortgage Amendment is attached hereto as Exhibit 11.

13

85.     A true copy of the March 28, 2000 Mortgage Amendment is attached hereto as Exhibit 12.

86.     A true copy of the June 1, 1999 Mortgage Supplement is attached hereto as Exhibit 13.

87.     A true copy of the April 2, 2001 Mortgage Supplement is attached hereto as Exhibit 14.

88.     References in this Complaint to the "Mortgage" are to the Original Mortgage, as amended by the Mortgage Amendments and as supplemented by the Mortgage Supplements.

89.     In the Original Mortgage (at Granting Clause), SIC granted the United States and the Rural Telephone Bank a first priority lien on all of SIC's current and future real property.

90.     The descriptions of real property pledged in the Mortgage are incorporated by reference.

91.     In the Original Mortgage (at Granting Clause and Art. V, § 6), SIC also granted the United States a security interest in all of SIC's personal property except vehicles.

92.     References in this Complaint to the "Mortgaged Property" are to all real

14

and personal property pledged to RUS under the Mortgage.

93.   On October 7, 1998, the Original Mortgage was recorded with Hawaii's Bureau of Conveyances.

94.   Each of Hawaii National Bank, Maui Electric, Hawaiian Electric, Central Pacific Bank, Kekauluohi, Dell Financial and Towill recorded an interest in the Mortgaged Property with Hawaii's Bureau of Conveyances.

95.   The Original Mortgage was recorded with Hawaii's Bureau of Conveyances prior to the date when any interest in the Mortgaged Property of each of Hawaii National Bank, Maui Electric, Hawaiian Electric, Central Pacific Bank, Kekauluohi, Dell Financial and Towill was recorded.

96.   SIC's audited financial statements acknowledge that the Loans from RUS and RTB are "collateralized by substantially all real and personal property" of SIC.

### SIC's Insolvency and Failure to Pay Obligations under the RUS Notes and the RTB Notes

97.   On information and belief, by no later than May 1, 2013, SIC was unable to pay its debts as they became due and its liabilities exceeded its assets at fair value.

98.   In an April 25, 2013 letter to the Secretary of Agriculture, Hee, SIC's

then President, stated that "[SIC] is unable to continue making interest and principal payments on [the] RUS [L]oans."

99.   On May 2, 2013, SIC's auditor opined that SIC's substantial 2012 loss and inability to meet its current obligations "raise[] substantial doubt about [SIC's] ability to continue as a going concern."

100.   SIC failed to pay in full the Installment Amount due on April 30, 2013, and as of that date, SIC was indebted to the RUS.

101.   SIC failed to pay in full the Installment Amounts due at the end of each month after April 2013.

102.   By letter dated July 26, 2013 (the "Acceleration Notice") to Hee, RUS notified SIC that if SIC did not pay in full all past due Installment Amounts by August 26, 2013, as of August 27, 2013 "all unpaid principal and accrued interest on SIC's loans" from RUS and RTB "will become due and payable immediately . . . ."

103.   SIC did not pay in full all past due Installment Amounts by August 26, 2013.

104.   RUS accelerated the Loan effective August 27, 2013.

105.   Notwithstanding RUS's acceleration of the Loan, SIC has not repaid in

16

full the amounts due under the RUS Notes or the RTB Notes.

<u>Failure to Obtain Reasonably Equivalent Value for Transactions with Affiliates of SIC or Its Insiders</u>

106.   On information and belief, certain SIC expenses were "grossly excessive and unreasonable," including "millions of dollars" paid to "affiliated and related entities."   *In re Connect America Fund*, Order on Sandwich Isles Communications, Inc. Petition for Waiver of Section 54.302 of the Commission's Rules, 28 FCC Rcd. 6553, 2013 WL 1962345 (Wireline Competition Bureau May 10, 2013) ("Waiver Denial Order").

107.   On information and belief, SIC is a wholly owned subsidiary of Waimana.

108.   On information and belief, at various times relevant to the allegations of this Complaint, Waimana's Directors have been Hee, Wendy R. Hee, Adrianne H.R. Hee, Breanne E.R. Hee Kahalewai and Charlton E.R. Hee.

109.   On information and belief, Hee's wife is Wendy R. Hee.

110.   On information and belief, Adrianne H.R. Hee, Breanne E.R. Hee Kahalewai and Charlton E.R. Hee are Albert S.N. Hee's children.

111.   On information and belief, prior to December 2012, Hee was the sole owner of Waimana.

112.   On information and belief, after December 2012, Hee owned 10% of Waimana and the trusts benefiting Hee's children owned 90% of Waimana.

113.   On information and belief, ClearCom is a wholly owned subsidiary of Waimana.

114.   On information and belief, Ho'opa'a is a wholly owned subsidiary of Waimana.

115.   On information and belief, Pa Makani is owned indirectly by the Adrianne H.R. Hee Irrevocable Trust, the Breanne E.R. Hee Irrevocable Trust, and the Charlton E.R. Hee Irrevocable Trust.

116.   On information and belief, Paniolo is owned indirectly by the Adrianne H.R. Hee Irrevocable Trust, the Breanne E.R. Hee Irrevocable Trust, and the Charlton E.R. Hee Irrevocable Trust.

117.   On information and belief, SIC has overpaid Waimana for SIC's corporate operations expenses.

118.   On information and belief, Waimana leased office space in downtown Honolulu from a commercial real estate company.

119.   On information and belief, between August 1, 2012 and July 31, 2015, Waimana shared this office space with SIC.

120. On information and belief, Waimana charged SIC a management fee, a portion of which covered Waimana's costs for the office space Waimana shared with SIC.

121. On information and belief, Waimana charged SIC approximately $2.2 million in management fees in 2014, even though Waimana's total expenses were only approximately $1.4 million.

122. On information and belief, management fees paid by SIC significantly exceeded average management fees assessed by comparable entities from 2012 to 2014.

123. On information and belief, Waimana's management fees charged to SIC for 2013 included $50,405 for fitness equipment, travel unrelated to SIC, expensive or excessive travel, personal gas and cash advances for Hee, Hee family meals and other expenses not correctly attributable to a business expense of SIC.

124. On information and belief, Waimana's management fees charged to SIC for 2014 included $27,227 for fitness and kitchen equipment, travel unrelated to SIC, personal gas and cash advances for Hee, Hee family meals and other expenses not correctly attributable to a business expense of SIC.

125. On information and belief, Waimana's management fees charged to

19

SIC for 2015 included $3,652 for personal gas and cash advances for Hee, Hee family meals and other expenses not correctly attributable to a business expense of SIC.

126.   On information and belief, SIC did not receive reasonably equivalent value for the transfers and obligations to Waimana described in the immediately preceding five paragraphs, or possibly for other transfers and obligations.

127.   On information and belief, ClearCom entered into a lease (the "ClearCom Lease") for approximately 30 miles of abandoned water mains with the Honolulu Board of Water Supply.

128.   On information and belief, in a 2001 sublease (the "ClearCom Sublease"), ClearCom assigned its rights under the ClearCom Lease to SIC, and SIC agreed to pay the amounts owed by ClearCom under the ClearCom Lease.

129.   On information and belief, SIC has never used more than twenty percent of the total available miles of the water mains covered by the ClearCom Sublease.

130.   The Wireline Competition Bureau of the Federal Communications Commission found the payments to ClearCom "unreasonable."   Waiver Denial Order ¶ 13; *see id.* ¶ 18.

131.   On information and belief, SIC did not receive reasonably equivalent value under the ClearCom Sublease and likely other transfers and obligations to ClearCom.

132.   On information and belief, SIC has entered into a lease (the "Paniolo Lease") with Paniolo for telecommunications transport services.

133.   On information and belief, the Paniolo Lease increased SIC's annual costs for telecommunications transport services from $1.9 million to approximately $15 million or more.  Waiver Denial Order ¶¶ 7, 19 and n.77.

134.   On information and belief, SIC paid Paniolo under the Paniolo Lease.

135.   On information and belief, SIC did not receive reasonably equivalent value for its payments under the Paniolo Lease.

136.   On information and belief, SIC has made payments to or for the benefit of some of its executives, other employees, and family members of its executives and employees.

137.   On information and belief, SIC did not receive reasonably equivalent value for some of the payments described in the preceding paragraph, including payments to or for the benefit of Hee, Ho and Olds, because the payments' amounts exceeded by a significant margin average payments for comparable positions.

21

<u>Approval of Payments to Non-Federal Creditors in Preference to Payments of</u>
<u>Amounts Owed on RUS Loans</u>

138.   On information and belief, after April 2013, when SIC became indebted to RUS and stopped making full payments on the Loan, SIC officers or directors approved SIC payments to persons other than the United States, including to SIC affiliates Waimana, ClearCom, Hoʻopaʻa, Paniolo, and Pa Makani, and to SIC representatives Hee, Ho, Olds, and members of Hee's family.

139.   In and after May 2013, and continuing into the present, SIC committed numerous acts of bankruptcy (as that term is used in 31 U.S.C. § 3713(a)(1)(A)(iii)), by paying creditors other than RUS.

140.   Each payment in or after May 2013 to a creditor other than RUS (each, a "Preferential Payment") constituted a preferential transfer in that it was made on account of an antecedent debt and enabled the non-federal creditor to recover more on its debt than it would receive through SIC's liquidation.

141.   On information and belief, SIC was insolvent at the time of each Preferential Payment.

142.   On information and belief, one or more of Hee, Olds, Ho (as officers or directors of SIC), or other persons yet to be identified, authorized each Preferential Payment to non-federal creditors instead of making payments to RUS.

143.   On information and belief, the person or persons who authorized each Preferential Payment knew about SIC's debts under the RUS Notes and RTB Notes at the time of each authorization.

144.   On information and belief, SIC made Preferential Payments in or after May 2013 to Waimana.

145.   On information and belief, SIC made Preferential Payments in or after May 2013 to ClearCom.

146.   On information and belief, SIC made Preferential Payments in or after May 2013 to Ho'opa'a.

147.   On information and belief, SIC made Preferential Payments in or after May 2013 to Pa Makani.

148.   On information and belief, SIC made Preferential Payments in or after May 2013 to Paniolo.

149.   On information and belief, SIC made Preferential Payments in or after May 2013 to Hee.

150.   On information and belief, SIC made Preferential Payments in or after May 2013 to Ho.

151.   On information and belief, SIC made Preferential Payments in or after

23

May 2013 to Olds.

152. On information and belief, SIC made Preferential Payments in or after May 2013 to members of Hee's family.

## COUNT I: AGAINST SIC FOR BREACH OF CONTRACT FOR FAILURE TO REPAY THE LOAN

153. The United States re-alleges each fact asserted in the numbered paragraphs above.

154. The continuance for 30 days of SIC's "default . . . in the payment of any installment of or on account of interest on or principal of any note or notes when and as the same shall be required to be made" constitutes an "Event of Default" under the Original Mortgage (at Art. III, § 1(a)).

155. SIC's "failure to perform, or any violation of, any term, covenant, promise, condition, or agreement . . . at the time and in the manner herein provided" constitutes an "Event of Default" under the September 26, 1997 Loan Agreement (at § 5.1).

156. SIC's monthly failure on and after April 30, 2013 to pay the Installment Amount constitutes a default under the September 26, 1997 Loan Agreement (at § 5.1) and the Original Mortgage (at Art. III, § 1).

157. The September 26, 1997 Loan Agreement (at § 5.2(b)) provides that

24

"upon the happening of any [E]vent of [D]efault, . . . the Government . . . may . . . declare all unpaid principal of and all interest accrued on any or all of the [RUS Notes or RTB Notes] . . . to be due and payable immediately and upon such declaration all such principal and interest shall become due and payable immediately . . . ."

158.   Similarly, the Original Mortgage (at Art. III, § 1) also authorizes any holder of a Note to "declare all unpaid principal of and accrued interest on any or all notes held by such noteholder to be due and payable immediately; and upon any such declaration all such unpaid principal and accrued interest so declared to be due and payable shall become due and payable, immediately . . . ."

159.   As a result of the Acceleration Notice, SIC is presently obligated to pay the entire unpaid balance owed under the RUS Notes and the RTB Notes.

160.   Nevertheless, SIC has failed to pay the entire unpaid balance owed under each of the RUS Notes and the RTB Notes.

161.   Accordingly, the United States is entitled to judgment against SIC for the entire unpaid balance under each of the RUS Notes and the RTB Notes.

**COUNT II:  AGAINST SIC, HAWAII NATIONAL BANK, MAUI ELECTRIC, HAWAIIAN ELECTRIC, CENTRAL PACIFIC BANK, KEKAULUOHI, DELL FINANCIAL, TOWILL, CLEARCOM AND PANIOLO FOR SALE OF THE MORTGAGED PROPERTY, FORECLOSURE OF ANY INTEREST OF ANY OF THEM IN THE MORTGAGED PROPERTY, AND A DEFICIENCY JUDGMENT AGAINST SIC**

162.  The United States re-alleges each fact asserted in the numbered paragraphs above.

163.  To pay SIC's debts to the United States under the RUS Notes and the RTB Notes, after SIC's default, the United States is entitled to have the Mortgaged Property sold and to foreclose interests of others in this property.  *See* 28 U.S.C. § 2410(c) ("In any case where the debt owing the United States is due, the United States may ask, by way of affirmative relief, for the foreclosure of its own lien"); Mortgage, Art. III, § 2(b).

164.  Because "[a] judgment or decree in such action or suit shall have the same effect respecting the discharge of the property from the mortgage or other lien held by the United States as may be provided with respect to such matters by the local law of the place where the court is situated," 28 U.S.C. § 2410(c), this Court "may assess the amount due upon a mortgage, whether of real or personal property, without the intervention of a jury, and shall render judgment for the amount awarded,

26

and the foreclosure of the mortgage." Haw. Rev. Stat. Ann. § 667-1.5.

165.   Under this procedure, "[m]ortgage and other creditors shall be entitled to payment according to the priority of their liens, and not pro rata; and judgments of foreclosure that are conducted in compliance with this part shall operate to extinguish the liens of subsequent mortgages and liens of the same property, without forcing prior mortgagees or lienors to their right of recovery. The surplus after payment of the mortgage foreclosed, shall be applied *pro tanto* to the next junior mortgage or lien, and so on to the payment, wholly or in part, of mortgages and liens junior to the one assessed." Haw. Rev. Stat. Ann. § 667-3 (emphasis added).

166.   Any interest in the Mortgaged Property of each of Hawaii National Bank, Maui Electric, Hawaiian Electric, Central Pacific Bank, Kekauluohi, Dell Financial and Towill is inferior and subordinate to the United States' interests in the Mortgaged Property.

167.   SIC has leased property from each of ClearCom and Paniolo and was granted an easement by the State of Hawaii.

168.   SIC has pledged its leasehold interests and easements to the United States as security for the Loan.

169.   RUS's interest in ClearCom-granted leaseholds is superior to the

27

reversionary interest in this leasehold of ClearCom.

170.   RUS's interest in the Paniolo-granted leasehold is superior to the reversionary interest in this leasehold of Paniolo.

171.   Thus, to pay SIC's debts to the United States under the RUS Notes and the RTB Notes, the United States is entitled under 28 U.S.C. § 2410 and the Mortgage, Art. III, § 2(b), to have the Mortgaged Property sold and to foreclose the interests in the Mortgaged Property of SIC and its other lienholders and lessors named in this action.

172.   Because "[a] judgment or decree in such action or suit shall have the same effect respecting the discharge of the property from the mortgage or other lien held by the United States as may be provided with respect to such matters by the local law of the place where the court is situated," 28 U.S.C. § 2410(c), this Court may also order "[e]xecution . . . on the judgment," Haw. Rev. Stat. Ann. § 667-1.5, and if the proceeds from the sale of the Mortgaged Property do not suffice to repay the full amount owed under the RUS Notes and the RTB Notes, the United States may obtain a deficiency judgment against SIC for this difference.  *See* Haw. Rev. Stat. Ann. § 667-41.

173.   Accordingly, the United States is entitled to an order assessing the

28

amount due on the Mortgage and foreclosing the interests in the Mortgaged Property of SIC, Hawaii National Bank, Maui Electric, Hawaiian Electric, Central Pacific Bank, Kekauluohi, Dell Financial, Towill, ClearCom and Paniolo, a judgment for the amount owed on the Mortgage, an order of execution on this judgment, and if the proceeds from the sale of the Mortgaged Property are insufficient to pay all amounts owed under the RUS Notes and the RTB Notes, a deficiency judgment for the difference between the amount owed and the United States' recovery from the proceeds of the sale of the Mortgaged Property.

### COUNT III:  AGAINST HEE, HO, AND OLDS FOR APPROVING PAYMENT OF CLAIMS OF OTHERS BEFORE CAUSING THE CLAIMS OF THE UNITED STATES TO BE PAID

174.   The United States re-alleges each fact asserted in the numbered paragraphs above.

175.   31 U.S.C. § 3713 (the "Federal Priority Statute") requires the United States' claims against a person to be paid first when such person is insolvent and any of the following conditions exist: (i) such person lacks enough property to pay all its debts yet "makes a voluntary assignment of property"; (ii) such person is absent and his "property . . . is attached"; or (iii) "an act of bankruptcy is committed . . . ."

176.   A debtor who makes preferential transfers by transferring, while

29

insolvent, any portion of his property to non-federal creditors commits an "act of bankruptcy" within the meaning of 31 U.S.C. § 3713(a)(1)(A)(iii).

177.   The Federal Priority Statute further provides, "A representative of a person or an estate . . . paying any part of a debt of the person or estate before paying a claim of the Government is liable to the extent of the payment for unpaid claims of the Government."

178.   At a time the United States had claims against SIC arising under the RUS Notes and the RTB Notes, on information and belief, SIC became insolvent.

179.   On information and belief, SIC became insolvent by no later than May 1, 2013.

180.   On and after the date of its insolvency, SIC had a duty under the Federal Priority Statute not to prefer its non-federal creditors by paying them instead of the United States.

181.   As Officers and Directors of SIC, Hee, Ho, and Olds exercised control over the distribution of SIC's assets after it became insolvent.

182.   After May 1, 2013, Hee, Ho, and Olds each approved at least one of the payments to Waimana, ClearCom, Hoʻopaʻa, Paniolo, Pa Makani, or other affiliates in preference to payments owed under the RUS Loans.

30

183.   As a SIC representative approving at least one Preferential Payment, each of Hee, Ho, and Olds is liable to the United States under the Federal Priority Statute "to the extent of the payment for unpaid claims."

184.   After a reasonable opportunity for further investigation or discovery, the United States will likely have evidentiary support about the identity of any additional individual(s) who approved Preferential Payments.

185.   On information and belief, the SIC representatives approving the Preferential Payments had actual knowledge of the RUS Notes, the RTB Notes or the existence of some indebtedness under one or more of these Notes, or notice of facts that would lead a reasonably prudent person to inquire as to the existence of such indebtedness.

186.   Accordingly, the United States is entitled to an award of damages against one or more of Hee, Ho, and Olds for authorizing the Preferential Payments.

## COUNT IV: AGAINST INSIDERS WAIMANA, CLEARCOM, HOʻOPAʻA, PANIOLO, PA MAKANI, HEE, HO, AND OLDS FOR TRANSFERS MADE WHILE SIC WAS INSOLVENT

187.   The United States re-alleges each fact asserted in the numbered paragraphs above.

188.   On information and belief, Waimana is an "insider" of SIC as defined

31

in 28 U.S.C. § 3301(5)(B).

189.   On information and belief, SIC made transfers to Waimana for an antecedent debt owed by SIC to Waimana within the scope of 28 U.S.C. § 3304(a)(2), including, without limitation, payment of management fees.

190.   On information and belief, at the time of such transfers to Waimana, SIC was insolvent.

191.   On information and belief, at the time of such transfers to Waimana, Waimana had reasonable cause to believe that SIC was insolvent.

192.   The United States is entitled, under the FDCPA, including 28 U.S.C. §§ 3304(a)(2) and 3306(a)(1), to avoid SIC's transfers to Waimana to the extent necessary to satisfy SIC's debt to the United States.

193.   The United States is also entitled under the FDCPA, including 28 U.S.C. § 3306(a)(2), to a remedy against the asset transferred or other property of Waimana as a transferee.

194.   The United States is entitled under the FDCPA, including 28 U.S.C. § 3306(a)(3), to other relief against Waimana which the circumstances may require.

195.   On information and belief, ClearCom is an "insider" of SIC as defined in 28 U.S.C. § 3301(5)(D).

196.   On information and belief, SIC made transfers to ClearCom for an antecedent debt owed by SIC to ClearCom within the scope of 28 U.S.C. § 3304(a)(2), including, without limitation, payments under the ClearCom Lease.

197.   On information and belief, at the time of such transfers to ClearCom, SIC was insolvent.

198.   On information and belief, at the time of such transfers to ClearCom, ClearCom had reasonable cause to believe that SIC was insolvent.

199.   The United States is entitled, under the FDCPA, including 28 U.S.C. §§ 3304(a)(2) and 3306(a)(1), to avoid SIC's transfers to ClearCom to the extent necessary to satisfy SIC's debt to the United States.

200.   The United States is also entitled under the FDCPA, including 28 U.S.C. § 3306(a)(2), to a remedy against the assets transferred or other property of ClearCom as a transferee.

201.   The United States is entitled under the FDCPA, including 28 U.S.C. § 3306(a)(3), to other relief against ClearCom which the circumstances may require.

202.   On information and belief, Hoʻopaʻa is an "insider" of SIC as defined in 28 U.S.C. § 3301(5)(D).

203.   On information and belief, SIC made transfers to Hoʻopaʻa for an

33

antecedent debt owed by SIC to Hoʻopaʻa within the scope of 28 U.S.C. § 3304(a)(2).

204.   On information and belief, at the time of such transfers to Hoʻopaʻa, SIC was insolvent.

205.   On information and belief, at the time of such transfers to Hoʻopaʻa, Hoʻopaʻa had reasonable cause to believe that SIC was insolvent.

206.   The United States is entitled, under the FDCPA, including 28 U.S.C. §§ 3304(a)(2) and 3306(a)(1), to avoid SIC's transfers to Hoʻopaʻa to the extent necessary to satisfy SIC's debt to the United States.

207.   The United States is also entitled under the FDCPA, including 28 U.S.C. § 3306(a)(2), to a remedy against the assets transferred or other property of Hoʻopaʻa as a transferee.

208.   The United States is entitled under the FDCPA, including 28 U.S.C. § 3306(a)(3), to other relief against Hoʻopaʻa which the circumstances may require.

209.   On information and belief, Paniolo is an "insider" of SIC as defined in 28 U.S.C. § 3301(5)(D).

210.   On information and belief, SIC made transfers to Paniolo for an antecedent debt owed by SIC to Paniolo within the scope of 28 U.S.C. § 3304(a)(2),

including, without limitation, payments under the Paniolo Lease.

211. On information and belief, at the time of such transfers to Paniolo, SIC was insolvent.

212. On information and belief, at the time of such transfers to Paniolo, Paniolo had reasonable cause to believe that SIC was insolvent.

213. The United States is entitled, under the FDCPA, including 28 U.S.C. §§ 3304(a)(2) and 3306(a)(1), to avoid SIC's transfers to Paniolo to the extent necessary to satisfy SIC's debt to the United States.

214. The United States is also entitled under the FDCPA, including 28 U.S.C. § 3306(a)(2), to a remedy against the assets transferred or other property of Paniolo as a transferee.

215. The United States is entitled under the FDCPA, including 28 U.S.C. § 3306(a)(3), to other relief against Paniolo which the circumstances may require.

216. On information and belief, Pa Makani is an "insider" of SIC as defined in 28 U.S.C. § 3301(5)(D).

217. On information and belief, SIC made transfers to Pa Makani for an antecedent debt owed by SIC to Pa Makani within the scope of 28 U.S.C. § 3304(a)(2).

35

218.   On information and belief, at the time of such transfers to Pa Makani, SIC was insolvent.

219.   On information and belief, at the time of such transfers to Pa Makani, Pa Makani had reasonable cause to believe that SIC was insolvent.

220.   The United States is entitled, under the FDCPA, including 28 U.S.C. §§ 3304(a)(2) and 3306(a)(1), to avoid SIC's transfers to Pa Makani to the extent necessary to satisfy SIC's debt to the United States.

221.   The United States is also entitled under the FDCPA, including 28 U.S.C. § 3306(a)(2), to a remedy against the assets transferred or other property of Pa Makani as a transferee.

222.   The United States is entitled under the FDCPA, including 28 U.S.C. § 3306(a)(3), to other relief against Pa Makani which the circumstances may require.

223.   On information and belief, Hee is an "insider" of SIC as defined in 28 U.S.C. § 3301(5)(B).

224.   On information and belief, SIC made transfers to Hee for an antecedent debt owed by SIC within the scope of 28 U.S.C. § 3304(a)(2).

225.   On information and belief, at the time of such transfers to Hee, SIC was insolvent.

226.   On information and belief, at the time of such transfers to Hee, Hee had reasonable cause to believe that SIC was insolvent.

227.   The United States is entitled, under the FDCPA, including 28 U.S.C. §§ 3304(a)(2) and 3306(a)(1), to avoid SIC's transfers to Hee to the extent necessary to satisfy SIC's debt to the United States.

228.   The United States is also entitled under the FDCPA, including 28 U.S.C. § 3306(a)(2), to a remedy against the assets transferred or other property of Hee as a transferee.

229.   The United States is entitled under the FDCPA, including 28 U.S.C. § 3306(a)(3), to other relief against Hee which the circumstances may require.

230.   On information and belief, Ho is an "insider" of SIC as defined in 28 U.S.C. § 3301(5)(B).

231.   On information and belief, SIC made transfers to or for the benefit of Ho for an antecedent debt owed by SIC to Ho within the scope of 28 U.S.C. § 3304(a)(2).

232.   On information and belief, at the time of such transfers to Ho, SIC was insolvent.

233.   On information and belief, at the time of such transfers to Ho, Ho had

37

reasonable cause to believe that SIC was insolvent.

234.   The United States is entitled, under the FDCPA, including 28 U.S.C. §§ 3304(a)(2) and 3306(a)(1), to avoid SIC's transfers to Ho to the extent necessary to satisfy SIC's debt to the United States.

235.   The United States is also entitled under the FDCPA, including 28 U.S.C. § 3306(a)(2), to a remedy against the assets transferred or other property of Ho as a transferee.

236.   The United States is entitled under the FDCPA, including 28 U.S.C. § 3306(a)(3), to other relief against Ho which the circumstances may require.

237.   On information and belief, Olds is an "insider" of SIC as defined in 28 U.S.C. § 3301(5)(B).

238.   On information and belief, SIC made transfers to or for the benefit of Olds for an antecedent debt owed by SIC to Olds within the scope of 28 U.S.C. § 3304(a)(2).

239.   On information and belief, at the time of such transfers to Olds, SIC was insolvent.

240.   On information and belief, at the time of such transfers to Olds, Olds had reasonable cause to believe that SIC was insolvent.

241.   The United States is entitled, under the FDCPA, including 28 U.S.C. §§ 3304(a)(2) and 3306(a)(1), to avoid SIC's transfers to Olds to the extent necessary to satisfy SIC's debt to the United States.

242.   The United States is also entitled under the FDCPA, including 28 U.S.C. § 3306(a)(2), to a remedy against the assets transferred or other property of Olds as a transferee.

243.   The United States is entitled under the FDCPA, including 28 U.S.C. § 3306(a)(3), to other relief against Olds which the circumstances may require.

244.   Accordingly, the United States is entitled to various forms of relief against Waimana, ClearCom, Hoʻopaʻa, Paniolo, Pa Makani, Hee, Ho, and Olds as recipients of SIC's Preferential Payments.

## COUNT V: AGAINST WAIMANA, CLEARCOM, PANIOLO, HEE, HO AND OLDS FOR SIC TRANSFERS OR OBLIGATIONS FOR WHICH SIC DID NOT RECEIVE REASONABLY EQUIVALENT VALUE

245.   The United States re-alleges each fact asserted in the numbered paragraphs above.

246.   On information and belief, SIC made transfers or incurred obligations to each of Waimana, ClearCom, Paniolo, Hee, Ho, and Olds without receiving a reasonably equivalent value in exchange for the transfers or obligations within the

scope of 28 U.S.C. § 3304(a)(1).

247.   For example, and without limitation, on information and belief, SIC made transfers or incurred obligations for which it did not receive reasonably equivalent value with respect to Waimana's management fees, including payments for items such as fitness equipment, travel unrelated to SIC, expensive or excessive travel, personal gas and cash advances for Hee, Hee family meals, and other expenses not correctly attributable to a business expense of SIC.

248.   On information and belief, SIC also made transfers or incurred obligations for which it did not receive reasonably equivalent value with respect to payments under the ClearCom Sublease.

249.   On information and belief, SIC also made transfers or incurred obligations for which it did not receive reasonably equivalent value with respect to payments under the Paniolo Lease.

250.   On information and belief, SIC also made transfers or incurred obligations for which it did not receive reasonably equivalent value for its payments to, or for the benefit of, Hee, Ho, Olds and other employees.

251.   On information and belief, SIC was insolvent or became insolvent as a result of the transfers or obligations described in the immediately preceding five

paragraphs.

252.   On information and belief, under the FDCPA, including 28 U.S.C. §§ 3304(a)(1) and 3306(a)(1), the United States is entitled to avoid such transfers or obligations to the extent necessary to satisfy SIC's debt to the United States.

253.   The United States on behalf of RUS is also entitled, under the FDCPA, 28 U.S.C. § 3306(a)(2), to a remedy against the assets transferred or other property of each of ClearCom, Paniolo, Waimana, Ho, Olds and other recipients of payments or benefits for which SIC did not receive reasonably equivalent value in exchange.

254.   Further, the United States is entitled under the FDCPA, 28 U.S.C. § 3306(a)(3), to other relief against of ClearCom, Paniolo, Waimana, Ho, Olds and others which the circumstances may require.

255.   Accordingly, the United States is entitled to various forms of relief against ClearCom, Paniolo, Waimana, Ho, Olds and others for SIC's transfers or obligations to them.

## COUNT VI: AGAINST HEE, AND OLDS FOR BREACH OF FIDUCIARY DUTY

256.   The United States re-alleges each fact asserted in the numbered paragraphs above.

257.   Directors of an insolvent corporation become trustees of the creditors

41

to whom the corporation's property must go.

258. As detailed above, on information and belief, Hee and members of his family had a direct or indirect ownership interest in Waimana.

259. As detailed above, on information and belief, Hee and members of his family had an indirect ownership interest in ClearCom.

260. As detailed above, on information and belief, Hee and members of his family had an indirect ownership interest in Hoʻopaʻa.

261. As detailed above, on information and belief, Paniolo is owned indirectly by trusts of which three children of Hee are beneficiaries.

262. As detailed above, on information and belief, Pa Makani is owned indirectly by trusts of which three children of Hee are beneficiaries.

263. As detailed above, on information and belief, after SIC became insolvent, SIC paid the Preferential Payments.

264. On information and belief, when SIC paid certain of the Preferential Payments, Hee was a SIC Director.

265. On information and belief, when SIC made certain of the Preferential Payments, Olds was a SIC Director.

266. On information and belief, SIC's payments to Waimana benefitted Hee

42

and members of Hee's family as Waimana's direct and indirect owners.

267.   On information and belief, SIC's payments to ClearCom indirectly benefitted Hee and members of his family as ClearCom's indirect owners (through Waimana).

268.   On information and belief, SIC's payments to Hoʻopaʻa indirectly benefitted Hee and members of his family as Hoʻopaʻa's indirect owners (through Waimana).

269.   On information and belief, SIC's payments to Paniolo benefited trusts of which Hee's children are beneficiaries.

270.   On information and belief, SIC's payments to Pa Makani benefited trusts of which Hee's children are beneficiaries.

271.   On information and belief, SIC's payments to Hee of his salary, bonuses, and personal expenses during or after May 2013, directly benefited Hee.

272.   On information and belief, SIC's payments to Breanne Hee of her salary, bonuses, and personal expenses during or after May 2013, and SIC's payment of certain entertainment, meal, and travel expenses, directly benefited members of Hee's family.

273.   On information and belief, SIC's payments to Olds of her salary and

43

benefits during or after May 2013 directly benefited Olds.

274.   Due to the benefits received by Hee, members of his family, or Olds from the Preferential Payments during or after May 2013, Hee's, and Olds's approving or failing to prevent these payments when SIC was insolvent violated the fiduciary duties of Hee and Olds to SIC's other creditors, including the United States.

275.   Accordingly, the United States is entitled to recover against each of Hee and Olds who, as SIC's Directors or officers, caused or permitted SIC, when SIC was insolvent, to pay claims to SIC creditors or other beneficiaries of which one or more of Hee or Olds owned a direct or indirect interest, or in which one or more members of the family of Hee or Olds directly or indirectly had an interest, including payments to Waimana, Clearcom, Ho'opa'a, Paniolo, and Pa Makani, as well as personal payments to Hee,  members of his family, and Olds.

### COUNT VII: INTEREST, PROCESSING, HANDLING AND ADMINISTRATIVE COSTS, PENALTIES AND ATTORNEYS' FEES

276.   The United States re-alleges each fact asserted in the numbered paragraphs above.

277.   Under the Original Mortgage (at Art. III, § 5), if RUS exercises its rights or enforces its remedies under the Mortgage, before any resulting proceeds

44

may be applied to principal or interest, or paid to anyone else, RUS is entitled to receive "any and all costs and expenses in connection with the exercise of such rights or the enforcement of such remedies . . . ."

278.   In addition, interest, charges to cover the cost of processing and handling a delinquent claim, and penalties have accrued on the foregoing claims under 31 U.S.C. § 3717 and its implementing regulations.

279.   Accordingly, the United States is entitled to judgment against SIC for charges to cover the cost of processing and handling a delinquent claim, penalties, and its costs of collection, including its attorneys' reasonable fees.

## PRAYER FOR RELIEF

WHEREFORE, the United States of America respectfully requests that this Court grant it

A.   a money judgment against SIC for all amounts due under the RUS Notes and the RTB Notes or the Mortgage, including interest, costs and other charges;

B.   a judgment of foreclosure determining the amount owed to the United States under the Mortgage, ordering the sale of the Mortgaged Property to satisfy this amount, recognizing the United States' first priority

45

interest in the Mortgaged Property and foreclosing any interest of SIC, Hawaii National Bank, Maui Electric, Hawaiian Electric, Central Pacific Bank, Kekauluohi, Dell Financial, Towill, ClearCom and Paniolo in the Mortgaged Property;

C.      a deficiency judgment against SIC for the difference between all amounts due on the RUS Notes and the RTB Notes or the Mortgage, including interest, costs and other charges, and the proceeds delivered to the United States from the sale of the Mortgaged Property;

D.      a money judgment under 31 U.S.C. § 3713 against one or more of Hee, Ho, and Olds who, as a SIC representative, caused SIC, while insolvent, to pay any part of a SIC debt owed to a person other than the United States in preference to amounts SIC owed to the United States;

E.      a money judgment under 28 U.S.C. §§ 3304(a)(2) and 3306 against Waimana, ClearCom, Hoʻopaʻa, Paniolo, Pa Makani, Hee, Ho and Olds for transfers to any of them on antecedent debts for the value of such transfers when (i) SIC was insolvent and (ii) Waimana, ClearCom, Hoʻopaʻa, Paniolo, Pa Makani, Hee, Ho and Olds had reasonable cause to believe that SIC was insolvent;

F.    a money judgment under 28 U.S.C. §§ 3304(a)(1) and 3306 against Waimana, ClearCom, Paniolo, Hee, Ho, and Olds for avoidance of SIC's transfers or obligations to them when (i) SIC was insolvent or became insolvent as a result of the transfer or obligation, and (ii) SIC received less than reasonably equivalent value for the transfer or obligation;

G.    a money judgment against Hee and Olds for breaching his or her fiduciary duty to the United States by authorizing or permitting SIC creditors other than the United States to be paid during a time when SIC was insolvent in preference to the United States;

H.    a money judgment against SIC for charges to cover the United States' cost of processing and handling a delinquent claim, penalties, and the United States' costs of collection, including its attorneys' reasonable fees; and

I.    such further relief favoring the United States as this Court deems just and appropriate.

Dated: April 20, 2018                Respectfully submitted,

                                     CHAD A. READLER
                                     Acting Assistant Attorney General

                                     47

THOMAS A. HELPER
Assistant United States Attorney

/s/ Lloyd H. Randolph
RUTH A. HARVEY
KIRK T. MANHARDT
LLOYD H. RANDOLPH
(D.C. Bar # 376009)
SHANE HUANG
United States Department of Justice
P.O. BOX 875
Ben Franklin Station
Washington, D.C. 20044-0875
(202) 307-0356
Lloyd.Randolph@usdoj.gov


Attorneys for the United States