IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>  vs.<br><br>SANDWICH ISLES COMMUNICATIONS, INC., ET AL.,<br><br>        Defendants.<br>_____<br><br>AND RELATED COUNTERCLAIMS AND THIRD-PARTY CLAIMS.<br>_____ | Civ. No. 18-00145 JMS-RT<br><br>ORDER (1) GRANTING MOTION TO DISMISS FIRST AMENDED COUNTERCLAIM OF SANDWICH ISLES COMMUNICATIONS, INC., ECF NO. 176; AND (2) GRANTING MOTION FOR ENTRY OF FINAL JUDGMENT ON COUNT ONE OF THE COMPLAINT, ECF NO. 179 |

**ORDER (1) GRANTING MOTION TO DISMISS FIRST AMENDED COUNTERCLAIM OF SANDWICH ISLES COMMUNICATIONS, INC., ECF NO. 176; AND (2) GRANTING MOTION FOR ENTRY OF FINAL JUDGMENT ON COUNT ONE OF THE COMPLAINT, ECF NO. 179**

## I. INTRODUCTION

On July 22, 2019, this court issued an order that, among other rulings, (1) granted Plaintiff United States of America's ("Plaintiff" or the "United States") motion for partial summary judgment on Count One of the complaint for breach of contract against Defendant Sandwich Isles Communications, Inc. ("Sandwich Isles"), and (2) dismissed without prejudice a counterclaim asserted by Sandwich Isles against the United States alleging a violation of the Equal Credit Opportunity

Act, 15 U.S.C. § 1691 et seq. ("ECOA").  *See United States v. Sandwich Isles Commcn's, Inc.*, 398 F. Supp. 3d 757 (D. Haw. 2019) ("*Sandwich Isles*" or "the July 22, 2019 Order").

As the July 22, 2019 Order allowed, Sandwich Isles amended its counterclaim by asserting two counts of alleged violations of the ECOA.  *See* ECF No. 172.  The United States now moves to dismiss those amended ECOA counterclaims with prejudice, ECF No. 176.  Separately, it also moves for a final judgment under Federal Rule of Civil Procedure 54(b) on its successful breach of contract claim as decided in the July 22, 2019 Order.  *See* ECF No. 179.

Based on the following, the court GRANTS both motions.  The court DISMISSES with prejudice the two ECOA counterclaims against the United States, and orders entry of a Rule 54(b) judgment against Sandwich Isles as to Count One of the complaint for breach of contract.

## II.  **BACKGROUND**

Because these motions begin where the July 22, 2019 order ended, the court relies on and incorporates the July 22, 2019 Order for this action's background and history.  *See Sandwich Isles*, 398 F. Supp. 3d at 763-67.  The court reiterates only the facts necessary to understand the context for the two motions.

The July 22, 2019 Order determined as a matter of law based on undisputed facts that Sandwich Isles had breached loan contracts and promissory notes exceeding $129 million (with interest continuing to accrue). *Id.* at 769, 773. It was (and remains) undisputed that (1) Sandwich Isles has not made full installment payments on loans since before April 2013, (2) Sandwich Isles' failure to make full payments was an "event of default," and (3) the United States accelerated the remaining balance on the loans, effective August 27, 2013. *Id.* at 769. The July 22, 2019 Order also rejected Sandwich Isles' argument that it was not in breach of contract because its obligation to make full payments had purportedly ended for failure of a "basic assumption" of the contracts. *Id.* at 770-73.

Next, the July 22, 2019 Order determined that Sandwich Isles' counterclaim against the United States under the ECOA was time-barred to the extent it asserted claims occurring prior to August 3, 2013—five years before the counterclaim was filed—given a five-year limitations period under 15 U.S.C. § 1691e(f). *Id.* at 777.[1] Although all of the alleged violations in the original counterclaim appeared to have occurred before August 3, 2013, the court dismissed

---

[1] In that regard, the court also noted that, if an ECOA counterclaim would be compulsory (an issue neither raised nor briefed), then the cutoff date for ECOA claims could extend back to April 20, 2013—five years prior to the filing of Plaintiff's complaint (not prior to the counterclaim). *See* 398 F. Supp. 3d at 777 n.17.

the ECOA counterclaim *without* prejudice, in case Sandwich Isles could allege in good faith that actionable ECOA violations occurred within the limitations period. *Id.* at 778.

Importantly, the court also indicated that any alleged violations of the ECOA occurring *after* Sandwich Isles was no longer qualified for credit would not be actionable. *Id.* (citing *Mays v. Buckeye Rural Elec. Co-op, Inc.*, 277 F.3d 873, 877 (6th Cir. 2002) (reiterating that an element of an ECOA claim is that "Plaintiff was qualified for the credit") and *Lynch v. Fed. Nat'l Mortg. Ass'n*, 2016 WL 6776283, at *7-8 (D. Haw. Nov. 15, 2016) (stating elements of an ECOA claim, including being "qualified for credit," and dismissing claim because plaintiff "fail[ed] to allege she was qualified to receive a modification or to allege any facts from which the Court could infer she was qualified to receive any modification")).

On August 19, 2019, Sandwich Isles filed its First Amended Counterclaim against the United States, alleging racial discrimination in violation of the ECOA, 15 U.S.C. § 1691(a)(1) (Count One) and a failure to provide notice of adverse actions in violation of the ECOA, 15 U.S.C. § 1691(d)(1) & (2) (Count Two). The amended counterclaim alleges that, in three ways, the United States treated Sandwich Isles—which is alleged to be "majority-owned by beneficiaries" of the Hawaiian Homes Commission Act, i.e., native Hawaiians, ECF No. 172 at PageID #2454—differently than it treated "Caucasian-owned" rural utility

companies: the United States' "refusal to reach a loan workout agreement with [Sandwich Isles], its refusal to fund the full amount of [Sandwich Isles'] loan, and its filing a foreclosure action against [Sandwich Isles]." *Id.* at PageID #2465.

As for the timing of allegedly wrongful action within the limitations period, the First Amended Counterclaim alleges:

> 39. In 2015, after years of ongoing negotiations . . . the UNITED STATES and [Sandwich Isles] reached an agreement as to the terms of a workout.
>
> 40. As the UNITED STATES has done with Caucasian-owned [rural utility companies], the UNITED STATES continued to negotiate a restructured loan despite the fact that the UNITED STATES had given a notice of accelration (sic), with the UNITED STATES as the creditor (as defined in ECOA) and [Sandwich Isles] as the applicant (as defined in ECOA).
>
> 41. In 2015, in reliance on representations made by the UNITED STATES, a document was prepared memorializing the terms of the agreement that [Sandwich Isles] and the UNITED STATES had both represented they accepted. Inexplicably, the [Rural Utilities Service] has never signed this agreement, despite the UNITED STATES' representations that they had accepted all the terms.
>
> 42. The UNITED STATES's failure to sign the loan workout in 2015 was an "adverse action" within the meaning of ECOA in that it constituted a revocation of credit (i.e. a revocation of the agreed-to terms of a loan workout) or a denial of credit (i.e. a denial of [Sandwich Isles'] application for a credit in the form of a loan workout).

> 43.  The UNITED STATES failed to give proper notice
> of any of the adverse actions described above as required
> by ECOA, including without limitation: (1) the UNITED
> STATES's 2013 denial of [Sandwich Isles'] application
> for an extension of credit (in the form of a loan
> modification[)]; (2) the UNITED STATES's refusal to
> fully fund the loan; and (3) the UNITED STATES's 2015
> revocation of credit or, in the alternative, denial of credit
> when it refused to sign a document containing the loan
> workout terms agreed to by the parties.

*Id.* at PageID #2464-65.

On September 3, 2019, the United States filed its Motion to Dismiss the First Amended Counterclaim.  ECF No. 176.  On September 11, 2019, the United States filed its Motion for Entry of Judgment under Rule 54(b) (the "Rule 54(b) motion") as to Count One of its Complaint.  ECF No. 179.  Sandwich Isles filed its Oppositions to the two motions on September 30, 2019, ECF Nos. 186, 189.  Co-Defendant Janeen-Ann Olds, and co-Defendants ClearCom, Inc., Hoopaa Insurance Corp., Pa Makani LLC, and Waimana Enterprises, Inc. (collectively, the "Waimana Defendants"), also filed Oppositions to the Rule 54(b) motion on September 30, 2019.[2]  *See* ECF Nos. 191, 192.  The United States filed Replies on October 7, 2019.  *See* ECF Nos. 195, 196.

---

[2] On October 23, 2019, the court entered an order approving a Stipulation for Temporary Stay of Proceedings between the United States of America and Defendant Janeen-Ann Olds, ECF No. 201, which stayed any proceedings regarding claims by the United States and Olds, and by Olds against the United States.  That stay was similarly extended on December 17, 2019 until February 4, 2020.  ECF No. 214.

The court heard the motions on October 21, 2019, ECF No. 200. At the hearing, the court directed the parties to meet and confer regarding Count Two of the complaint (regarding foreclosure) in an attempt to resolve an issue regarding the United States' requested entry of judgment under Rule 54(b). On November 1, 2019, the parties filed letters indicating that the parties were unable to resolve that issue, ECF Nos. 206, 207, and subsequent settlement efforts were unsuccessful. *See* ECF No. 219 (January 28, 2020 settlement conference).

## III.  <u>STANDARDS OF REVIEW</u>

### A.    **Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss for "failure to state a claim upon which relief can be granted." A Rule 12(b)(6) dismissal is proper when there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged." *UMG Recordings, Inc. v. Shelter Capital Partners, LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008). This tenet—that the court must accept as true

all of the allegations contained in the complaint—"is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief. *Id.* at 679.

**B.      Partial Judgment Under Rule 54(b)**

Rule 54(b) regarding "Judgment on Multiple Claims or Involving Multiple Parties" provides, in part:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

A district court may direct entry of final judgment as to one party in a multi-party suit, or as to one claim in a multiple-count complaint, as follows:

> A district court must first determine that it has rendered a "final judgment," that is, a judgment that is "'an ultimate disposition of an individual claim entered in the course of

a multiple claims action.'" *Curtiss-Wright [Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7 (1980)] (quoting [*Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436 (1956)]). Then it must determine whether there is any just reason for delay. "It is left to the sound judicial discretion of the district court to determine the 'appropriate time' when each final decision in a multiple claims action is ready for appeal. This discretion is to be exercised 'in the interest of sound judicial administration.'" *Id.* at 8 (quoting *Mackey*, 351 U.S. at 437). Whether a final decision on a claim is ready for appeal is a different inquiry from the equities involved, for consideration of judicial administrative interests "is necessary to assure that application of the Rule effectively 'preserves the historic federal policy against piecemeal appeals.'" *Id.* (quoting *Mackey*, 351 U.S. at 438).

*Wood v. GCC Bend, LLC*, 422 F.3d 873, 878 (9th Cir. 2005).

The court should "consider such factors as whether the claims under review were separable from the others remaining to be adjudicated and whether the nature of the claims already determined was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals." *Curtiss-Wright*, 446 U.S. at 8. The absence of one of those factors would not necessarily preclude certification; "[i]t would, however, require the district court to find a sufficiently important reason for nonetheless granting certification." *Id.* at 8 n.2. *See also Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 797 (9th Cir. 1991) (stating that certification under Rule 54(b) "is proper if it will aid 'expeditious decision' of the case" (quoting *Sheehan v. Atlanta Int'l Ins. Co.*, 812

F.2d 465, 468 (9th Cir. 1987))).  Courts must consider the judicial administrative interest in avoiding "piecemeal appeals," as well as the other equities involved. *Curtiss-Wright*, 446 U.S. at 8.  *See also* 10 Charles Alan Wright et al., *Federal Practice and Procedure* § 2659 (4th ed. 2014) ("It is uneconomical for an appellate court to review facts on an appeal following a Rule 54(b) certification that it is likely to be required to consider again when another appeal is brought after the district court renders its decision on the remaining claims or as to the remaining parties.").

## IV.  <u>DISCUSSION</u>

### A.    The United States' Motion to Dismiss the Amended Counterclaim

#### 1.    *Count One—Racial Discrimination Under the ECOA*

Count One of Sandwich Isles' amended counterclaim fails.  As the July 22, 2019 Order discussed, one of the elements of a claim for discrimination under the ECOA, 15 U.S.C. § 1691(a), is that a plaintiff be qualified for credit. *See Mays*, 277 F.3d at 877 (Sixth Circuit outlining the prima facie elements of credit discrimination as "(1) Plaintiff was a member of a protected class; (2) Plaintiff applied for credit from Defendants; (3) *Plaintiff was qualified for the credit*; and (4) despite Plaintiff's qualification, Defendants denied her credit application.") (emphasis added) (citing *Matthiesen v. Banc One Mortg. Corp.*, 173 F.3d 1242, 1246 (10th Cir. 1999) (same elements).  Other circuits agree.  *See Anderson v.*

*Wachovia Mortg. Corp.*, 621 F.3d 261, 268 n.5 (3rd Cir. 2010) (citing cases from the First, Second, Third, and Eighth Circuits for the prima facie elements of an ECOA discrimination claim, including that the plaintiff be qualified for credit). And, although the United States has not cited (and the court has not found) a published Ninth Circuit opinion specifically adopting those elements under the ECOA, many district courts in the Ninth Circuit—including this one—agree that being "qualified for credit" is a required prima facie element of an actionable ECOA discrimination claim.[3] *See, e.g.*, *Lynch*, 2016 WL 6776283, at *7-8 (D. Haw.); *Hafiz v. Greenpoint Mortg. Funding, Inc.*, 652 F. Supp. 2d 1039, 1045 (N.D. Cal. 2009); *Blair v. Bank of Am., N.A.*, 2012 WL 860411, at *12 (D. Or. Mar. 13, 2012); *Sheriff v. Deutsche Bank Nat'l Tr. Co.*, 2011 WL 1496152, at *4 (D. Ariz. Apr. 20, 2011).

      Here, although the amended counterclaim has alleged some events in 2015 and later (within the limitations period), it is undisputed—based on the July 22, 2019 order and the other allegations of the amended counterclaim—that Sandwich Isles was no longer creditworthy after August 2013 when it had

---

[3] In an unpublished memorandum decision, however, the Ninth Circuit indicated that being "qualified for credit" is necessary to state an ECOA discrimination claim. *See Shiplet v. Veneman*, 383 F. App'x 667, 668 (9th Cir. 2010) ("The district court also correctly found that [plaintiff] failed to establish a prima facie case of discrimination regarding her applications for direct loans in 1981, 1984, 1994, and 1995, as [plaintiff] was not qualified for credit at the outset.").

defaulted on the loans. As the United States argues, a delinquent borrower such as Sandwich Isles cannot prevail on an ECOA discrimination claim premised on a denial of a loan modification. *See* ECF No. 176-1 at PageID #2499 (citing *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 754-55 (6th Cir. 2014)).

Alternatively, the court also agrees with the United States that the amended counterclaim fails to allege plausible grounds to infer that the United States acted with discriminatory animus, where there is an "obvious alternative explanation" for refusing to approve a loan modification. *Twombly*, 550 U.S. at 567; *see also Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996-97 (9th Cir. 2014) ("Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible.") (quoting *In re Century Aluminum Co. Secs. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013)).

As described in the July 22, 2019 Order, by August 2013 Sandwich Isles had defaulted on the RUS loans, owing the United States over $120 million with its primary funding stream having been significantly reduced by the 2011 Transformation Order. *See Sandwich Isles*, 398 F. Supp. 3d at 766. During this time frame (when the United States was allegedly wrongfully refusing to restructure the loans), co-Defendant Albert Hee had been indicted and later convicted for tax-related crimes regarding misuse of expenses relating to co-

Defendant Waimana Enterprises, Inc.[4]  *See id.* at 764; *see also, e.g.*, *Sandwich Isles Commc'ns, Inc. v. United States*, 145 Fed. Cl. 566, 571-72 (2019) (explaining how, following Hee's conviction, "the [Federal Communications Commission] issued [a July 28, 2015] order directing [the Universal Service Administrative Company] to suspend 'high-cost funding to Sandwich Isles pending completion of further investigation and/or other ameliorative measures to ensure that any funding provided is used solely in a manner consistent with [FCC] rules and policies'").  In this context, the United States' allegedly wrongful conduct in refusing fully to fund Sandwich Isles and denying loan modifications has "an obvious alternative explanation," *Twombly*, 550 U.S. at 567, that renders Sandwich Isles' claims of discrimination implausible.  That is, even if Count One is not time barred or does not fail for Sandwich Isles' uncreditworthiness, it fails under *Twombly*.

Accordingly, Count One of the counterclaim is dismissed.  Because Sandwich Isles has had a previous opportunity to amend the counterclaim, and because further amendment would be futile, the dismissal is with prejudice.

///

///

---

[4] Hee was the primary owner of Waimana, which owned Sandwich Isles during relevant periods.  *See Sandwich Isles*, 398 F. Supp. 3d at 763-64.

**2.** ***Count Two—Failure to Provide Notice of Adverse Action Under the ECOA, 15 U.S.C. §§ 1691(d)(1) & (2)***

Next, the United States moves to dismiss Count Two, which alleges a failure by the United States to provide notice of "adverse actions" in violation of 15 U.S.C. § 1691(d)(1) & (2), when it rejected Sandwich Isles' application for extension of credit, failed to fully fund the subject loans, or failed to restructure the loans. *See* ECF No. 172 at PageID #2464.

The United States points out that the ECOA's definition of "adverse action" specifically "does not include a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default, or where such additional credit would exceed a previously established credit limit." 15 U.S.C. § 1691(d)(6). Additionally, an ECOA regulation explains that "adverse action" does not include "[a]ny action or forbearance relating to an account taken in connection with inactivity, default, or delinquency as to that account[.]" 12 C.F.R. § 202.2(c)(2)(ii).

Given those definitions, Count Two plainly fails—none of the alleged failures to provide notice concerned "adverse actions" under the ECOA. *See, e.g.*, *Harara v. ConocoPhillips Co.*, 377 F. Supp. 2d 779, 792 (N.D. Cal. 2005) ("As the adverse action was based on plaintiff's default, section 1691(d)(2) does not provide plaintiff with a basis for a claim."); *Adams v. Bank. of Am., N.A.*, 237 F. Supp. 3d

1189, 1210 (N.D. Ala. 2017) ("As a matter of binding precedent, when a debtor is in default at the time her note is accelerated, that acceleration is not an adverse action.") (citing *Haynes v. Bank of Wedowee*, 634 F.2d 266, 272 (5th Cir. 1981)); *Davis v. Citimortgage, Inc.*, 2011 WL 891209, at *2 (E.D. Mich. Mar. 11, 2011) ("[T]he ECOA's notice requirements do not apply where the consumer requesting credit is delinquent or in default on an existing credit arrangement with the creditor.").[5] Because further amendment would be futile, the dismissal of Count Two of the counterclaim is with prejudice.

## B.     The United States' Rule 54(b) Motion

The United States, having prevailed earlier at summary judgment under Rule 56, seeks entry of partial judgment under Rule 54(b) on Count One (breach of contract) of its complaint. The motion, however, comes to the court in a somewhat unusual posture. Normally, the Rule 54(b) movant seeks entry of partial judgment so that it may immediately appeal a final decision as to a particular defendant or claim, and the applicable analysis is framed in those terms. *See, e.g.*, *Curtiss-Wright Corp.*, 446 U.S. at 8 ("Once having found finality, the district court must go on to determine whether there is any just reason for delay. Not all final judgments on individual claims should be immediately appealable, even if they are

---

[5] Indeed, in its Opposition, Sandwich Isles only opposed dismissal of Count One of its counterclaim and did not contest that Count Two fails to state an ECOA claim.

in some sense separable from the remaining unresolved claims. . . . It is left to the sound judicial discretion of the district court to determine the 'appropriate time' when each final decision in a multiple claims action is ready for appeal.") (citation omitted).

But here, the United States seeks a partial judgment to begin collection proceedings, or at least to attach the judgment to certain property of Sandwich Isles to "protect the United States' practical ability to recover on a monetary judgment." ECF No. 179-1 at PageID # 2519. And Sandwich Isles, the losing party (who would ordinarily be desiring an immediate appeal and thus be the party seeking Rule 54(b) certification), is *opposing* entry of partial judgment. *See* ECF No. 186 at PageID #2588.

Nevertheless, counsel for Sandwich Isles indicated at the hearing that, should the court certify the judgment as final under Rule 54(b), then Sandwich Isles indeed desires and intends to file an immediate appeal as to the breach of contract count. Thus, the court analyzes the Rule 54(b) request by applying the usual factors to determine whether there is "no just reason for delay"— i.e., whether there has been "an ultimate disposition of an individual claim entered in the course of a multiple claims action," and "whether the claims under review [are] separable from the others remaining to be adjudicated and whether the nature of the claims already determined [are] such that no appellate court would have to

decide the same issues more than once even if there were subsequent appeals."
*Curtiss-Wright*, 446 U.S. at 7, 8.

And courts sometimes indeed consider a plaintiff's need to execute on a judgment promptly in deciding whether to enter a Rule 54(b) judgment.  *See, e.g.*, *Bank of Lincolnwood v. Fed. Leasing, Inc.*, 622 F.2d 944, 951 (7th Cir. 1980) ("The just economic interest of [plaintiff] in the prompt entry of a final enforcement judgment was a fact which the trial court could properly consider [in entering a Rule 54(b) judgment.]") (citing *Curtiss-Wright*); *Halliburton Energy Servs., Inc. v. NL Indus.*, 2008 WL 2697345, at *8 (S.D. Tex. July 2, 2008) ("Courts have noted that Rule 54(b) certification may be used to permit prompt execution of a judgment.") (citing *Lincolnwood*, among other cases); Charles A. Wright et al., *Federal Practice and Procedure* § 2659 (4th ed. 2014) ("As noted by the Supreme Court in the *Curtiss-Wright* case, delay in being able to execute on a judgment may result in serious economic prejudice to the judgment winner meriting immediate review.") (noting cases).

Applying the relevant factors, the United States is entitled to entry of a partial final judgment on Count One.  The court's decision as to Count One as to Sandwich Isles is final.  It is "an ultimate disposition" on a single "claim entered in

the course of a multiple claims action." *Id.* at 7.[6]  There is nothing left to decide under Count One.

Sandwich Isles' breaches of contract under Count One, although related, are completely different than Counts Three through Six against Hee, Olds and other Waimana Defendants alleging (1) violations of the Federal Priority Statute, 31 U.S.C. § 3713, (2) violations of provisions of the Federal Debt Collection Procedures Act, 28 U.S.C. § 3304, for post-insolvency transfers, and (3) breaches of fiduciary duty.  *See* ECF No. 1 at PageID #29 to 44.  These counts are against different defendants with different claims.  The claims involve preferential payments, knowledge of Sandwich Isles' "insolvency," and transfers to insiders—not whether Sandwich Isles was in breach of loan contracts.

Assessing the relationship between Count One and Count Two (seeking to foreclose on property of Sandwich Isles), however, presents a closer

---

[6] In response, Sandwich Isles argues that it has counterclaims under the ECOA that could offset any amount of judgment it owes under Count One.  But "[t]he mere presence of [nonfrivolous counterclaims] does not render a Rule 54(b) certification inappropriate." *Curtiss-Wright*, 446 U.S. at 9.  In any event, the court has now dismissed those counterclaims with prejudice—there is no possibility of a reduction of judgment based on counterclaims.  Likewise, the Court of Federal Claims has subsequently dismissed a takings claim asserted by Sandwich Isles against the United States (a claim that Sandwich Isles also contended could be a set-off to amounts owed under a Rule 54(b) judgment).  *See Sandwich Isles Commc'ns, Inc.*, 145 Fed. Cl. at 575; *see also* ECF No. 198.  Moreover, the ECOA counterclaims and any takings claim are "not legally or factually related to . . . [the breach of contract] claim [such that] no court need revisit this judgment." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 954 (9th Cir. 2006) (affirming entry of Rule 54(b) certification).  The same factors apply to the amended counterclaim of Olds, ECF No. 194.  That is, Olds' amended counterclaim does not affect the court's ruling on Count One against Sandwich Isles.

question, but ultimately also is sufficiently distinct—requiring proof of different facts than Count One—so as not to preclude entry of a Rule 54(b) judgment. Count Two, which was asserted against any party having interests on property pledged as security for Sandwich Isles' loans, implicates the validity and priority of security interests—not whether Sandwich Isles breached the loan agreements. Although prevailing on Count One might be a prerequisite to foreclosing on property of Sandwich Isles, the facts at issue in the two counts are unrelated. *See Wood*, 422 F.3d at 881-82 (discussing whether different relief on different counts "stems largely from the same set of facts and would give rise to successive appeals that would turn largely on identical, and interrelated facts").

Next, in determining whether there is "no just reason for delay," the court considers "judicial administrative interests as well as the equities involved." *Curtiss-Wright*, 446 U.S. at 8. The United States has demonstrated that entering a partial final judgment under Rule 54(b) could aid in protecting its ability to recover against Sandwich Isles. As explained in the July 22, 2019 Order, co-Defendant Paniolo Cable Company, LLC ("Paniolo") is involved in bankruptcy proceedings, necessitating a stay of proceedings against that entity, precluding further relief seeking foreclosure under Count Two until Paniolo's bankruptcy proceedings are concluded. *See Sandwich Isles*, 398 F. Supp. 3d at 773-74. Given that posture, allowing the United States to proceed to judgment with Count One weighs in favor

of Rule 54(b) certification.  *See, e.g.*, *Lincolnwood*, 622 F.2d at 951 ("An important effect of a 54(b) certification is that the entry of judgment permits prompt execution.").

More importantly, the United States has explained that, while this action has been pending, Sandwich Isles has "purported to convey to its affiliates an interest in its significant real property in Mililani, Hawaii."  ECF No. 179-1 at PageID #2520-21.  It has evidence of Sandwich Isles' post-insolvency conveyances of property that it claims could jeopardize collection efforts on Count One of the complaint.  *See* ECF Nos. 179-2, 179-3, and 179-4.  And, according to the United States, other creditors of Sandwich Isles have asserted, or may assert, claims against Sandwich Isles (and its real property).  ECF No. 179-1 at PageID #2521.  The court agrees that these circumstances "suggest that there is a risk that Sandwich Isles will dissipate its assets before federal claims beyond Count I are resolved."  *Id.*

Given this record, the equities weigh in favor of the United States— entry of a Rule 54(b) judgment on Count One of the complaint could "preserve the United States' ability to collect on a claim this Court has already determined to be meritorious."  *Id.* at PageID #2523.  *See Curtiss-Wright*, 446 U.S. at 12 (reasoning that if "a delay in entry of judgment on [plaintiff's] claims would impair [plaintiff's] ability to collect on the judgment, that would weigh in favor of

certification"); *see also, e.g.*, *Corporate Comm'n of Mille LACS Band of Ojibwe Indians v. Money Ctrs. of Am., Inc.*, 986 F. Supp. 2d 1062, 1067 (D. Minn. 2013) ("The principal force behind the Commission's Motion for the Entry of Judgment is its dwindling prospect of collecting the $5.6 million judgment. . . . MCA's insolvency makes the immediate entry of judgment essential to mitigating the Commission's already diminished odds.") (citations omitted); *Capital Distrib. Servs., Ltd. v. Ducor Express Airlines, Inc*., 462 F. Supp. 2d 354, 358 (E.D.N.Y. 2006) (granting Rule 54(b) certification, reasoning in part that "[plaintiff] will likely suffer severe hardship from such delay [in entering judgment] [where] [plaintiff] faces the real possibility that its judgment will be rendered uncollectible during the pendency of this action"). In short, there is "no just reason for delay." Fed. R. Civ. P. 54(b).[7]

///

///

///

///

---

[7] To be clear, this order does not rule on, or necessarily approve of, any particular post-judgment process against Sandwich Isles that the United States might attempt after entry of this Rule 54(b) judgment. Any collection efforts—whether by attachment of property, recordation of a judgment, or other garnishment proceedings—are simply not before the court. In this regard, this order concerns only whether the United States has met its burden to demonstrate the need under Rule 54(b) for entry of judgment on Count One of its complaint.

# V. **CONCLUSION**

For the foregoing reasons, (1) the United States' Motion to Dismiss First Amended Counterclaim of Sandwich Isles Communications, Inc., ECF No. 176, is GRANTED, and (2) The United States' Motion for Entry of Final Judgment on Count I of the Complaint, ECF No. 179, is GRANTED. The First Amended Counterclaim is DISMISSED with prejudice. A Rule 54(b) judgment shall issue forthwith in favor of the United States and against Sandwich Isles.

The evidence submitted by the United States in its Reply indicates that, as of September 30, 2019, the exact amount owed by Sandwich Isles for breach of contract under Count One was $136,598,437.40. *See* Kuchno Decl. ¶ 5, ECF No. 196-1 at PageID #3202; *see also id.* at PageID #3204-06 (providing billings of interest and principal due). But because interest on that amount has apparently continued to accrue since that time, to fix the exact amount of judgment, the United States is instructed to file a declaration (including similar proof of interest and principal due) with an updated amount owed as of the date this order is filed. That declaration is due by **February 7, 2020**. If Sandwich Isles desires to dispute the calculation of that amount, it may do so by **February 14,**

///

///

///

**2020**—with any opposition strictly limited to the calculation.  After approval by this court, the clerk of court will enter an amended Rule 54(b) judgment, with the total amount owing under Count One of the Complaint.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, February 3, 3020.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*United States v. Sandwich Isles Commc'ns, Inc.*, Civ. No. 18-00145 JMS-RT, Order (1) Granting Motion to Dismiss First Amended Counterclaim of Sandwich Isles Communications, Inc., ECF No. 176; and (2) Granting Motion for Entry of Final Judgment on Count One of the Complaint, ECF No. 179