**Hawaiian Telcom**

**SENT VIA EMAIL**

The United States of America
United States Department of Justice, Civil Division
P.O. Box 875, Ben Franklin Station
Washington, DC 20044-0875
c/o Shane Huang, Esq
shane.huang@usdoj.gov

The United States Marshall of the District of Hawaii
300 Ala Moana Blvd., Room 2800
Honolulu, HI 96850
c/o Channing Iwamuro
channing.iwamuro@usdoj.gov

Dated:  May 13, 2024

Dear Sirs,

Reference is made to that certain *Order Approving the United States of America's Unopposed Motion for Order Approving Execution Sale Procedures* (the "Sale Procedures Order"), entered on April 22, 2024 by the U.S. District Court for District of Hawaii (the "Court") in the case of *United States of America v. Sandwich Isles Communications, Inc.*, Civ. No. 18-00145 JMS-RT (the "Litigation") at Docket No. 535, as well as the related Execution Sale Term Sheet annexed to the Sale Procedures Order (the "Term Sheet").  Capitalized terms used herein without definition have the meanings given them in the Sale Procedures Order or the Term Sheet.

Pursuant to the Sale Procedures Order, Hawaiian Telcom, Inc. ("HTI"), a Hawaiian corporation, is pleased to submit this written bid (the "Bid") to purchase certain assets owned by Sandwich Isles Communications, Inc. ("SIC") in accordance with the Sale Procedures Order and as more specifically set forth below (the "Sale").

    A. INTRODUCTION

        1. **RUS' existing investment in the Hawaiian Home Lands**.  As an agency of the United States government, the Rural Utility Service ("RUS") fulfills its mission of facilitating universal access to modern communications services by, among other things, financing through grants and loans the buildout and operation of telecommunications networks in underserved areas.  In this particular matter, RUS

financed the buildout and operations of a network providing telephone service[1] on the Hawaiian Home Lands, through a series of loans made to SIC. Using these funds provided by RUS, SIC built and operated a telecommunications network and continues to this day to provide telephone services through this network financed by RUS. As evidenced by its Tariff on file with the Hawaii Public Utilities Commission ("HPUC"), SIC's telephone services have historically included tariffed voice, long-distance, VOIP, bundled high speed internet and data. The assets financed by the RUS and used by SIC to provide telephone service are those more fully described in the loan documentation for such loans, including the Mortgage Agreement (collectively, the "Loan Documents"). According to its public tariff on file with the HPUC, other providers of communications services (including video) are permitted to use SIC's facilities (including conduits). This evidences that SIC is the owner of a telecommunications network that that provides service to the Hawaiian Home Lands, including all conduits necessary for the operation of that network.

SIC eventually defaulted on its obligations, leading to the Litigation. After obtaining its judgment against SIC, RUS levied upon the assets of SIC used to provide telephone service, including those financed by RUS and as described in Loan Documents. Through public auction conducted by the US Marshal, RUS now seeks to sell the assets upon which it has levied.

2. **The Trustee Sale**. During the pendency of the Litigation, an SIC affiliate, Paniolo Cable Company, entered bankruptcy. In the course of that bankruptcy, the Paniolo Trustee, Michael Katzenstein (the "Trustee"), obtained a judgment against SIC for amounts owed by SIC to Paniolo. In partial satisfaction of such judgment, the Trustee obtained, through levy and a marshal sale, certain assets that had previously belonged to SIC, including central offices, conduits and manholes, and the associated entitlements underlying such assets. The Trustee subsequently sold those assets to HTI pursuant to section 363 of the bankruptcy code (the "Trustee Sale"). As the successful bidder in the Trustee Sale, HTI now owns such conduits and associated entitlements previously owned by SIC. Importantly, included in the assets HTI purchased in the Trustee Sale was a portion of SIC's interest in License Agreement No. 372 issued by the State of Hawaii Department of Hawaiian Home Lands ("DHHL") (such license, the "372 License") necessary for HTI's ownership and operation of former SIC assets it purchased. HTI and DHHL also entered into Right-of-Entry Agreement No. 704 that also provides for the access rights necessary for HTI to operate the assets purchased in the Trustee Sale independent from the 372 License.

---

[1] The term "telephone service" as used herein is as defined in the Rural Electrification Act of 1936 as amended, Section 203(a).

3. **Hawaiian Telcom, Inc.**  HTI is a leading provider of integrated communications services in the state of Hawaii, including High-Speed Internet, data, video entertainment, and local and long-distance voice services.  As a state-wide provider, HTI already provides telecommunications services to customers within the Hawaiian Home Lands and surrounding areas.   By virtue of its purchase of the assets in the Trustee Sale, it also operates a middle-mile network in the Hawaiian Home Lands to which the SIC network is interconnected and through which the SIC Parties continue to provide retail services to the Hawaiian Home Lands. HTI has all federal and state licenses and entitlements (including the portion of License 372 formerly owned by SIC) necessary to do so.  It also has in place a negotiated letter of authorization ("HT LOA") with Team Telecom which governs the use and operation of its telecom assets.  As a long-standing carrier in Hawaii, HTI also has connection agreements and access agreements already in place with virtually every other communications provider in the state.

4. **HTI's Proposed Bid**. Pursuant to this Bid, HTI proposes to purchase select physical assets, specifically the Conduit System (as defined below), which Conduit System is essential for the expansion of advanced fiber networks into the Hawaiian Homelands. This potential expansion aims to enhance connectivity for beneficiaries, residents, businesses, and community anchor institutions on the Hawaiian Home Lands, leveraging the capabilities of HTI's state-of-the-art fiber network.  It is important to note that while HTI has considered purchasing SIC's network elements and customer relationships, it has deliberately chosen not to include such assets in its Bid.  The reasons for that are several.  First, the SIC network itself is outdated, and generally not capable of providing modern broadband services to the beneficiaries.  Second, while HTI has deep experience in operating legacy networks such as the SIC network, HTI believes the uninterrupted provision of legacy services and switch-over to modern networks can be significantly de-risked by leaving the operations of the legacy SIC network in the hands of its current operators.  In this way, switch-over issues are avoided, and the ability of customers to gain access to the modern telecommunications networks of HTI and other carriers is accelerated.  Third, HTI envisions that a transaction involving only the Conduit System is less likely to require lengthy regulatory hearings and approvals (including with Team Telecom for the transfer of network elements).  Instead, HTI envisions that the Conduit System can instead be incorporated within HTI's existing authorizations, including HTI's existing federal and state licenses and its negotiated HT LOA.  Similarly, HTI understands that SIC also has a Letter of Authorization for its SIC network.  HTI therefore further envisions that the deal will be further de-risked in that SIC will continue to operate the SIC network under the terms of its own Letter of Authorization, thus avoiding

the risk inherent of having a lengthy delay for the transfer of all network authorizations (including a new Letter of Authorization) to a successor operator. For these reasons, HTI's Bid does not include the acquisition of SIC's broader last mile network or its customer relationships (other than carriers).  Nonetheless, as more fully described below, HTI confirms that it is committed to providing non-discriminatory access to the Conduit System to other carriers, including SIC and any subsequent owners of SIC's customer relationships, in order to ensure continuity of service to beneficiaries.  HTI's acquisition of the Conduit System will allow HTI the ability to integrate it with HTI's existing infrastructure, and an appropriate return on RUS' significant investment in the Hawaiian Home Lands can therefore be preserved and amplified.  By placing the Acquired Assets (as defined below) in the hands of a responsible, experienced local operator, RUS can assure that the assets are more rapidly deployed in a manner which will result in the Hawaiian Home Lands' beneficiaries having a modern, superior choice for their telecommunications and broadband needs.

Finally, in the event that other bids are received for assets that are not included in HTI's Bid, HTI requests that it remain a Qualified Bidder for all purposes, including for such other assets.

B. **SUMMARY OF SALE TERMS**

1. **Identity of Assets to be Purchased:**   HTI wishes to bid on certain assets (the "Acquired Assets") owned by SIC as identified as follows:

    a. **The Acquired Assets:**

    1. Conduit System.  All conduits, ducts, subducts, innerducts, manholes, handholes, pullboxes, riser conduits, connected panel boxes and the like which are generally interconnected and capable of protecting and housing underground communications cables and facilities used in the provision of telephone service, in each case (a) as described and financed by RUS (or as replacements as set forth in the RUS Loan Documents) and (b) as evidenced by SIC's public tariff as being used historically by SIC to provide telephone service to customers on the Hawaiian Home Lands including voice, bundled internet, long-distance, VOIP, and data services, each as more fully set forth in SIC's PUC Tariff No. 1 and its amendments (collectively, the "Conduit System"), in each case to the extent such assets have not already been purchased by HTI pursuant to the Trustee Sale.

2. **Entitlements.** All existing and pending entitlements to the extent not already owned by HTI,[2] including, SIC's interests in all memoranda of agreement, easements, leases, license agreements (including any interest in License 372), letters of approval, special area management permits, franchises, and rights of way or rights of interest, necessary to build, construct, repair, maintain, and operate the Conduit System. For avoidance of doubt, pursuant to this Sale, HTI intends to acquire such entitlements, or an additional interest in any entitlements including License 372, to the extent that (a) HTI does not already own such entitlements and (b) such entitlements, or expansion of interest in any existing entitlements owned by HTI, are necessary for HTI to own and operate the Conduit System.

b. **The Excluded Assets:** All assets, network elements, contracts, relationships and rights of SIC that do not constitute Acquired Assets (the "Excluded Assets") shall not be purchased by HTI as part of the Sale. For the avoidance of doubt, the Excluded Assets will include SIC's retail customer relationships and any entitlements not necessary for HTI to operate the Conduit System.

c. **Additional Assets:** In the event there are Qualified Bidders for additional assets other than the Acquired Assets, HTI reserves the right to participate in the Auction for such other assets, in accordance with the Sales Procedure Order.

2. **Contact Information:** Plaintiff and the Marshal should direct all communications regarding this bid to Daniel Masutomi (daniel.masutomi@hawaiiantel.com, 808-927-3058), Mark Fahner (mark.fahner@altafiber.com, 513-477-0499), and Tom Bosse (tom.bosse@altafiber.com, 513-703-9447). Technical questions about the Acquired Assets and the Excluded Assets can be directed to Daniel Masutomi.

3. **Purchase Price**:

a. **The Base Purchase Price:** Provided it is chosen as the Successful Bidder and pursuant to the specific terms outlined in this Bid, including entry by the Court of the Sale Order (as defined below), HTI will make a cash payment of five hundred thousand dollars ($500,000.00) in consideration for the Acquired Assets (the "Purchase Price"). Consistent with the Sale Procedures Order, the Purchase Price shall be paid to the Marshal within (7) days of the conclusion of the Auction but

---

[2] As noted above, through the Trustee Sale HTI has already purchased many of the entitlements underlying the Conduit System. Furthermore, as a long-standing provider of telecommunications services in the state of Hawaii, including in the Hawaiian Home Lands, HTI already possesses an international and domestic 214 license from the FCC and all requisite state authorizations. HTI also entered into a negotiated HT LOA governing the security and operations of its telecom assets. HTI believes the HT LOA will also govern the Acquired Assets as well.

shall only be released to the Plaintiff upon the closing of the Sale.  In the event the Sale Order is not entered, or the Sale does not otherwise close for any reason, the balance of the Purchase Price in excess of the Good Faith Deposit shall be returned to HTI (with return of the Good Faith Deposit addressed in paragraph B.8 below).

  b. **The Purchase Price Enhancement:**  As more fully set forth in Paragraph B.12 below, in an effort to facilitate certainty of outcome, a smooth transition of the Acquired Assets and more effective deployment of enhanced broadband throughout the Hawaiian Home Lands, HTI is prepared to enter into a settlement (on terms defined below) with the RUS, SIC and SIC's affiliates. While not a condition of the Sale, if a settlement is entered by RUS, SIC and SIC's affiliates consistent with the terms of the Settlement Proposal (as defined below), HTI will increase the Purchase Price by an additional five hundred thousand dollars ($500,000.00).

4. **Due Diligence:**  As set forth in Paragraph 4 of the Term Sheet, SIC and each of its affiliates (the "SIC Parties") will confirm in writing that SIC is the sole owner of the Acquired Assets.  This provision is a material element to the Bid, and no sale shall be consummated by HTI absent such written confirmation in a form acceptable to HTI.  If SIC asserts that any other party owns a portion of the Acquired Assets, it shall identify that party and the assets owned, and HTI shall have the option of revoking this bid if such Acquired Assets are not deemed assets of SIC subject to the Sale.

5. **Irrevocable:**  HTI confirms that this Bid is irrevocable unless and until Plaintiff accepts another bid and this Bid is not selected as a Backup Bid or SIC identifies another party as owner of any portion of the Acquired Assets.  This Bid will be immediately revocable and non-binding if HTI is not designed the Successful Bidder or the Backup Bidder for the Acquired Assets, SIC identifies another party as owner of any portion of the Acquired Assets, or the Court fails to enter an order confirming the Sale in a form acceptable to HTI.

6. **No Contingencies or Conditions:**  HTI states that this Bid is made subject to the terms set forth herein and is not otherwise subject to any contingencies or conditions that are inconsistent with the terms of the Sale Procedure Order.

7. **Backup Bid:**  HTI confirms that this Bid will serve as a Backup Bid if the Bid is the highest and best bid after the Successful Bid.

8. **Good Faith Deposit:**  On this date, HTI mailed the Good Faith Deposit of one hundred thousand dollars ($100,000.00) in the form of a certified check payable to the order of the United States Marshal for the District of Hawaii to the address identified in the Sale Procedures Order.  A copy of the certified check and the mailing documentation has been provided under separate cover.  If the Court does not enter the Sale Order confirming the Sale to HTI, of if, after entry of the Sale

Order, the Sale does not close for reasons outside of HTI's control, then the Good Faith Deposit shall be returned to HTI.

9.  **Evidence of Consideration:** HTI is well-capitalized and has ample access to the financial resources necessary to complete this transaction and deploy the Acquired Assets. Financial reports for the corporate family of which HTI is part are publicly available. The most recent annual report on Form 10-K for the most recent fiscal year of HTI's corporate parent, as filed with the Securities & Exchange Commission, is publicly available.[3] As of December 31, 2023, the consolidated company held $268.0 million of short-term liquidity, comprised of $9.1 million of cash and cash equivalents, and the remainder in undrawn capacity on lending facilities. This liquidity is available to HTI. There have been no developments since this filing that have materially altered the available liquidity or HTI's ability to access it.

10. **Proposed Use of Property:** As set forth above, HTI intends to leverage RUS's substantial existing investment in the Hawaiian Home Lands by integrating the Acquired Assets into HTI's existing state-of-the art telecommunications footprint already in certain parts of the Hawaiian Home Lands and surrounding areas. HTI believes such integration will extend and accelerate the ability to provide modern communications services (including broadband), information services and associated communications services to residents of the Hawaiian Home Lands. Importantly, as more fully described in Paragraph B.11 below, HTI already has existing access and network connection agreements with virtually every telecommunications operator in the state of Hawaii. By placing the Acquired Assets into the hands of a well-regarded, experienced local telecommunications operator already providing a full suite of modern communications services within the Hawaiian Home Lands, and with intercarrier access, conduit occupancy, and network agreements already in place with other carriers and service providers throughout the state of Hawaii, HTI believes that the Sale can significantly reduce the timing and de-risk the process through which the RUS investment and the Acquired Assets are made available to carriers deploying modern communications services in the Hawaiian Home Lands.

11. **Access Provided:** As a regulated telecommunications carrier, HTI offers access to its physical facilities and its network on a non-discriminatory basis in a manner consistent with FCC regulations and other applicable laws and regulations. Consistent with such standard, non-discriminatory industry practices and HTI policy, any telecommunications service provider who wishes to use and access available conduit capacity or physical facilities must do so pursuant to a standard conduit occupancy, network or facility agreement directly with HTI, pursuant to

---

[3] The report is available here: https://www.sec.gov/ix?doc=/Archives/edgar/data/716133/000095017024035762/ck0000716133-20231231.htm.

which usage is requested and standard conditions governing access and occupancy, including items such as insurance, fees, compliance and security, are documented and agreed by both parties.

In accordance with Paragraph 6 of the Term Sheet, HTI confirms that available capacity on the Conduit System, and HTI's network, will be made available to any telecommunications service provider offering communications services on the Hawaiian Home Lands (including for avoidance of doubt the SIC Parties) on the same non-discriminatory, contracted basis. As noted above, HTI has existing occupancy or connection agreements with virtually all telecommunications carriers in the state of Hawaii. Generally, for such carriers with existing agreements who are not in default thereunder, occupancy requests for the Conduit System and requests for network access will be covered by those existing agreements on those existing terms. For other carriers without such agreements, including certain of the SIC Parties, such carriers will be required to enter into industry-standard occupancy or connection agreements for use of available capacity on the Conduit System or connection to the HTI network. Upon expiration of a reasonable period following the closing of the Sale (not to exceed 120 days), HTI reserves the right at its sole discretion to disconnect service or terminate occupancy, as applicable, for any carriers occupying the Conduit System or connected to HTI's network who have failed to enter into such industry-standard agreements, or who have failed to comply with any such existing agreements.

For avoidance of doubt, the access provided to the any third parties, including the SIC Parties, would be for their own use and the usage rights would not be alienable. Parties shall only be able to gain access to the Conduit System or the HTI network through their own agreements with HTI and not any previous arrangements with SIC.

12. **Proposed Settlement:** In order to ensure the most effective leveraging of RUS' existing investment and mission to facilitate the deployment of modern telecommunications services to underserved areas such as the Hawaiian Home Lands, if the Sale is consummated with HTI, HTI is willing to offer RUS and the SIC Parties a settlement, subject to final documentation, which shall include the following material terms (the "Settlement Proposal"):

a. RUS and the SIC Parties waive any further claims to the Acquired Assets and any assets HTI acquired by virtue of the Trustee Sale;

b. The SIC Parties agree to: (i) waive and release all claims against HTI existing as of the date of the settlement; (ii) no longer contest any use by HTI of the entitlements including License 372 (both as acquired under the Trustee Sale, and as comprising a part of the Acquired Assets hereunder) or any other entitlement or agreement to operate on the Hawaiian Home Lands: (iii) promptly port all numbers to HTI as requested by customers: (iv) dismiss all pending litigation against HTI,

including an immediate dismissal of the current appeal of the rulings in the Paniolo bankruptcy; and (v) agree that the SIC Parties will not in any way oppose, directly or indirectly, and will affirmatively support any of HTI's efforts to obtain a license, access rights or right-of-entry for its operations on the Hawaiian Home Lands.

    c. Provided that the SIC Parties obtain and are otherwise in compliance with the access and connection agreements described in paragraph B.11 above: (i) HTI will defer and then forgive the access and connection fees set forth in their connection or access agreements and the applicable tariffs, for a period of 120-days from the closing of the Sale; and (ii) HTI will waive these past due trade payables for services previously provided to the SIC Parties under their existing agreements with HTI. [4]

For the avoidance of doubt, acceptance of the Settlement Proposal is not a condition to HTI's Bid, and RUS and the SIC Parties may decline to enter the Settlement. In that instance, HTI would provide the SIC Parties access consistent with the above paragraph 11, and HTI reserves all rights available in law and equity, including but not limited to the right to disconnect access and to pursue past due amounts owed by the SIC Parties to HTI as the result of their use of HTI's network or otherwise. Also, if the Settlement is not accepted by any of the RUS or the SIC Parties, then HTI will not offer the Purchase Price enhancement set forth in paragraph B.3(b) above.

13. **Deal Certainty.** Because HTI already possesses virtually all licenses necessary to operate the Acquired Assets, including international and domestic 214 licenses, PUC authority, and importantly, the HT LOA governing the security and operation of telecommunications assets, HTI believes a Sale to HTI can be consummated more quickly with HTI than a potential sale with other potential acquirers. A Sale in which the existing network remains operated by SIC's existing LOA also obviates the need for a lengthy review and negotiation which would be required for the transfer of such LOA to a different buyer. The Sale is also de-risked in that HTI already has existing access and network agreements with virtually every other carrier in the state, and wide experience in administering such agreements. While HTI is an experienced operator of legacy telecom networks, its experience also

---

[4]SIC's insolvency is well-known and publicized, including a consistent failure to pay trade payables for their historical and current use of HTI telecommunication services and colocation services at non-discriminatory rates, which past due amounts HTI estimates in the millions of dollars. HTI has exhibited unusual patience with regard to the failure of the SIC Parties to keep their trade payables current, even as the SIC Parties have managed to find sufficient cash to fund a maelstrom of litigation over every aspect of communications on the Hawaiian Home Lands. The net result is that not only has HTI had to expend considerable legal fees, but through the provision of significant unpaid services to the SIC Parties, HTI has essentially been subsidizing their operations and the provision of telephone services to the beneficiaries on the Hawaiian Home Lands.

informs that the existing SIC network be best administered by existing operators. If the Settlement Proposal is accepted, HTI will continue to subsidize the SIC Parties' legacy operations while customers are migrated to the modern telecommunications networks of HTI and other carriers, thus helping RUS achieve its goal of facilitating an accelerated deployment of broadband in the Hawaiian Homelands.

14. **Sale Confirmation Order:**  The closing of the Sale, and any obligation of HTI to close the sale, will be subject to entry of a final sale confirmation order by the Court, not subject to appeal, that is acceptable in all respects to HTI and includes provisions that provide as follows (the "Sale Order"):[5]

   a. HTI's Bid and Sale are consistent with, and HTI has complied in all respects with, the Sale Procedures Order, and SIC, any affiliate of SIC and all persons claiming by, through or under SIC, are barred from challenging via litigation or otherwise (i) the Trustee's levy and execution of the Acquired Assets; or (ii) the sale and transfer of the right, title and interest at law or in equity in any of the Acquired Assets to HTI.

   b. The Sale shall comply with all applicable laws and regulations attendant to the ownership of the Acquired Assets, and if any regulatory approvals are required, the Sale shall not close until such regulatory approvals, if any, are obtained.

   c. The Acquired Assets include all elements of the Conduit System including as financed by the RUS and including as used by SIC to offer and provide telephone and other telecommunications services from time to time including tariffed voice, long-distance, VOIP, bundled internet and data. SIC owns all exclusive right, title, and interest in the Acquired Assets necessary to transfer and convey the Acquired Assets in their entirety to the Marshal and to HTI.

   d. SIC and any other person in possession of the Acquired Assets shall relinquish possession of and turn over the Acquired Assets to HTI upon the closing of the Sale and, upon request of HTI, the Court shall enter a Writ of Possession in favor of HTI to this effect.  Pursuant to paragraph 3 of the Term Sheet, the SIC Parties will also actively cooperate with HTI on any porting requests made after the Sale.

---

[5]In the event that HTI ultimately acquires assets in addition to the Acquired Assets (as defined above), "Acquired Assets" as used in this paragraph shall be deemed to include the assets as actually purchased in the Sale.

e. Upon closing of the Sale, SIC, its affiliates and all persons claiming by, through or under them shall be perpetually barred of and from any and all right, title interest and claims at law or in equity, in the Acquired Assets and every part thereof. Any use of the Acquired Assets or the HTI network by SIC or any of its affiliates shall solely be by virtue of an access or connection agreement entered into with HTI.

f. The Acquired Assets shall be sold to HTI free and clear of any and all liens, interests, claims, interests and encumbrances of any kind, including any restrictions on transferability, restrictions on use, or other similar restrictions.

g. HTI is not a successor-in-interest to SIC and the purchase of the Acquired Assets shall not expose HTI to any successor liability.

h. HTI is purchasing the Acquired Assets in good faith and for adequate consideration and the sale is not a fraudulent transfer.

i. HTI shall not have any liability, responsibility or obligation relating to Acquired Assets prior to the closing of the Sale, and SIC shall continue to operate the Acquired Assets in compliance with law and in the ordinary course of business until the closing.  Specifically, and without limitation, SIC shall promptly process and honor all number porting requests and conduit occupancy requests.

j. HTI shall not assume any liabilities, duties or obligations with respect to the Excluded Assets.

Please contact the individuals listed in paragraph B.2 above with any questions with respect to the foregoing.  We look forward to participating in the Auction to the extent there are other Qualified Bids.

Very truly yours,

By: /s/ Su Hwa Shin Meisenzhal
Name: Su Hwa Shin Meisenzahl
Title:  President, Hawaiian Telecom

1177 Bishop Street, Suite 17, Honolulu, HI  96813  hawaiiantel.com