KIRK T. MANHARDT
SHANE HUANG
MINIARD CULPEPPER JR.
United States Department of Justice
P.O. Box 875
Ben Franklin Station
Washington, DC 20044-0875
Telephone: (202) 305-0529
Email: miniard.culpepper@usdoj.gov

Attorneys for the United States

# UNITED STATES DISTRICT COURT
# DISTRICT OF HAWAII

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>    **Plaintiff,**<br>   v.<br>**SANDWICH ISLES COMMUNI-CATIONS, INC.,** *et al.*,<br>    **Defendants.** | **Civ. No. 18-145 JMS RT**<br><br>Hearing: July 2, 2024, 10:00 am<br><br>Judge J. Michael Seabright |

# UNITED STATES OF AMERICA'S
# REPLY TO DEFENDANT SANDWICH ISLES COMMUNICATIONS, INC.'S MEMORANDUM IN OPPOSITION

TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................... 1

I. The HTI Bid is a Qualified Bid…………………………………………….2

II. The HTI Bid is Not Unqualified as Conditional……………………..…….. 5

III. Federal and State Regulatory Law Does Not Preclude Confirmation….…...6

    a. Communications Act………………………………………….…….7

    b. Rural Electrification Act……………………………………………8

    c. The Hawaiian Homes Commission Act and License 372……………..9

IV. Continuity of Service & Waimana……………………………………….....10

CONCLUSION……………………………………………………….…...13

TABLE OF AUTHORITIES

PAGE(S)/FOOTNOTE

**CASES**

*In re Sandwich Isles Communications, Inc.*, Docket No. 2024-0164, Haw. Pub. Util. Comm'n. (May 31, 2024) .................................................................................. 6

*Sandwich Isles Communications, Inc. v. Hawaiian Telcom, Inc.*, Civ. No. 22-00435 JAO-KJM, 2023 WL 6378626, at \*21-25 (D. Haw. Sept. 29, 2023) (appeal pending, No. 23-3520 (filed Nov. 15, 2023)) ...................................................... 10

*Sandwich Isles Communications, Inc., Waimana Enterprises, Inc., Albert S.N. Hee, Forfeiture Order*, 35 FCC Rcd 10831 (2020) ........................................... 11, 12

*Petition of CRC Communications of Maine, Inc. and Time Warner Cable Inc. for Preemption Pursuant to Section 253 of the Communications Act, as Amended et al.*, WC Docket No. 10-143 et al., Declaratory Ruling, 26 FCC Rcd 8259, 8266-67, para. 14 (2011)……………………………………………………..FN 6

Telephone Number Portability, CC Docket No. 95-116, RM-8535, First Memorandum Opinion and Order on Reconsideration,12 FCC Rcd 7236, 7303-04, para. 117 (1997)……………………………………………….…..FN 6

**STATUTES**

47 U.S.C. § 251 ................................................................................................. 7, 8

7 U.S.C. § 921 ....................................................................................................... 8

42 STAT. 108 § 208 (HHCA)……………….......................................................9, 10

INTRODUCTION

Plaintiff the United States of America ("United States") respectfully submits this Reply in support of its *Motion for Order Approving Confirmation of Execution Sale* (the "Motion"). ECF No 544.

After agreeing to terms for a sales procedure—a step the United States pursued in connection with this execution sale in an effort to bring this long-standing matter to closure—Sandwich Isles Communications Inc. ("Sandwich Isles") now seeks to renege on its agreement and inject requirements wholly unsupported by the agreed text of the sale order, in a misguided effort to compel the sale of Sandwich Isles' assets to Sandwich Isles' parent company for a token payment. Concurrently, consistent with its pattern of obstruction throughout the course of this and related litigation, before this Court could review the sale, Sandwich Isles apparently abruptly shut off service to its customers, creating an emergency that has required the intercession of federal and state authorities. Sandwich Isles' actions demonstrate that confirmation of this sale is the only viable prospect for restoring phone service to Sandwich Isles' former customers, and its attempt to thwart the sales process should be rejected.

The United States agreed to move forward with the execution sale and mediation with Sandwich Isles in good faith to reach a conclusion in this matter. However, if the execution sale is not confirmed, the United States reserves the right

to pursue its foreclosure claim, Count II, against Sandwich Isles to recover on the $138 million owed by Sandwich Isles to the United States.

In its *Opposition to the Motion* ("Opposition"), ECF No. 549, Sandwich Isles ignores relevant facts and misconstrues the language of the Court's *Order Approving the United States of America's Unopposed Motion for Order Approving Execution Sale Procedures* (the "Order") (ECF No. 535). Contrary to Sandwich Isles' contentions, Hawaiian Telcom, Inc.'s ("HTI") bid for certain assets of Sandwich Isles[1] ("HTI Bid") is a "Qualified Bid," which the United States properly selected as the successful bid in compliance with the Order and all applicable laws.

## I.   The HTI Bid is a Qualified Bid

The Order—and its language to which the United States and Sandwich Isles negotiated and agreed—plainly states the requirements for a qualified bid. Order ¶ 4(d). Under the Order, a qualified bid must:

> Document the proposed use of the Property, including how the proposed use of the Property shall benefit the residents of the Hawaiian Home Lands and the bidder's capability to provide continuity of service in accordance with Sandwich Isles Communications, Inc.'s License from the date the court confirms the purchase.

---

[1] The HTI Bid seeks to purchase Sandwich Isles' conduit system and certain entitlements related to the operation of the conduits (the "Conduit System"). HTI Bid, § B(1).

ECF No. 535, ¶ 4(d)(ix).[2]  In a failing attempt to attack HTI's bid, Sandwich Isles selectively relies upon excerpts of the bid, taken out of context, to falsely manufacture conflict between the bid and this Court's Order.

Contrary to Sandwich Isles' characterizations, HTI's bid fully complied with the requirement of Paragraph 4(d)(ix) of the Order.  HTI's bid plainly documented how its use of the assets on which it bid will benefit the residents of the Hawaiian Home Lands and its capability to provide continuity of service. HTI Bid, § A(4). Moreover, the HTI Bid did not propose to upset the status quo—it expressly allows for service to continue to the Hawaiian Home Lands by providing Sandwich Isles and other carriers non-discriminatory access to the Conduit System. HTI Bid, § A(4). HTI's proposal would therefore avoid disruption of service during and after the sale process.[3] Additionally, HTI not only endeavors to allow continuity of service with its purchase of the Conduit System, HTI states that it plans to amplify and modernize the telecommunication service provided to the Hawaiian Home Lands. HTI Bid, § A(4). The HTI Bid more than satisfies Paragraph 4(d)(ix) of the Order.

---

[2] Paragraph 1 of the "Execution Sale Term Sheet" (ECF No. 535-1), similarly contains language requiring purchaser to explain how it is "capable of sustaining service" to the Hawaiian Home Lands, but does not go as far as require a bidder or purchaser to do so.

[3] To the extent that Sandwich Isles has degraded or discontinued service beginning on June 1, 2024, Sandwich Isles alone is responsible for those failures.

3

HTI bid on certain assets of Sandwich Isles (the Conduit System), but not all of them. The Order invites prospective bidders to bid on a "subset, lot, or package" of Sandwich Isles' assets, which is exactly what HTI did. ECF No. 535, ¶ 4(e). The Order contains no restrictions on which portions of assets a bidder must bid on, and explicitly grants the United States discretion to consider bids on partial lots. ECF No. 535, ¶ 4(e)(vi). Allowing bids for—and the United States' approval of—portions of Sandwich Isles' assets implicitly anticipates that some bids would be for assets that would not on their own be sufficient for assumption of full service to all Sandwich Isles customers. Sandwich Isles' contention that the only qualified bid would be one that undertakes operation of Sandwich Isles' network is unfounded.[4]

Accordingly, the Order cannot be read to require that bidders of any portion of the assets affirmatively assume all obligations of Sandwich Isles. Simply put, the Order allows for bidders to submit bids that anticipate Sandwich Isles' service as well as the service of other telecommunications providers. The HTI Bid complies

---

[4] The United States initiated the execution sale process to sell Sandwich Isles' personal property to enforce collection on its $138 million judgment against Sandwich Isles. *See* ECF 226. While the United States' recovery of its unpaid debt is a focal point of the United States' execution sale and the foundation of the Order and Motion, the United States acknowledges the oversight of federal and state regulatory authorities outside of this proceeding that are necessary to allow carriers to provide telecommunications service. Sandwich Isles asks the Court to undercut those regulatory authorities' jurisdiction and force HTI to continue to provide the services that Sandwich Isles provides. The Order is not a sidestep around the regulatory process, and was not intended to govern the continuity of telephone service to the Hawaiian Home Lands.

with the Order and is a "Qualified Bid."

## II. The HTI Bid is Not Unqualified as Conditional

Sandwich Isles next attacks HTI's bid claiming it is inappropriately conditional. Here, too, a bit of context explains why HTI requested that Sandwich Isles provide due diligence information in the form of confirmation of its ownership of the assets HTI seeks to purchase.

Sandwich Isles agreed in Paragraphs 4 and 5 of the Execution Sale Term Sheet to provide reasonable due diligence information requested by prospective purchasers. ECF No. 535-1, ¶¶ 4-5. Because Sandwich Isles is part of a telecommunications network that overlaps with affiliated companies that provide different services to the Hawaiian Home Lands, Paragraph 5 of the Execution Sale Term Sheet was intended to provide a means for obtaining any needed clarity. Consistent with, and in reliance upon, those commitments made by Sandwich Isles in the Execution Sale Term Sheet, and likely in an effort to avoid contentious litigation to obtain such information,[5] Section B(4) of the HTI Bid sought due diligence information from Sandwich Isles regarding the assets HTI seeks to purchase.

---

[5] Throughout this litigation and other related matters, the United States and other interested parties have been unable to obtain adequate and detailed information regarding Sandwich Isles' telecommunications network and its overlap with its affiliated companies (even after attempts to enforce discovery and production through this Court and the bankruptcy court).

Nonetheless, HTI has communicated to the United States that it would not allow Section B(4) of its bid to give Sandwich Isles veto power over its bid, and that it waives any condition implied by HTI's bid. Accordingly, Sandwich Isles' attempt to undermine HTI's bid as conditional should be rejected.

III.     Federal and State Regulatory Law Does Not Preclude Confirmation

The Court's Order requires the sale to be conducted consistent with all appliable laws, including, to the extent applicable, the Rural Electrification Act, the Communications Act, and the Hawaiian Homes Commission Act. Using the Order's basic requirement that the sale comply with relevant law, Sandwich Isles haphazardly argues that the HTI Bid violates the Order based on laws that do not apply to the Motion or prevent the Court from confirming the sale. These arguments should be rejected by this Court, as the regulatory agencies with primary jurisdiction to decide those issues have opened administrative proceedings to decide such matters. *See, e.g., In re Sandwich Isles Communications, Inc.*, Docket No. 2024-0164, Haw. Pub. Util. Comm'n. (May 31, 2024). HTI has committed to complying with all applicable laws, and none of the issues raised by Sandwich Isles would prevent this Court from entering an Order confirming that all applicable execution procedures were followed and reserving all regulatory issues for the respective agencies charged with enforcing those statutes and regulations.

To the extent the Court determines the Rural Electrification Act, the Communications Act, and the Hawaiian Homes Commission Act are applicable to its confirmation of the sale, the United States addresses Sandwich Isles arguments here.

    a. Communications Act

On June 7, 2024, the Federal Communications Commission ("FCC") issued an Emergency Order that waived certain porting rules under Section 251 of the Communications Act, 47 U.S.C. § 251. Exhibit 1 (FCC Emergency Order). As the FCC Emergency Order explains, the FCC "is responsible for the administration of telephone numbers, pursuant to section 251(e)(1) of the Communications Act of 1934, as amended (Act), and has long recognized the importance of consumers being able to keep their telephone numbers when they switch telephone service providers." *Id.* at para. 4 (citations omitted). The FCC issued the order after "becom[ing] aware that Sandwich Isles is unreasonably impeding this process by blocking current Sandwich Isles customers' ability to port their current Sandwich Isles telephone numbers to their new service providers." *Id.* at para. 3.

Now, through its Opposition, Sandwich Isles seeks to invoke the same law it has violated to the detriment of its customers, to somehow prevent HTI from purchasing the Conduit System. Sandwich Isles argues that a requirement that Sandwich Isles actively cooperate with "porting requests made after the Sale"

7

violates 47 U.S.C. §251(f)(1), the rural utility exemption to the Communications Act, without any further support. Opposition at 8. Not only does the FCC Emergency Order illustrate Sandwich Isles' hypocrisy here, but Section 251(f)(1) itself does not apply to HTI's basic request that Sandwich Isles cooperate with porting requests made after the sale, as required by the law.[6] HTI's request that Sandwich Isles cooperate with any porting request does not violate the Telecommunications Act and complies with the Order.[7]

      b. Rural Electrification Act

The Rural Electrification Act ("REA"), 7 U.S.C. § 921, does not limit the

---

[6] Section 251(f)(1) of the Communications Act only applies to the obligations imposed under Section 251(c). 47 U.S.C. § 251(f)(1). It does not apply to Section 214(a)'s discontinuance requirements or section 251(b)'s porting obligations. *See Petition of CRC Communications of Maine, Inc. and Time Warner Cable Inc. for Preemption Pursuant to Section 253 of the Communications Act, as Amended et al.*, WC Docket No. 10-143 et al., Declaratory Ruling, 26 FCC Rcd 8259, 8266-67, para. 14 (2011) ("Consistent with Commission precedent, we reaffirm that all telecommunications carriers, including rural carriers covered by section 251(f)(1), have a basic duty to interconnect their networks under section 251(a) and that all LECs, including rural LECs covered by section 251(f)(1), have the obligation to comply with the requirements set forth in section 251(b)."); *see also Telephone Number Portability*, CC Docket No. 95-116, RM-8535, First Memorandum Opinion and Order on Reconsideration,12 FCC Rcd 7236, 7303-04, para. 117 (1997) ("Because Section 251(f)(1) does not exempt rural LECs from the requirements of Section 251(b), there is no exemption for rural LECs of their number portability obligations under Section 251(f)(1).").

[7] The United States also notes that this request in HTI's bid may have been mooted by the FCC Emergency Order, which removes Sandwich Isles' gatekeeping position in its current or former customers' number porting requests.

8

Court's authority to confirm the execution sale of Sandwich Isles' property. The REA generally declares Congress's policy to provide telephone service to rural areas and guides the U.S. Department of Agriculture to provide and ensure such telephone service. This execution sale seeks to enforce a judgment that Sandwich Isles defaulted on its loans funded under the REA, and the REA provides no limitation on the remedies that the United States may seek as a judgment creditor. Sandwich Isles' position to the contrary—that a borrower could simply refuse to repay loans and block all attempts for the creditor to exercise remedies against the very assets financed by those loans extended under that statute—is absurd. Even if the REA did require the Court to consider an execution sale's impact on rural telecommunications service, the HTI Bid is clearly superior to any other alternative, as the bid explains its goal "to enhance connectivity for beneficiaries, residents, businesses, and community anchor institutions on the Hawaiian Home Lands, leveraging the capabilities of HTI's state-of-the-art fiber network." HTI Bid, § A(4). In contrast to Sandwich Isles' abrupt and chaotic discontinuation of service to residents of the Hawaiian Home Lands, HTI's purchase of the Conduit System would enhance service to the Hawaiian Home Lands and advance the goals of the REA.

    c. <u>The Hawaiian Homes Commission Act and License 372</u>

Section 208 of the Hawaiian Homes Commission Act ("HHCA"), 42 Stat. 108, does not apply to the levy or execution sale of License 372. In an appeal from a

9

bankruptcy court execution sale order, Judge Otake of this Court previously rejected Sandwich Isles' argument that the levy and execution sale of License 372 (also to HTI) violates the HHCA. *See Sandwich Isles Communications, Inc., et al. v. Hawaiian Telcom, Inc.*, Civ. No. 22-00435 JAO-KJM, 2023 WL 6378626, at *21-25 (D. Haw. Sept. 29, 2023) (appeal pending, No. 23-3520 (filed Nov. 15, 2023)). This Court previously discussed at length, taking into consideration state law, why Sandwich Isles' application of the HHCA to the execution sale of License 372 fails. *See id.* In particular, the Court held that Section 208 of the HHCA applies to leases—not licenses—and therefore the HHCA does not prohibit the execution sale or levy of License 372. *Id.* For the same reasons in *Sandwich Isles Communications, Inc. v. Hawaiian Telcom, Inc,* the Court should confirm the sale of any of Sandwich Isles' remaining rights in License 372 to HTI.

IV.     Continuity of Service & Waimana

Sandwich Isles' Opposition intended to block the sale to HTI and supplant HTI as the purchaser with Sandwich Isles' parent company, Waimana Enterprises, Inc. ("Waimana"), which bid a mere $10,000. Meanwhile, Sandwich Isles has caused an emergency on Hawaiian Home Lands statewide.  On June 8, 2024, after threatening to cut service to the residents of the Hawaiian Home Lands for weeks prior, Sandwich Isles apparently disconnected telephone service to its customers. Exhibit 2 (Sandwich Isles June 5, 2024 Discontinuation Letter). Sandwich Isles'

10

threatened discontinuation of service created an emergency of its own doing, and required intervention from the State of Hawaii to protect the residents of the Hawaiian Home Lands and prevent further danger caused by Sandwich Isles' recklessness. Exhibit 3 (Hawaii Governor Proclamation).

Sandwich Isles has not identified any alternative to the proposed sale that would be more likely to continue service. Sandwich Isles has represented that it is incapable of providing service any longer, and appears to have terminated its service. Waimana, the only other bidder, is Sandwich Isles' parent company and does not appear to have the means to provide service any longer than Sandwich Isles itself can. Waimana is not licensed to provide telephone service itself, and Albert Hee, who has appeared on behalf of both Sandwich Isles and Waimana, has testified under oath that Waimana's only plan for extending service to the Hawaiian Home Lands requires funding from state and federal agencies.[8] Waimana, Mr. Hee, and Sandwich Isles, are also subject to a $49 million forfeiture order from the FCC. *Sandwich Isles Communications, Inc., Waimana Enterprises, Inc., Albert S.N. Hee*,

---

[8] Mr. Hee testified at a hearing held by the Hawaiian Public Utilities Commission on July 17, 2024, that "Waimana was forced to choose between, one, continuing to fund SIC until Waimana also ran out of money so that SIC could continue to serve, [two], bid for SIC's assets and continue service by enforcing the regulations . . . once it now had clear title, or three, turn the responsibility to provide service back over to DHHL and the FCC…" Exhibit 4 (PUC Transcript Excerpt, Testimony of Albert Hee, 28:18-24, June 17, 2024). Mr. Hee's testimony necessarily implies that Waimana itself is incapable of providing service without outside funding.

Forfeiture Order, 35 FCC Rcd 10831 (2020). In other words, Waimana is incapable of providing service under current conditions.

Waimana submitted a bid pre-auction to purchase all assets of Sandwich Isles for $10,000. ECF No. 544-6 (Waimana Bid). When the Marshal opened bidding at the auction, Waimana chose not to submit a topping bid on either the Conduit System or the remaining assets subject to the Writ of Execution. *See* ECF No. 544-3, ¶¶ 10-11 (Iwamuro Declaration). Waimana cannot now be allowed to circumvent the sale process[9] via its subsidiary's desperate attempts to obstruct the sale and sabotage its own network to the detriment of the residents of the Hawaiian Home Lands. Accordingly, it is in the United States' judgment that accepting and confirming the HTI bid remains the best hope of the highest quality service for the

---

[9] The Order required the United States to identify the highest and best bid for Sandwich Isles' assets other than the successful bid, as the "Backup Bid." ECF No. 535, ¶ 4(e)(vii). As the only other bidder, Waimana was selected as the Backup Bid. The Order further states that the "Plaintiff shall be entitled to elect to proceed with the Backup Bid" if the Successful bidder does not deliver the balance of the purchase price to the Marshal. ECF No. 535, ¶ 4(g). When HTI delivered the balance of the purchase price to the Marshal in full, the United States was not entitled to elect to proceed with Waimana as the successful bidder. *See* ECF No. 544-3, ¶ 12 (Iwamuro Declaration). The only other mechanism for the selection of other bids after the auction is for the Court to allow further bidding at the Confirmation Hearing, for good cause shown. The first bid at the Confirmation Hearing, if allowed by the Court, must exceed the HTI Bid ($500,000) by $125,000. *See* ECF No. 535, ¶ 5. As of this filing, no other party has argued that there is good cause to allow further bidding at the Confirmation Hearing. The United States reserves its right to respond to any contention that there is good cause.

Hawaiian Home Lands, in both the immediate and long term future.

## CONCLUSION

For the reasons set forth in the Motion and herein, the United States respectfully asks the Court to grant the United States' Motion, the relief requested in the Motion, and any other relief the Court deems appropriate.

[Signature Page Follows]

Date: June 27, 2024					Respectfully submitted,

						BRIAN BOYNTON
						Principal Deputy Assistant Attorney General

						CLARE E. CONNORS #7936
						United States Attorney
						District of Hawaii


						*/s/ Miniard Culpepper Jr.*
						KIRK T. MANHARDT
						SHANE HUANG
						(Illinois Bar 6317316)
						MINIARD CULPEPPER JR.
						(MA Bar No. 693851)
						Civil Division
						United States Department of Justice
						P.O. Box 875, Ben Franklin Station
						Washington, DC 20044-0875
						Telephone: (202) 305-0529
						Email: miniard.culpepper@usdoj.gov

						Attorneys for the United States

14

## **CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.4(e), I hereby certify that the preceding UNITED STATES OF AMERICA'S REPLY TO DEFENDANT SANDWICH ISLES COMMUNICATIONS, INC.'S MEMORANDUM IN OPPOSITION uses 14-point Times New Roman, consists of 13 pages and 4,035 words, not including the case caption, exhibits, declarations, signature block, certificate of service, or certificate of compliance.  Accordingly, I certify that the document complies with the page and word limits of L.R. 7.4.

                                               /s/ *Miniard Culpepper Jr.*
                                               MINIARD CULPEPPER JR

## CERTIFICATE OF SERVICE

I hereby certify that, on June 27, 2024, a true and correct copy of the foregoing UNITED STATES OF AMERICA'S REPLY TO DEFENDANT SANDWICH ISLES COMMUNICATIONS, INC.'S MEMORANDUM IN OPPOSITION, together with the accompanying memorandum in support, declarations, and exhibits in support thereof, was filed with the Clerk of the Court using the CM/ECF system, which will electronically serve all represented parties who have filed an appearance. In addition, a copy was served via email on:

Albert S.N. Hee

Counsel for Hawaiian Telcom, Inc.

/s/ *Miniard Culpepper Jr.*
MINIARD CULPEPPER JR.