MEHEULA LAW, LLLC
A Limited Liability Law Company

WILLIAM MEHEULA          2277-0
Three Waterfront Plaza, Suite 499
500 Ala Moana Boulevard
Honolulu, Hawaiʻi 96813
Telephone No.:  (808) 599-9554
Facsimile No.:  (808) 599-9610
Email: bill@meheulalaw.com

Attorney for Defendant
WAIMANA ENTERPRISES, INC.

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SANDWICH ISLES COMMUNICATIONS, INC., *et al*.,<br><br>Defendants. | Civil No. 1:18-cv-00145-JMS-RT<br><br>DEFENDANT WAIMANA ENTERPRISES, INC.'S OPPOSITION TO THE UNITED STATES OF AMERICA'S MOTION FOR ORDER APPROVING CONFIRMATION OF EXECUTION SALE [ECF 544]; DECLARATION OF ALBERT HEE; DECLARATION OF LEX SMITH; EXHIBITS A-M; CERTIFICATE OF COMPLIANCE; CERTIFICATE OF SERVICE |

WAIMANA ENTERPRISES, INC.'S OPPOSITION TO THE UNITED STATES
OF AMERICA'S MOTION FOR ORDER APPROVING CONFIRMATION OF
EXECUTION SALE [ECF 544]

Defendant Waimana Enterprises, Inc. ("**Waimana**") opposes the Motion for

Order Approving Confirmation of Execution Sale (ECF 544) ("**Motion**") on the

grounds that Hawaiian Telecom, Inc.'s ("**HTI**") bid is <u>not</u> a "Qualified Bid" under

the Court's Order Approving Execution Sale Procedures, ECF 535 ("**Order**").[1]

Section 4.d. of the Order sets forth several requirements to constitute a

"Qualified Bid", including:

> iv. *Irrevocability*. State that the bid is irrevocable unless and
> until Plaintiff accepts another bid and the bidder is not
> selected as a Backup Bid (defined below);
>
> *v.     No Contingencies or Conditions.* State that the bid is not subject to
> any contingencies or conditions of any kind;
>
> ix.     *Proposed Use of Property*.  Document the proposed use of the
> Property, including how the proposed use of the Property shall benefit the
> residents of the Hawaiian Home Lands and the bidder's capability to provide
> continuity of service in accordance with Sandwich Isles Communications,
> Inc.'s License from the date the court confirms the purchase.

The HTI bid at 6 included the following contingency:

> 4. <u>Due Diligence</u>: As set forth in Paragraph 4 of the Term Sheet, SIC and
> each of its affiliates (the "SIC Parties") will confirm in writing that SIC is
> the sole owner of the Acquired Assets. This provision is a material element
> to the Bid, and no sale shall be consummated by HTI absent such written
> confirmation in a form acceptable to HTI. If SIC asserts that any other party
> owns a portion of the Acquired Assets, it shall identify that party and the

---

[1] Waimana incorporates by reference Sandwich Isles Communications, Inc.'s
("**SIC**") Opposition Memorandum (ECF 549).

assets owned, and HTI shall have the option of revoking this bid if such Acquired Assets are not deemed assets of SIC subject to the Sale.

HTI's bid is both contingent and (because it requires a representation "in a form acceptable to HTI") revocable in the sole discretion of HTI.

Waimana is an SIC Party, and it and its subsidiaries including Pa Makani LLC and Clearcom, Inc. have no obligation to comply with Paragraph 4 of the Term Sheet because HTI decided not "to honor all of the provisions of the Term Sheet" required in Section 15.  Accordingly, HTI's bid is not a Qualified Bid because it included contingencies that SIC Parties are not required to accept.

The HTI Bid also does not satisfy Section 4.d.ix of the Order because its "proposed use of the Property" does not "benefit the residents of Hawaiian Home Lands" nor does it "provide continuity of service in accordance with Sandwich Isles Communications, Inc.'s License".

The HTI Bid only benefits HTI.  There is no monetary or other benefit proposed to the residents of Hawaiian Home Lands to offset HTI's not providing continuity of service and the obligations of SIC's License.  HTI's bid simply purchases the conduits, to better serve HTI's customers outside of Hawaiian Home Lands without providing any benefits to the residents of Hawaiian Home Lands. Sections 5 and 6 of License 372 state:

> 5.   LEVEL OF TELECOMMUNICATION SERVICES.
> LICENSEE shall provide at a minimum the same level of
> telecommunication service being provided in adjacent areas not subject to

this LICENSE.  LICENSEE shall use its best effort to provide a higher level of telecommunication service than that being provided in adjacent areas not subject to this LICENSE.  LICENSEE shall not provide a lower level of service than that level being provided in adjacent areas not subject to the LICENSE unless LICENSOR shall agree in writing.

6.     COST OF TELECOMMUNICATIONS SERVICES. LICENSEE shall provide to the beneficiaries of LICENSOR living in areas subject to this LICENSE, telecommunications services at a cost less than or equal to the cost for comparable services being provided in adjacent areas not subject to this LICENSE.  LICENSEE shall not charge beneficiaries living in the LICENSE area more for telecommunication services than being charged in adjacent areas not subject to this LICENSE unless LICENSOR consents in writing.

Because HTI's Bid does not include the final mile to beneficiaries' homes and

businesses, it leaves that obligation to SIC Parties without income from the middle

mile or Conduit System that HTI proposes to buy.  Thus, the HTI Bid does not

satisfy Section 4.d.ix of the Order.  The bid also violates Section 207(c)(1)(A) of

the Hawaiian Homes Commission Act pursuant to which the Department of

Hawaiian Home Lands granted License 372.  A true and correct copy of License

372 is attached hereto as Exhibit A.

The HTI bid also violates the Communication Act, compliance of which is

required in Section 3 of the Order.  Here, SIC is a rural telephone company

providing telephone service on Hawaiian Home Lands and the PUC has not

determined whether SIC has a duty to allow HTI to interconnect to SIC's network

3

pursuant to 47 USC § 251(c) and(f), as discussed in the SIC Opposition at footnotes 1-3, and HAR § 6-80-48.

Ironically, although in negotiations with Judge Chang that resulted in the Order, SIC agreed to allow bidders to obtain the Execution Property (ECF 260) if it complied with the Term Sheet, HTI only adopted Paragraphs 3, 4 and 6 of the Term Sheet.   HTI apparently attempted to escape the requirements in Paragraph 2 of the Term Sheet, which states:

> 2. SIC will transfer all assets that are the subject of RUS's writ of execution to Buyer. Buyer will assume all of SIC's rights and obligations Department of Hawaiian Home Lands License No. 372. SIC will make land rights not transferrable to Buyer under the Hawaiian Homes Commission Act, if any, available to Buyer on reasonable terms.

However, Paragraph 2 is effectively the same as Section 4.d.ix of the Order.  Thus, HTI's bid attempts to obtain the benefits of License 372 without complying with Sections 5 and 6 of License 372, which is not allowed by Section 4.d.ix of the Order.  At bottom, Section 4.d.ix of the Order does not allow the Court to approve the HTI Bid or to grant this Motion.

On the other hand, the Waimana bid, attached to the Motion as Exhibit C, is a Qualified Bid that complies Section 4.d.ix of the Order and ensures that homesteaders benefit by continuing to get telecommunications service.  Although less than HTI's bid, there was no minimum bid amount requirement.  Because the

4

HTI bid was not a Qualified Bid, Waimana's bid should be determined to be the Successful Bid.

HTI's bid reflects its desire to use the infrastructure funded and built to provide telecommunications service throughout Hawaiian Home Lands and use the License 372 easements upon which all SIC's infrastructure is located without complying with Sections 5 and 6 of License 372.

Waimana's interest is to provide carrier of last resort telecommunications service to all areas of Hawaiian Home Lands because other carriers are not willing to do it. The Communications Act provides for this. Hawaiian Home Lands is one of those areas identified in the Communications Act and the Rural Electrification Act as uneconomical to serve. Accordingly, Paragraph 7 of the Term Sheet allows the Buyer to apply for universal service support without objection by RUS. Nonetheless, HTI's bid clearly rejects the requirement of Section 4.d.ix of the Order. Waimana's bid on the other hand commits, and is consistent with Section 4.d.ix of the Order and License 372:

> ix. Waimana proposes to use the Property to benefit residents of Hawaiian Home Lands in accordance with applicable law. Waimana has contractual access to all of the equipment currently being used to provide service. Waimana is therefore capable of providing continuity of service in accordance with Sandwich Isles Communications, Inc.'s License from the date the court confirms the purchase.

Moreover, Waimana notified the DOJ before they filed this motion that HTI's bid did not address continuity service to HHL beneficiaries, as set forth below:

**Exhibit B** provides:

-----Original Message-----
**From: Al Hee**
**Sent: Wednesday, May 15, 2024 11:16 AM**
To: 'Huang, Shane (CIV)' <Shane.Huang@usdoj.gov>
Cc: Wendy Hee <wendyh@waimana.com>; Balasko, Zachary (CIV)
<John.Z.Balasko@usdoj.gov>; Culpepper Jr., Miniard (CIV)
<Miniard.Culpepper@usdoj.gov>
Subject: RE: Auction

My concern is the continuity of service and ongoing employment.  If
Waimana is not the successful bidder, I cannot make sure that the customers
continue to get service.  I have sent a letter to the FCC notifying them that
service may be disrupted.  It will be up to the successful bidder to deal with
the customers.

Since no one has contacted Sandwich Isles to inquire how they would
provide continuity of service, I am assuming that the other bidders have their
own plans to take over service at the end of the month.  I therefore need to
make sure that I give the employees adequate notice of termination.

These are my thoughts.  I welcome any feedback.

-----Original Message-----
**From: Huang, Shane (CIV) [mailto:Shane.Huang@usdoj.gov]**
**Sent: Wednesday, May 15, 2024 10:00 AM**
To: Al Hee <alhee@waimana.com>
Cc: Wendy Hee <wendyh@waimana.com>; Balasko, Zachary (CIV)
<John.Z.Balasko@usdoj.gov>; Culpepper Jr., Miniard (CIV)
<Miniard.Culpepper@usdoj.gov>
Subject: RE: Auction

To answer your questions:

- Yes, there are multiple bidders.
- Yes, if we have all bidders' consent, we intend to disclose bids to other
bidders before the auction. The auction itself will be open to the public for
observing, at which point we would expect bid information to become
publicly known.

6

- I'm not aware of any restriction on how bidders may use the information we provide about other bids - but if you'd like to condition Waimana's consent on any additional restrictions in use or dissemination, please let us know what conditions you would impose.
- We're can't speculate about how the order would apply to any hypothetical situation, such as if someone else seeks to participate in the auction. If another situation arises, we'll have to actually sit down and analyze the language of the order and the applicable law. So instead of doing the work of analyzing that, I'm simply pointing out that there's no reason to believe that hypothetical situation would actually happen.

If we can't reach a set of rules for how the bids will be disclosed to other bidders before the auction, we'd be prepared to move forward with no disclosures before the auction, and everything happening on that day. That may not be the most efficient method, which is why we were thinking it may be better to have some exchange of information beforehand.
Please let us know what you're thinking, and we can figure out a plan that works for everyone.
Shane

-----Original Message-----
**From: alhee@waimana.com <alhee@waimana.com>**
**Sent: Wednesday, May 15, 2024 2:53 PM**
To: Huang, Shane (CIV) <Shane.Huang@usdoj.gov>
Cc: wendyh@waimana.com; Balasko, Zachary (CIV) <John.Z.Balasko@usdoj.gov>; Culpepper Jr., Miniard (CIV) <Miniard.Culpepper@usdoj.gov>
Subject: [EXTERNAL] Re: Auction
Sorry I just realized that you were asking to release the information to all bidders not the public. Is there going to be a requirement that the bidders cannot disclose the information to the public?
Sent from my iPhone

**On May 15, 2024, at 8:30?AM, Al Hee <alhee@waimana.com> wrote:**
Thanks for the email.

Waimana's president is on a trip so I have been acting by direction for Waimana.
I will get back to you on your request after I get an answer from Wendy.

7

Can you confirm that this request is for more than just Waimana.  Ie: There are more bidders.  And that no more bidders are allowed to participate in the auction. That only those who qualified by submitting a bid by the 13th are able to participate in accordance with the court's order.

That information will be helpful in getting you an answer.

Al

**On May 15, 2024, at 8:16?AM, Huang, Shane (CIV)**
**<Shane.Huang@usdoj.gov> wrote:**

Al,

Thank you.

In order to facilitate smooth procedures, we're asking bidders if they consent to the disclosure of the following pieces of information before the auction on Monday, to all other bidders:

  * Identity of bidder
  * Description of Assets being bid on
  * Amount of bid

If all bidders agree, we will disclose that information regarding all bids to all bidders.

Also, please confirm that you are authorized to speak for Waimana Enterprises, Inc. for the purpose of this execution sale and auction.

Thanks,

Shane Huang

**From: alhee@waimana.com <alhee@waimana.com>**
**Sent: Monday, May 13, 2024 9:33 PM**
To: Huang, Shane (CIV) <Shane.Huang@usdoj.gov>; Iwamuro, Channing (USMS) <Channing.Iwamuro@usdoj.gov>
Subject: [EXTERNAL] Auction

USA and US Marshal District of Hawaii;

In accordance with the July 26, 2024 US District Court Order, Waimana Enterprises, Inc. submits a bid for the property to be auctioned on May 20, 2024.  The Confidentiality Agreement is attached.

i.          The bid is for all of the Property.
ii.          The bidder is Waimana Enterprises, Inc.
              c/o  Wendy Hee, President
              P.O. Box 893128
              Mililani, HI  96789

808-599-4441

wendyh@waimana.com<mailto:wendyh@waimana.com>

iii.        The amount bid is $10,000.  The total amount has been submitted to the US Marshal via certified mail to

U.S. Marshals Service Atten: AO

300 Ala Moana Blvd. Room 2800

Honolulu, HI  96850

iv.        The bid is irrevocable unless and until Plaintiff accepts another bid and Waimana is not selected as a Backup Bid

v.         The bid is not subject to any contingencies or conditions

vi.        Waimana agrees to serve as a Backup Bid if the bid is the highest and best bid after the Successful Bid

vii.       A cashier's check payable to the US Marshall has been submitted via certified mail.

viii.      N/A

ix.        Waimana proposes to use the Property to benefit residents of Hawaiian Home Lands in accordance with applicable law.  Waimana has contractual access to all of the equipment currently being used to provide service.  Waimana is therefore capable of providing continuity of service in accordance with Sandwich Isles Communications, Inc.'s License from the date the court confirms the purchase.


On May 24, 2024, DHHL issued this press release:

https://dhhl.hawaii.gov/2024/05/24/dhhl-urges-customers-of-sandwich-isles-communications-to-immediately-switch-phone-and-internet-service-providers/

**FOR IMMEDIATE RELEASE**

May 24, 2024

HONOLULU  – Today, up to 1,500 households and businesses on Hawaiian Home Lands are facing a sudden loss of phone and/or internet service provided by Sandwich Isles Communications (SIC). Affected parties are located throughout the state and include many households in remote communities.

The Department of Hawaiian Home Lands (DHHL) urges any beneficiaries who receive service from SIC to immediately switch their service to another provider to avoid interruption of their phone and/or internet service.

Residential customers should contact alternative service providers to determine if service is available at their address:

| | Spectrum |
|---|---|
| Hawaiian Telcom<br>www.hawaiiantel.com<br>Phone: (808) 475-8469 | www.spectrum.com/ser<br>Phone: (855) 860-9068 |

Additional resources and ongoing updates are available at the department's Broadband Program webpage at https://dhhl.hawaii.gov/broadband/ including information on:

- Eligibility for government program offering free and low-cost residential service

- Information for affected businesses on Hawaiian Home Lands

SIC is a private company that is required to provide reliable telecommunications service on Hawaiian Home Lands. The company is facing foreclosure by the federal government due to nonpayment of a major loan. DHHL is working to ensure minimal disruption to affected beneficiaries.

**Exhibit C** is a letter from SIC's lawyer, Lex Smith, to DHHL's lawyer, Kevin

Herring dated May 24, 2024, regarding the press release:

> I don't know whether your client consulted you or not, but DHHL today sent a notice to all DHHL lessees urging them to switch from SIC to a different carrier.
>
> Because Hawaiian Telcom did not even bid for the "last mile" infrastructure that
> connects individual lessees to the network, that infrastructure remains with SIC and is covered by 47 USC §251(f)(1) which exempts SIC from the interconnection requirements. The exemption prevents exactly what DHHL and Hawaiian Tel are trying to do: cherry pick the most profitable customers.

Rather than violating federal law, your client would do better to engage productively with SIC in trying to minimize disruption to each customer and resolve the parties' issues.

**Exhibit D** is the PUC's notice of violation dated May 31, 2024.

**Exhibit E** is SIC's response to the PUC dated June 1, 2024 that states:

> I am Albert Hee, I am the founder of Sandwich Isles Communications Inc. (SIC) and am authorized to represent it in this matter. I have appeared before the PUC in other matters.
>
> The PUC, under Chairman Naito stated very clearly that the PUC does not have the authority to choose the carrier that provides service to HHL. This is similar to the PUC's authority over Federal properties. While we are appreciative of the PUC's sudden interest in this situation, the authority for who serves HHL rests with the Department of Hawaiian Home Lands (DHHL). DHHL issued License 372 to Waimana Enterprises which granted HHL to Waimana on the condition that those HHL be used to build a network that would provide service to only HHL. Waimana partially assigned the voice portion of License 372 to Sandwich Isles Communications Inc. (SIC). That partial assignment included the obligation to build a voice network and was approved by the Hawaiian Homes Commission (Commission).
>
> The authority to determine who provides service to HHL rests with the Commission. The Commission has violated SIC's license by: allowing Hawaiian Telcom to use the HHL granted to SIC to serve everyone except HHL thru the issuance of a temporary Right-Of-Entry and encouraging other carriers to provide service to SIC customers. As you are aware, this violates 47 USC §251(f)(1) (rural exemption), and is the subject of the complaint Hawaiian Telcom filed with the PUC against SIC for not interconnecting. The rural exemption allows rural carriers like SIC to not interconnect with other carriers thereby preventing other carriers from cherry picking customers and the revenues rural carriers depend on. We have been in contact with DHHL for many years informing them of their violations of SIC's license. These violations have resulted in the loss of revenues needed to operate and maintain service.
>
> The recently held auction on May 20, 2024, required the winning bidder to provide continuity of service for SIC's customers. Because the terms of the auction provided for the continuity of service, SIC terminated

its employees and trunk leases. Subsequently, the US Department of Justice (DOJ) accepted a Hawaiian Telcom's bid. Hawaiian Telcom's bid relies on SIC to continue to provide service and offers DOJ a monetary incentive to get SIC to agree. DOJ acknowledged SIC was not able to cover its costs for years and was informed that SIC had terminated its employees. After DOJ accepted Hawaiian Telcom's bid, SIC's costs would increase while its revenues would decrease under DHHL's instructions to customers to switch carriers. The entire matter is being overseen by retired US Magistrate Judge Kevin Chang. Would the PUC be interested in participating?

I have written to Chairman Kali Watson and the Commission offering SIC's assistance on a transition plan. We have never received a response. Even today rather than contact us, DHHL chooses to issue press releases.

SIC's regulatory obligation to provide service depends on a rate base which at least covers SIC's costs and an opportunity to make a profit. This is the same for all regulated utilities. The FCC determined a rate base sufficient to pay for the infrastructure including universal service funds (USF) in a 2005 order. The PUC's role in receiving USF consists of issuing eligible telecommunications carrier (ETC) certifications was no longer necessary after the FCC issued its 2005 Order limiting SIC's territory to only unserved areas. Under the FCC rules, carriers serving unserved areas are automatically an ETC. No further administrative action is required. Since Hawaii does not have a State USF program, the rates for service are determined by the FCC and SIC's ETC is automatic, the PUC's role in this is limited.

Service to rural HHL has always been a safety issue. Thirty years ago, DHHL requested I solve this safety issue after Hawaiian Telephone refused to invest the money in building the infrastructure and the PUC did not enforce the carrier of last resort obligation because Hawaiian Telephone would have lost money serving those areas just as SIC is doing today. SIC made the $400M investment and solved the safety issue. The infrastructure is in, the safety issue has not changed and Hawaiian Telcom bid for the infrastructure on the condition that they will not serve all areas of HHL. So, thirty years later, the safety of the homesteaders is once again a DHHL problem. SIC does not understand how the PUC can order it to provide service at a loss when it did not do so with Hawaiian Telephone, a much larger company.

Thank you for your efforts. Although clearly well intended, they may be misplaced unless the PUC is able to fairly compensate SIC for continuing service. Given the situation today, SIC does not have the funds to cover the costs of providing service. Without assurances that those losses will be

recovered, SIC cannot continue to provide service. We look forward to hearing how the PUC intends to address this or SIC will once again be forced to end providing service. SIC cannot continue to incur losses. This is simply a statement of fact and is not intended to imply anything else.

Albert Hee

**Exhibit F** is the FCC Chief Trent Harkrader's letter to SIC attorney, Lex Smith,

dated June 3, 2024 that states:

The Federal Communications Commission (Commission) is aware your client, Sandwich Isles Communications, Inc. (Sandwich Isles), has given abrupt notice to its customers on the Hawaiian Home Lands that it will no longer be providing service to them beginning June 1, 2024.1 This letter serves to advise Sandwich Isles that such action constitutes a violation of its federal regulatory obligations regarding discontinuance of telecommunications and/or interconnected Voice over Internet Protocol (VoIP) services to customers pursuant to section 214 of the Communications Act of 1934, as amended (the Act) and the Commission's implementing rules.

Section 214(a) of the Act provides that:
No carrier shall discontinue, reduce, or impair service to a community, or part of a community, unless and until there shall first have been obtained from the Commission a certificate that neither the present nor future public convenience and necessity will be adversely affected thereby; except that the Commission may, upon appropriate request being made, authorize temporary or emergency discontinuance, reduction, or impairment of service, or partial discontinuance, reduction, or impairment of service, without regard to the provisions of this section.

47 U.S.C. § 214(a).

Furthermore, federal regulations provide that discontinuance of service to telecommunications and interconnected VoIP service customers must be carried out in accordance with the orderly procedures set forth in section 63.71 of the Commission's rules. 47 CFR § 63.71. These procedures are essential to limit the consumer harms that may occur from unauthorized and untimely discontinuance of service. Even where a provider is no longer able to continue providing service, customers must be given proper notice and an appropriate amount of time to

make arrangements for alternative service.

13

The Commission also understands that Sandwich Isles is currently informing its customers that it will take between ten and sixty days for it to process a request for local number portability.  Federal law requires Sandwich Isles to "provide, to the extent technically feasible, number portability in accordance with requirements prescribed by the Commission." 47 U.S.C. § 251(b)(2). The Commission's rules implementing this statutory obligation require simple wireline-to-wireline and simple intermodal ports to be completed within one business day unless
a longer period is requested by the new provider or by the customer. 47 CFR § 52.35(a). To the extent that any of these requests could be considered to be non-simple porting requests, Commission rules require such ports to be completed within four business days unless a longer period is requested by the new provider or by the customer. 47 CFR § 52.35(d). Therefore, unless the new provider or the customer has requested an extended period of time to port the number, Sandwich Isles would appear to be in violation of the Commission's rules.

Sandwich Isles must cease and desist from any unlawful discontinuance activity immediately and come into compliance with federal law and regulations, including those pertaining to number porting, that provide critical consumer safeguards. Sandwich Isles—and those in control of its actions—are subject to the Commission's enforcement authority, and the Wireline Competition
Bureau will refer all potential violations of the Commission's rules to the Enforcement Bureau.2 *See, e.g.*, 47 U.S.C. § 503 (providing forfeiture penalties for violations of the Communications Act and the Commission's rules). Willful disregard of the law may be a consideration for any licensing or authorization activities going forward.

Please contact me if you have any questions about this matter.

**Exhibit G** is Smith's response letter to the FCC dated June 3, 2024:

Dear Mr. Harkrader:

It is a pleasure to hear from you. The FCC has pretty-much refused to talk to anybody from SIC since 2017 or 2018. Prior to that time, I made several trips to Washington D.C. to meet with the FCC and try to find a resolution. Then one day, after I had traveled to Washington, I was informed that there was not going to be a meeting. Since that time, we have not received any communication of substance from the FCC. Perhaps you were not aware of this history.

Perhaps you are not aware that the United States sought a court order for the sell-off of SIC's remaining assets. That order expressly provided that any "qualified bid" had to take over service to the Hawaiian Home Lands. Specifically, that order said:

> d. Qualified Bid Requirements. For a bid to be deemed a qualified bid (a "Qualified Bid"), it shall …
> ix. … Document the proposed use of the Property, including how the proposed use of the Property shall benefit the residents of the Hawaiian Home Lands and **the bidder's capability to provide continuity of service in accordance with Sandwich Isles Communications, Inc.'s License** from the date the court confirms the purchase.

In reliance on the Court's order, SIC gave notice to its employees that their employment would terminate after the auction. SIC also terminated certain trunk leases for the same reason.

In violation of the Court's order, the United States has accepted an offer from Hawaiian Telcom that does not provide for "continuity of service." It is the United States' decision that now leaves the Hawaiian Home Lands with no one to provide service. It is the same United States that represented the FCC successfully keeping the FCC out of these proceedings leading to this auction.

Thus, I think your ire is directed at the wrong party. The United States, having accepted Hawaiian Telcom's "bid" that, contrary to the Court's s order, does not "provide continuity of service" has created this problem. After the United States accepted Hawaiian Telcom's offer, SIC's lenders which made it possible for SIC to continue to provide service all these years cut off any further funding. The lenders did not see any reason to keep throwing good money after it became apparent its previous lending was never going to be recovered. Therefore, we are hopeful that someone will come up with a source of funds to keep service available. If not, SIC will be ending service at the end of this week for lack of funds. There is one area of Hawaiian Home Lands that has been without service for the past three weeks because SIC does not have the funds to repair the damage caused by the electric utility's blackout.

If the FCC is interested in trying to help find a solution to this unfortunate situation, the Honorable Magistrate Judge Kevin S. C. Chang has been serving as a mediator to try to assist. I am sure Judge Chang would welcome the FCC's participation. It seems to me that the only way we will ever get a resolution will be if the FCC, and the Hawaii Department of

15

Hawaiian Home Lands, participate in good faith in seeking a resolution, so I am very happy to hear from you and
I hope you will recognize that Judge Chang's mediation provides an appropriate opportunity to reach a final resolution of this matter that benefits all parties, especially the customers on the Hawaiian Home Lands.
I would love to discuss the situation further with you.

**Exhibit H** is Harkrader's letter to Smith dated June 5, 2024:

The Federal Communications Commission (Commission) is aware your client, Sandwich Isles Communications, Inc. (Sandwich Isles), has given abrupt notice to its customers on the Hawaiian Home Lands that it will no longer be providing service to them beginning June 1, 2024.1 This letter serves to advise Sandwich Isles that such action constitutes a violation of its federal regulatory obligations regarding discontinuance of telecommunications and/or interconnected
Voice over Internet Protocol (VoIP) services to customers pursuant to section 2 14 of the Communications Act of I 934, as amended (the Act) and the Commission's implementing rules.

Section 214(a) of the Act provides that:
No carrier shall discontinue, reduce, or impair service to a community, or part of a community, unless and until there shall first have been obtained from the Commission a certificate that ne ither the present nor future public convenience and necessity will be adversely affected thereby; except that the Commission may, upon appropriate request being made, authorize temporary or emergency discontinuance, reduction, or impairment of service, or pa1tial discontinuance, reduction, or impairment of service, without regard to the provisions of this section.

47 U.S.C. § 2 14(a).

Furthermore, federal regulations provide that discontinuance of service to telecommunications and interconnected VoIP service customers must be carried out in accordance with the orderly procedures set fo1th in section 63.71 of the Commission's rules. 47 CFR § 63.71. These procedures are essential to limit the consumer harms that may occur from unauthorized and untimely discontinuance of service. Even where a provider is no longer able to continue providing service, customers must be given proper notice and an appropriate amount of time to
make arrangements for alternative service.

The Commission also understands that Sandwich Isles is currently informing its customers that it will take between ten and sixty days for it to process a request for local number portability.  Federal law requires Sandwich Isles to "provide, to the extent technically feasible, number portability in accordance with requirements prescribed by the Commission." 47 U.S.C. § 25l(b)(2). The Commission's rules implementing this statutory obligation require simple. wireline-to-wireline and simple intermodal ports to be completed within one business day unless
a longer period is requested by the new provider or by the customer. 47 CFR § 52.35(a). To the extent that any of these requests could be considered to be non-simple porting requests, Commission rules require such ports to be completed within four business days unless a longer period is requested by the new provider or by the customer. 47 CFR § 52.35(d). Therefore, unless the new provider or the customer has requested an extended period of time to port the number, Sandwich Isles would appear to be in violation of the Commission's rules.

Sandwich Isles must cease and desist from any unlawful discontinuance activity immediately and come into compliance with federal law and regulations, including those pertaining to number porting, that provide critical consumer safeguards. Sandwich Isles-and those in control of its actions-are subject to the Commission's enforcement authority, and the Wireline Competition Bureau will refer all potential violations of the Commission's rules to the Enforcement Bureau.2 *See, e.g.,* 47 U.S.C. § 503 (providing forfeiture penalties for violations of the Communications Act and the Commission's rules). Willful disregard of the law may be a consideration for any licensing or authorization activities going forward.

**Exhibit I** is Smith's response to Harkrader dated June 5, 2024:

We had a telephone conference with Judge Chang today. Although Judge Chang is hopeful that a resolution might eventually be achieved, he has no ability to prevent the loss of service to the Hawaiian Home Lands this Friday at 11:59 p.m.

The FCC has long been on notice that SIC's ability to provide service was in jeopardy.  For example, in 2015, Senator Brian Schatz wrote to the FCC urging that the FCC "strive to ensure uninterrupted service to SIC's customers." (Enclosure 1). The FCC Chairman wrote back to Senator Schatz, assuring that in such situations "the Commission works with all stakeholders, **including the company** … to maintain service to customers." (Enclosure 2).

17

Unfortunately, SIC has never heard from the FCC about working together to maintain service to SIC's customers. We have heard rumors that the FCC has set aside universal service funds for the past decade with the intention of using those funds at the appropriate time to assure sustained service. That goal can be achieved through the use of a small portion of those funds.

Shane Huang, Esq. of the Department of Justice ("DOJ") has represented the FCC in this case. However, he denies any ability to represent the FCC in the same case regarding the preservation of service. SIC is very interested in finding a way to avoid the loss of service to its customers. If the FCC shares that concern, we urge you to immediately work with us in a cooperative manner described in Chairman Wheeler's letter to Senator Schatz.

SIC would like to follow all of the FCC's rules and continue to provide service but, without funding, SIC cannot.[2]

**Exhibit L** is Herring's letter to Smith dated June 6, 2024:

On behalf of the Department of Hawaiian Home Lands, we are responding to Mr. Al Ree's emailed correspondence to DHHL Chairman Kali Watson which attached letters to the FCC and the PUC.

By letter dated June 3, 2024 the FCC informed Mr. Hee and Sandwich Isles Communications, Inc. that SIC's planned disconnection of service constitutes a violation of applicable Federal law, including 47 U.S.C. § 214(a). Further, the FCC reiterated SIC's obligation to complete wireline-to-wireline and simple intermodal ports within "one business day". The FCC informed Sandwich Isles that it must immediately cease and desist any unlawful discontinuance activity and come into compliance with federal law, particularly as it relates to consumer safeguards. A copy of the FCC's letter is attached.

Similarly, the PUC's "Notice of Violation and Order to Show Cause" filed in Docket No. 2024-0164 notifies SIC that its abrupt termination notices do not comply with, and violate, State law, including HAR § 6-80-123 and HAR § 6-80-129. A copy is attached. As a result, SIC has been ordered to comply with its duties and obligations and to not terminate service but to instead "[c]ontinue to provide

---

[2] Enclosures 1 and 2 are **Exhibit J** (Senator Schatz's letter to FCC Chair Tom Wheeler dated November 5, 2015), and **Exhibit K** (Wheeler's response).

service to its Customers so that there is no disruption in service". This should not have come as a surprise to Mr. Hee or SIC. The PUC has been trying to engage with SIC since at least 2022 when it opened an investigative docket to inquire into whether SIC was "fit, willing and able to provide reliable and affordable service". The PUC noted in its order of July 18, 2023 that SIC refused to work collaboratively with it to address concerns or identify solutions.

Because of SIC's stated intention to discontinue services on two-days' notice without Federal or State regulatory approval, the Governor issued an Emergency Proclamation on May 31, 2024. A copy is attached. The Emergency Proclamation ordered entities providing teleco1mnunications services to preserve their respective "facilities, infrastructure, networks, systems, records, devices, information and property to prevent any disruption or interruption of telecommunication and broadband services." Further, the Proclamation orders that "[a]ny person who intentionally, knowingly, or recklessly destroys, dismantles, removes, impairs, uninstalls, or damages critical telecommunication and broadband infrastructure facilities, networks, systems, records, devices, property, and information required to continue providing telecommunications services, or directs the same, shall be guilty of a misdemeanor and upon conviction, the person shall be fined no more than $2,000, imprisoned no more than one year, or both."

Under License No. 3 72, SIC is, among other things, required to "comply with all laws, ordinances, rules and regulations of the Federal, State, County or municipal governments" (License No. 372, § 18). The Department therefore urges Mr. Hee, SIC and its affiliates to comply with applicable Federal and State law and to specifically comply with the FCC's letter of June 3, the PUC's Notice of Violation and Order to Show Cause, and the Emergency Proclamation.

**Exhibit M** is Hee's response email to Ted Hearn, Managing Editor of Broadband

Breakfast, dated June 8, 2024:

> **From:** Al Hee
> **Sent: Saturday, June 8, 2024 9:17 PM**
> **To:** Ted Hearn <tedhearn@gmail.com>
> **Subject:** RE: Checking in
>
> Hi Ted,

It is a real mess caused by DOJ (representing RUS) accepting Hawaiian Telcom's bid as the presumptive winner.  The bidding procedures said the bidder must provide continuity of service to SIC's customers.  HT bid was for everything and specifically exempted the last mile and service to SIC's customers.  HT's bid said Continuity of Service requirement would be provided by SIC regulatory obligation.  The bid should have been rejected as non-responsive.  One of SIC's lenders [Waimana] made a bid which was for everything including uninterrupted service to SIC's customers.  When DOJ sent HT's bid to the court as the presumptive winning bid; customers started to change their service from SIC to either HT or Spectrum.  The loss of revenue was unsustainable.  It also violates the rural exemption in Section 251.  That exemption is to prevent economic damage, exactly what is happening.

I have not seen the FCC's porting order but porting violates the rural exemption in Section 252(f)(1)(a) because it causes economic damage.  It is absurd for the regulatory agencies, FCC and PUC, to order a rural carrier to sustain service while at the same time the regulatory agencies are ordering SIC to transfer its customers and revenues.  SIC has discontinued service to its customers with the exception of a few small areas where SIC has contractual obligations and service to the Coast Guard.  SIC is operating those areas at a loss since customers in those areas have switched.  It is unsustainable and will end soon.

HT's bid is public record at the US District Court; USA v. Sandwich Isles Communications Inc. et.al. as is the auction procedures order.   Let me know if you need help getting those docs.

**From:** Ted Hearn <tedhearn@gmail.com>
**Sent:** Saturday, June 8, 2024 1:05 PM
**To:** Al Hee <alhee@waimana.com>
**Subject:** Checking in

Hi Al,
I saw the FCC's number portability order Friday.
Can you tell me the latest news?

20

Thank you, Ted

Thus, despite SIC and Waimana's effort to maintain the continuity of service on HHL, RUS, FCC and DHHL are oddly willing to help HTI stop continuity of service. This is another reason to reject HTI's bid and accept Waimana's. Thirty years ago, the Hawaiian Homes Commission asked Waimana to provide service to Hawaiian Home Lands because Hawaiian Telephone would not. Today, Hawaiian Telephone's successor HTI has said they will not provide service to all of Hawaiian Home Lands. Nothing has changed.

In conclusion, (a) the Motion should be denied, (b) HTI's bid should be rejected because it is not a Qualified Bid and (c) Waimana's bid should be approved and confirmed.

DATED:  Honolulu, Hawaiʻi, June 27, 2024.


/s/ *William Meheula*
WILLIAM MEHEULA

Attorney for Defendant
WAIMANA ENTERPRISES, INC.

*United State of America v. Sandwich Isles Communication, Inc., et al.* (Civil No. 1:18-cv-00145-JMS-RT)

21