THE ORIGINAL OF THIS DOCUMEN
RECORDED AS FOLLOWS:
STATE OF HAWAII

BUREAU OF CONVEYANCE
DATE MAY 1 2 1995 TIME 3:21
DOCUMENT NO. 95-064

## STATE OF HAWAII

### DEPARTMENT OF HAWAIIAN HOME LANDS

### LICENSE AGREEMENT NO. 372

THIS LICENSE made and entered into this _____9th_____ day of _____May_____, 19_95_, by and between the State of Hawaii, DEPARTMENT OF HAWAIIAN HOME LANDS, whose place of business is 335 Merchant Street, Honolulu, Hawaii 96813, and whose mailing address is P. O. Box 1879, Honolulu, Hawaii 96805, hereinafter referred to as "LICENSOR," and WAIMANA ENTERPRISES, INCORPORATED, a native Hawaiian corporation (Federal I.D. No. 99-0263871), whose principal place of business and mailing address is 1001 Bishop Street, Pauahi Tower, Suite 1520, Honolulu, Hawaii 96813, hereinafter referred to as "LICENSEE."

### W I T N E S S E T H   T H A T:

LICENSOR, pursuant to the authority granted to it by Section 207(C)(1)(A), HHCA, is authorized to grant licenses as easements for railroads, telephone lines, electric power and light lines, gas mains and the like;

LICENSOR, pursuant to the provisions under Section 10-4-22, Title 10, State of Hawaii, Department of Hawaiian Home Lands, Administrative Rules 1981, as amended (DHHL Administrative Rules), may grant licenses for public purposes for any length of term subject to reverter to LICENSOR upon termination or abandonment, on such terms and conditions as may be prudently and reasonably set by the LICENSOR;

LICENSOR, pursuant to the provisions under Section 10-4-21, DHHL Administrative Rules, may allow the rental for licenses to be nominal should the use benefit LICENSOR or its native Hawaiians beneficiaries;

LICENSOR determines that the LICENSE established herein is essential in order to provide broad band telecommunication services of all types (including but not limited to local, intrastate, interstate and international telephone; video on demand; interactive communication; cable television; medical and educational links; and electronic data transmission) to LICENSOR'S lands in a timely manner;

FURTHER, LICENSOR determines that the issuance of this LICENSE established herein is essential for LICENSEE to obtain necessary funds needed to construct and operate the necessary telecommunications infrastructure;

## EXHIBIT A

6320I

LICENSOR believes and intends that the issuance of this Exclusive "Benefit" LICENSE will also fulfill the purpose of advancing the rehabilitation and the welfare of native Hawaiians.

NOW THEREFORE, LICENSOR, in consideration of the services to be provided by LICENSEE, and the terms, conditions and covenants herein contained on the part of LICENSEE to be kept, observed and performed, hereby grants and issues to LICENSEE, and its legal successors and assigns, the exclusive right and privilege to build, construct, repair, maintain and operate a broad band telecommunications network including poles, overhead and/or underground lines, appliances, microwave and/or other types of equipment over, across, under and throughout all lands under the administration and jurisdiction of LICENSOR, and its legal successors and assigns, including the right to trim and keep trimmed any vegetation, shrubbery, bushes or trees in the way of its lines and appurtenances, and including also the right of entry upon the easement area and adjoining land of LICENSOR for the construction, maintenance, operation and removal of LICENSEE'S line and appurtenances over, across and under the LICENSE area.

TO HAVE AND TO HOLD the same unto LICENSEE, its legal successors and assigns, in perpetuity, commencing on May 1, 1995, unless sooner terminated as hereinafter provided, LICENSOR agreeing and LICENSEE understanding that the nominal rental of ONE AND NO⁄100 DOLLARS ($1.00) for the entire term is waived.

AND LICENSEE hereby covenants with LICENSOR, each for itself and not for the other that:

1.  INITIAL DEMONSTRATION PERIOD.  BOTH PARTIES agree to allow LICENSEE an initial period of not more than FIVE (5) YEARS in which LICENSEE shall demonstrate satisfactory performance of the applicable terms and conditions contained in this License.  LICENSEE shall demonstrate financial capability to complete the initial project within ONE (1) YEAR from date of the LICENSE.  Financial capability may be demonstrated by providing a bond, letter of credit, corporate guarantee, bank loan commitment letter, loan approval from a government agency or other similar instrument in the amount of the telecommunications construction.  When LICENSEE has demonstrated its ability to fund, install and operate the telecommunications network for the selected project, the remaining provisions, terms and conditions of this LICENSE shall automatically take effect.  No other action shall be required from either party.

2.  NEW CONSTRUCTION TELECOMMUNICATION INFRASTRUCTURE COSTS.  LICENSEE agrees to construct and install all telecommunications infrastructure on LICENSOR'S lands at LICENSEE'S cost for all new construction to include but not limited to residential, agricultural, pastoral, commercial

and/or industrial subdivisions developed after January 1, 1996 in the LICENSE area at LICENSEE'S cost. In the alternative, LICENSEE at its option, may choose to reimburse LICENSOR for all costs to install telecommunications infrastructure provided the telecommunications infrastructure is installed to LICENSEE'S specifications.

3. EXISTING TELECOMMUNICATIONS INFRASTRUCTURE. LICENSOR agrees to sell and LICENSEE agrees to purchase at LICENSOR'S cost and/or install telecommunications infrastructure on LICENSOR'S land at LICENSEE'S cost including but not limited to all existing residential, agricultural, pastoral, commercial and/or industrial subdivisions. If the existing infrastructure is not owned by the LICENSOR, LICENSEE shall have the option, to be exercised in LICENSEE'S sole discretion, to either purchase or install new telecommunications infrastructure. After LICENSEE activates the existing and/or new telecommunications infrastructure, LICENSOR agrees not to allow any other telecommunications provider to use any remaining telecommunications infrastructure to continue to provide or initiate service on LICENSOR'S lands.

4. ACCESS TO TELECOMMUNICATIONS INFRASTRUCTURE. LICENSEE shall make available to LICENSOR the use of all available telecommunications equipment and services then under LICENSEE'S control at LICENSEE'S cost. LICENSOR'S use under this paragraph shall be limited to emergency, public and official purposes only.

5. LEVEL OF TELECOMMUNICATION SERVICES. LICENSEE shall provide at a minimum the same level of telecommunication service being provided in adjacent areas not subject to this LICENSE. LICENSEE shall use its best effort to provide a higher level of telecommunication service than that being provided in adjacent areas not subject to this LICENSE. LICENSEE shall not provide a lower level of service than that level being provided in adjacent areas not subject to the LICENSE unless LICENSOR shall agree in writing.

6. COST OF TELECOMMUNICATIONS SERVICES. LICENSEE shall provide to the beneficiaries of LICENSOR living in areas subject to this LICENSE, telecommunications services at a cost less than or equal to the cost for comparable services being provided in adjacent areas not subject to this LICENSE. LICENSEE shall not charge beneficiaries living in the LICENSE area more for telecommunication services than being charged in adjacent areas not subject to this LICENSE unless LICENSOR consents in writing.

7. JOB TRAINING/EDUCATION. LICENSEE agrees to expend an amount equal to at least one-half percent (1/2%) of LICENSEE'S annual net profit for job training and/or educational

opportunities for beneficiaries of LICENSOR each year. For purposes of demonstrating compliance with this paragraph, LICENSEE agrees to allow LICENSOR access to LICENSEE'S financial statement, provided, that all material and information will be kept strictly confidential.

8. EMPLOYMENT. LICENSEE agrees to offer employment opportunities to qualified beneficiaries of LICENSOR.

9. CAPITAL EXPENDITURES/CONTRACTS. LICENSEE agrees to utilize qualified companies controlled or owned by beneficiaries of LICENSOR provided such beneficiary company is qualified to perform the terms of the contract and such beneficiary company's bid price is not more than 5% higher than the lowest bid from an equally qualified non-beneficiary company.

10. TAXES. During the term of this LICENSE, LICENSEE shall pay when due, all real property taxes and any other assessments, including all charges for utility services, which shall, during the term of this LICENSE, be lawfully charged, assessed, imposed, or become due and payable upon or on account of the licensed premises and the improvements now on or hereafter erected thereon.

11. DUE CARE AND DILIGENCE. LICENSEE shall use due care and diligence in the operation and maintenance of the premises and shall keep the grounds and improvements in good and safe condition and repair.

12. INDEMNITY. LICENSEE shall, to the extent permitted by law, indemnify and hold harmless, LICENSOR, from any and all claims and demands against LICENSOR for any loss or damage or injury or death to persons or property resulting from, or in any way connected with, the condition or use of the premises covered by this LICENSE not caused by the negligence of LICENSOR, their agents, servants or employees acting within the scope of their employment, and from and against all damages, costs, counsel fees, or liabilities incurred or brought thereon.

13. ASSIGNMENTS. Except as expressly provided in this LICENSE, this LICENSE is not transferable. At no time during the term of this LICENSE, shall LICENSEE assign, mortgage or pledge its interest in this LICENSE or its interest in the improvements now or hereafter erected on the premises without the prior written consent of LICENSOR, which consent will not be withheld unreasonably.

14. CONDEMNATION. If at any time the premises across which this LICENSE extends, or any part thereof, shall be condemned or taken for any public project by a governmental authority, LICENSEE shall have the right to claim and recover from the condemning authority, but not from LICENSOR, such

compensation as is payable for the LICENSE and LICENSEE'S improvements, if any, used in connection with this LICENSE, which shall be payable to LICENSEE as its interests appear.

15. ABANDONMENT. In the event the easement area hereby granted shall be abandoned or shall remain unused for a continuous period of one year, all rights granted hereunder shall terminate, and LICENSEE will remove its equipment and improvements and restore the land as nearly as is reasonably possible to the condition existing immediately prior to the signing of this License. Failure of LICENSEE to remove its equipment and improvements and to restore the land within 90 days after notification to do so from LICENSOR by certified mail at LICENSEE'S last known address, will constitute a breach of this LICENSE and LICENSOR may thereafter remove LICENSEE'S equipment and improvements and restore the land to a condition similar to that existing immediately prior to the signing of this LICENSE and LICENSEE will reimburse LICENSOR for all reasonable costs in connection with the removal and restoration.

16. RELOCATION. If LICENSOR determines that the continued exercise of the easement rights granted herein constitutes an undue interference with a subdivision or other development of the land over which the granted easement crosses, LICENSOR shall have the right to terminate the easement granted to the extent necessary to eliminate such interference; provided, that it shall grant to LICENSEE without payment of any monetary consideration, a substitute easement of similar width within the reasonable vicinity to permit LICENSEE to effect relocation of any facility or portion thereof, installed, placed or constructed on the easement area at LICENSEE'S own cost and expense, which substitute easement shall be subject to the same terms and conditions as this LICENSE contains.

17. CONSTRUCTION OF IMPROVEMENTS. LICENSEE shall undertake no construction until LICENSOR has reviewed and approved the plans. All buildings or structures or other major improvements of whatever kind that LICENSEE constructs or erects on the premises shall remain the property of LICENSEE and LICENSEE shall have the right, prior to termination of this LICENSE, or within such additional period as LICENSOR in its reasonable discretion may allow, to remove its property from the premises; provided that in the event LICENSEE shall fail to so remove such property within thirty (30) days after written notice to remove, LICENSOR may at its option retain the property or remove the same and charge the cost of removal and storage, if any, to LICENSEE.

18. MAINTENANCE OF PREMISES. During the term of this LICENSE, LICENSEE shall repair and maintain all improvements heretofore and hereafter erected upon the premises, including all glass, water and gas plumbing, electrical wiring, and all

other fixtures in or on the premises with all necessary reparations and amendments whatsoever; shall keep the premises and all improvements thereon in a strictly clean and sanitary condition, and shall comply with all laws, ordinances, rules and regulations of the Federal, State, County or municipal governments that are applicable to the premises and improvements; and shall allow LICENSOR or its agents, at all reasonable times, free access to the premises for the purpose of examining the same or determining whether the conditions herein are being fully observed and performed, and shall make good at its own cost and expense all defects within sixty (60) days after receipt of written notice by certified mail to the last known address of LICENSEE.

19. **BREACH.** If LICENSEE shall substantially fail to observe or perform any of the conditions herein contained and on its part to be observed or performed and such failure or lack of substantial compliance shall continue for sixty (60) days after the receipt by certified mail or written notice of such failure to the address of LICENSEE, or if LICENSEE shall abandon the premises, then and in any such event LICENSOR may, at its option, cancel this LICENSE Agreement and, thereupon, take immediate possession of the premises, allowing LICENSEE reasonable time to remove its property therefrom, without prejudice to any remedy or right of action that LICENSOR may have against LICENSEE.

20. **RIGHT OF ENTRY.** LICENSOR and its duly authorized representatives shall have the right to enter the Premises at all times for the purposes of conducting its own inspection and to ensure that LICENSEE is in compliance with the provisions of this LICENSE.

21. **WAIVER.** That notwithstanding any provision contained herein to the contrary, wherever applicable, LICENSOR may for good cause shown, extend the time for compliance and/or waive any of the terms, conditions and covenants contained herein that LICENSEE, must observe and perform.

22. **SEVERABILITY.** Whenever possible each provision of this LICENSE shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this LICENSE should be prohibited or invalidated under applicable law or for any other reason whatsoever, such provision shall not invalidate any other portion of this License.

23. **DEFINITION.** The word "premises", when it appears herein, includes and shall be deemed to include the lands described above and improvements whenever and wherever erected or placed thereon.

- 6 -

24. SINGULAR/PLURAL. The singular or plural depends on its appropriate use.

25. AGREEMENT. This agreement shall be binding upon and inure to the benefit of the parties hereto and their respective legal successors and assigns.

IN WITNESS WHEREOF, the parties hereto have caused these presents to be duly executed the day and year first above written.

Approved by the HHC
at its meeting held on
December 20, 1994

State of Hawaii
DEPARTMENT OF HAWAIIAN HOME LANDS

By _____
Kali Watson, Chairman
Hawaiian Homes Commission

LICENSOR

Approved as to form:

_____
Deputy Attorney General
State of Hawaii

WAIMANA ENTERPRISES, INC.
a Hawaii corporation

By_____
Albert S.N. Hee, President

LICENSEE

STATE OF HAWAII          )
                                     ) ss

CITY AND COUNTY OF HONOLULU   )

        On this __9th__ day of ___May___, 19 95,

before me personally appeared Albert S.N. Hee, to me personally

known, who, being by me duly sworn, did say that he is the

President of Waimana Enterprises, Inc., a Hawaii corporation,

and that the instrument was signed on behalf of the corporation

and he acknowledged the instrument to be the free act and deed

of the corporation.

                          _____

                          Notary Public, State of Hawaii
                          My commission expires: _12/27/95_