PETTIT LAW HAWAI'I LLC
TED N. PETTIT, ESQ. [4287]
Email: ted@pettitlawhawaii.com
Pauahi Tower
1003 Bishop Street, Suite 2700
Honolulu, Hawai'i 96813-3283
Phone: (808) 237-2477 | Fax: (808) 664-6723

MORGAN, LEWIS & BOCKIUS LLP
ANDREW J. GALLO (pro hac vice)
One Federal Street
Boston, MA 02110-1726
Phone: +1 (617) 951-8117
Email: andrew.gallo@morganlewis.com

Attorneys for HAWAIIAN TELCOM, INC.

UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>SANDWICH ISLES COMMUNICATIONS, INC., *et al*<br><br>　　　　Defendants. | CIV. NO. 18-00145 JMS-RT<br><br>SUCCESSFUL BIDDER HAWAIIAN TELCOM, INC.'S STATEMENT IN SUPPORT OF THE UNITED STATES OF AMERICA'S MOTION FOR ORDER APPROVING CONFIRMATION OF EXECUTION SALE (ECF 544) AND RESPONSE TO SANDWICH ISLES COMMUNICATIONS' OBJECTION TO THE CONFIRMATION MOTION (ECF 549)<br><br><u>HEARING:</u><br>DATE:　July 2, 2024<br>TIME:　10:00 a.m.<br>JUDGE:　Hon. J. Michael Seabright |

## TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................... 1

II. PERTINENT BACKGROUND ............................................................... 4

    A. HTI ................................................................................................ 4

    B. The Paniolo Sale ........................................................................... 4

    C. The HTI Bid .................................................................................. 6

III. LEGAL STATEMENT IN SUPPORT AND RESPONSE ........................ 7

    A. The Procedures Order Does Not Require Qualified Bids to Assume SIC's Obligations to Its Customers. ................................. 7

    B. There Are No Conditions in the HTI Bid that Are Inconsistent with the Procedures Order. .......................................................... 10

    C. HTI's Request that SIC Cooperate in Porting Numbers Does Not Violate the Communications Act. ........................................ 11

    D. The HTI Bid Does Not Violate the Hawaiian Homes Commission Act. .......................................................................... 13

    E. SIC's Remaining Arguments Are Without Merit. ....................... 14

IV. CONCLUSION ......................................................................................... 15

# TABLE OF AUTHORITIES

**Statutes**

47 U.S.C. § 251(f)(1) .................................................................................... 11, 12

**Federal Cases**

*Sandwich Isle Commc'ms, Inc. et al. v. Hawaiian Telcom, Inc.*,
Consolidated Case Nos. 22-00426, 22-00427, 22-00428, 22-00434, 22-00435, 22-00441 (D. Haw.) ........................................................................................5

**State Cases**

*Waimana Enters. Inc. v. Dep't of Hawaiian Home Lands*,
Civil No. 1CCV-22-0000617, 2022 Haw. Trial Order LEXIS 1953 (Hawaii Circuit Court, First Circuit, Nov. 3, 2022), at *7–8..........................................................13

**Other Legal Authorities**

HHCA Section 207(c)(1) .......................................................................................14

HHCA Section 208(5)...................................................................................... 13, 14

*Sandwich Isles Communications, Inc., Waimana Enterprises, Inc., Albert S.N. Hee*,
Forfeiture Order, 35 F.C.C.R. 10831 (2020). .........................................................9

*Wireline Competition Bureau Seeks Comment On Initiating Proceedings To Revoke Sandwich Isles Communications, Inc.'s Commission Authorizations*,
Public Notice, 32 F.C.C.R. 1362 (2017).............................................................10

*Implementation of the Local Competition Provisions in the Telecommunications Act of 1996*, First Report and Order, 11 F.C.C.R. 15499, 16118 par. 1262 (1996) (*subseq. hist. omitted*). .......................................................................................13

*Petition of CRC Communications of Maine, Inc. and Time Warner Cable Inc. for Preemption Pursuant to Section 253 of the Communications Act, as Amended*,
Declaratory Ruling, 26 F.C.C.R., 8259, 8261 para. 5 (2011)................................13

**SUCCESSFUL BIDDER HAWAIIAN TELCOM, INC.'S STATEMENT IN SUPPORT OF THE UNITED STATES OF AMERICA'S MOTION FOR ORDER APPROVING CONFIRMATION OF EXECUTION SALE (ECF 544) AND IN RESPONSE TO SANDWICH ISLES COMMUNICATIONS' <u>OBJECTION TO THE CONFIRMATION MOTION (ECF 549)</u>**

Hawaiian Telcom, Inc. ("<u>HTI</u>"), as successful bidder in the auction conducted pursuant to this Court's Order Approving The United States of America's Unopposed Motion for Order Approving Execution Sale Procedures (ECF 535) (the "<u>Procedures Order</u>"), hereby submits this statement in support of the United States of America's Motion for Order Approving Confirmation of Execution Sale (ECF 544) (the "<u>Confirmation Motion</u>") and in response to the Objection to the Confirmation Motion (ECF 549) (the "<u>SIC Objection</u>") of defendant Sandwich Isles Communications ("<u>SIC</u>").

## I.      INTRODUCTION

Both the Confirmation Motion and the SIC Objection seek second chances. In the Confirmation Motion, the Rural Utility Service ("<u>RUS</u>") is seeking a second chance at achieving the purpose of its initial loan to SIC – to provide reliable, modern telecommunications services to the Hawaiian Home Lands. History now shows that RUS' investment thesis of leveraging the government fisc to bring communications infrastructure to those remote, topographically challenging areas of the Hawaiian Home Lands was fundamentally sound.  Unfortunately, history also shows that the private partner (SIC) chosen to leverage this government investment was not. SIC

defaulted on its obligations to the RUS, ultimately leading to this Confirmation Motion seeking approval of the proposed sale of certain of SIC's assets to HTI, the best and highest bidder. If confirmed, this sale not only maximizes RUS's recovery of defaulted loan proceeds, but also provides a second chance for the assets to be put into the hands of an experienced, well-regarded and financially-sound operator that can fulfill the mission of deploying them in all ways most beneficial to the Hawaiian Home Lands and its beneficiaries.

The other request for a "second chance" is in the SIC Objection. The RUS loan default is only a small part of the vast tree of litigation spawned by Al Hee and the entities he owns and controls. Spread out across countless state and federal courts and the alphabet soup of state and federal regulatory bodies, that tree's fruit includes bankruptcy, foreclosures, contempt orders, criminal convictions, tax-fraud, fines, forfeitures, show-cause proceedings, seizures, and enforcement actions. Notably for this case, the branches extend not only to SIC, but also to putative alternative bidder Waimana Enterprises, Inc. ("Waimana"), as well as SIC's sole remaining officer, Al Hee, which parties, on more than one occasion, have been found to be all but one and the same. The question of whether the highly sanitized version of themselves presented in the SIC Objection lays witness to some tireless *kuleana* on behalf of the beneficiaries, or rather when in full unexpurgated version is something altogether less noble, certainly hangs over the present proceedings. Ultimately, that question

will largely be answered in the court of public opinion. What this Court can and should firmly deny is Al Hee's request for a second chance to own SIC's assets, after he failed to properly steward them the first time.

HTI's bid is consistent with the Procedures Order and does not impact continuity of service to SIC's customers because it leaves undisturbed all network elements of any carrier (including SIC) providing service. The sale will put the Conduit System in the hands of HTI, a financially sound and experienced local telecommunications operator that can integrate it with other infrastructure to accelerate the ability to provide modern telecommunications to the Hawaiian Home Lands and to unlock the Conduit System for use by other carriers wishing to extend their own networks there. The HTI Bid stands in stark contrast to Waimana's bid, the only apparent alternative. The HTI Bid offers fifty times more cash consideration, and Waimana cannot ensure continuity of service or even certainty of closing, as it does not have the regulatory approvals necessary to operate all of SIC's assets and service its customers, nor any apparent pathway to obtaining federal and state change-of-control approvals required to acquire highly regulated assets.

In selecting HTI's bid as the highest and best, Plaintiff was well within the discretion afforded to it in the Procedures Order. HTI's bid complied with the Procedures Order, is credible, and is vastly superior in every way to the Waimana bid. HTI urges the Court to grant the Confirmation Motion.

## II. PERTINENT BACKGROUND

### A. HTI

HTI is a leading provider of integrated communications services in the state of Hawaii, including High-Speed Internet, data, video entertainment, and local and long-distance voice services. Declaration of Daniel Masutomi ("Masutomi Dec.") ¶ 13. As a state-wide provider, HTI already provides telecommunications services to customers within the Hawaiian Home Lands and surrounding areas. *Id*. ¶ 14. Through the Paniolo Sale (defined below), HTI also operates a middle-mile network in the Hawaiian Home Lands to which the SIC network is interconnected. *Id*. ¶ 15. HTI has a negotiated letter of authorization ("HT LOA") with the federal Team Telecom which governs the security, use and operation of its telecom assets. *Id*. ¶ 16. As a long-standing carrier in Hawaii, HTI also has interconnection and conduit access agreements in place with virtually every other communications provider in the state. *Id*. ¶ 17.

### B. The Paniolo Sale

While this litigation was pending, creditors of Paniolo Cable Company, an affiliate of SIC under common ownership and control of Al Hee, commenced an involuntary bankruptcy proceeding.[1] In that bankruptcy, the Chapter 11 trustee (the

---

[1] The history of the Paniolo bankruptcy and related litigation is recounted in detail in the Honorable Jill A. Otake's decision on appeal denying the Al Hee groups' appeals of their efforts to thwart the Paniolo Sale, which matter is currently on appeal to the

4

"<u>Trustee</u>") obtained a judgment against SIC for amounts owed to Paniolo. Paniolo Decision at 10. In partial satisfaction of such judgment, the Trustee obtained, through levy and a marshal sale, certain SIC assets, including central offices, conduits and manholes, and the associated entitlements. *Id*. The Trustee subsequently sold those assets to HTI free and clear in the bankruptcy (the "<u>Paniolo Sale</u>"). *Id*. at 13. Among the assets was a portion of SIC's interest in License Agreement No. 372 issued by the State of Hawaii, Department of Hawaiian Home Lands ("<u>DHHL</u>" and such license, "<u>License 372</u>"). *Id.* at 35.

After the Paniolo Sale closed, SIC and other entities of the Al Hee group sought to block HTI's access to certain purchased assets and premises. Masutomi Dec. ¶ 20. SIC also refused to turn over certain assets, instead claiming that they belonged to yet another Al Hee owned and controlled affiliate, Clearcom, Inc. *Id.* ¶ 21. Ultimately, SIC turned over these assets, but only after the bankruptcy court found SIC to be in contempt. *See* Paniolo Decision at 17. The bankruptcy court also denied SIC and its affiliates' other belated attacks of the Paniolo Sale, including arguing that HTI did not acquire rights under License 372 necessary to operate the purchased assets. *Id.* at 37. SIC appealed and this Court (Otake, J.) affirmed the

---

Ninth Circuit. *See Sandwich Isle Commc'ms, Inc. et al. v. Hawaiian Telcom, Inc.*, Consolidated Case Nos. 22-00426, 22-00427, 22-00428, 22-00434, 22-00435, 22-00441 (D. Haw.), Order Denying Mot. to Dismiss and Affirming Orders of the Bankr. Court (ECF 855) (on appeal) (the "<u>Paniolo Decision</u>").

5

bankruptcy court's orders. *See* Paniolo Decision. SIC and its affiliates are now appealing the orders to the Ninth Circuit.

### C. The HTI Bid

HTI timely submitted its bid (the "HTI Bid") to purchase the Acquired Assets (as defined in the bid) for $500,000. *See* Masutomi Dec. Ex. M-1. Specifically, HTI seeks to purchase the "Conduit System," which generally includes all conduits and other equipment necessary to protect and house underground communications cables and facilities used in the provision of telephone service by SIC. *Id*. Pursuant to its bid, HTI does not seek to acquire SIC's customer relationships or the network elements (i.e. the cables and related equipment) SIC uses to provide its services. *Id*. Rather, after it purchases the Conduit System, HTI will provide non-discriminatory access to the Conduit System to other providers, including SIC, pursuant to existing access agreements, or new agreements, as required by applicable laws and regulations. *See* Masutomi Dec. ¶ 18.[2] HTI intends to integrate the Conduit System with HTI's existing telecommunications infrastructure already in certain parts of the Hawaiian Home Lands and surrounding areas, with the hope of expanding and modernizing telecommunications services (including broadband) to the Hawaiian Home Lands. *Id.* ¶ 19.

---

[2] HTI's existing Conduit Occupancy Agreement with SIC is attached as Exhibit M-2 to the Masutomi Declaration.

## III. LEGAL STATEMENT IN SUPPORT AND RESPONSE

### A. The Procedures Order Does Not Require Qualified Bids to Assume SIC's Obligations to Its Customers.

The Procedures Order contains no requirement that to be qualified, a bidder must agree to purchase SIC's network, assume SIC's obligations to its customers and provide ongoing service to those customers after the sale. In fact, the Procedures Order says the opposite. Section 4(d)(i) of the Procedures Order gives a Qualified Bid the option to provide for the purchase of "all or a portion of the Property" provided that it "identify the specific portion(s) of the Property" covered by the bid. Additionally, Section 4(e)(i) of the Procedures Order allows the Plaintiff "to determine whether the Auction shall proceed for the Property as a whole, or whether the Auction shall be divided into subsets, lots or packages." These provisions confirm that the Procedures Order allows Qualified Bids to be for less than all of SIC's assets provided the specific assets are identified, which the HTI Bid does.

SIC wishes to construe Section 4(d)(ix) of the Procedures Order as requiring that any Qualified Bid agree to "provide service" to SIC's customers, but this section says nothing of the sort.  Section 4(d)(ix) provides that a bidder must "[d]ocument its proposed use of the Property, including how the proposed use of the Property shall benefit the residents of the Hawaiian Home Lands, and the bidder's capability to provide continuity of service in accordance with Sandwich Isles Communications, Inc.'s License from the date the court confirms the purchase."  Requiring a bidder to

7

list its capabilities, and requiring a bidder to actually provide service, are two different things. If the Procedures Order required a Qualified Bid to assume SIC's service obligations, it would have said so. To the contrary, Section 4(e)(vi) of the Procedures Order provides that when choosing the successful bid, Plaintiff "may, in its discretion, take into consideration the bid's benefits to the residents of the Hawaiian Home Lands." This puts Section 4(d)(ix)'s requirement to list intended use and capabilities in context because intent and capabilities regarding the Hawaiian Home Lands are relevant where the Procedures Order permits Plaintiff to consider benefit to the Hawaiian Home Lands when exercising its discretion to choose the highest and best bid.

SIC's Objection, therefore, amounts to nothing more than a request that the Court rescind the discretion afforded to the Plaintiff and require that any Qualified Bid must affect a hard service shift from SIC to the bidder. In doing so, SIC is essentially asking this Court to enter the fray regarding SIC's obligation to provide service, an area that is already being actively overseen by governmental authorities. Both the Federal Communications Commission (the "FCC") and the Hawaii Public Utilities Commission have made clear that it is SIC's responsibility to provide continuity of service to its customers until it has obtained regulatory approval to discontinue service. *See* Masutomi Dec. Exs. M-5, M-6. Similarly, the Governor of Hawaii has issued an emergency proclamation requiring SIC to maintain continuity

of service. *Id.* Ex. M-7. SIC's request that this Court construe the Procedures Order in a way that would allow SIC to escape its responsibilities and require any Qualified Bidder assume its service obligations implicates regulatory issues that are outside of the scope of this proceeding.

Even if assumption of SIC's service obligations were a requirement of the Procedures Order, there is absolutely nothing to suggest that Waimana, the only other bidder, could do so. If SIC, Waimana's wholly owned subsidiary, cannot financially support its operations, why would Waimana be in a better financial position to do so?[3] Waimana also has none of the regulatory approvals and authorizations necessary to operate SIC's network. Indeed, it is hard to see how it could ever obtain them. In 2020 the FCC issued a joint and several Forfeiture Order against SIC, Waimana and Al Hee in the amount of $49,598,448 for violating the Communications Act and falsifying data submitted to obtain FCC Universal Service Funds.[4] Citing the same facts, the FCC also initiated a review of whether to revoke the FCC authorizations held by SIC,[5] casting serious doubt on whether the FCC

---

[3]If Waimana does have the financial ability to operate the SIC network, then it is fair to ask whether Waimana has intentionally starved SIC of cash so that it can force a sale of SIC's assets to itself for minimal consideration.

[4] *Sandwich Isles Communications, Inc., Waimana Enterprises, Inc., Albert S.N. Hee*, Forfeiture Order, 35 F.C.C.R. 10831 (2020).

[5]*Wireline Competition Bureau Seeks Comment On Initiating Proceedings To Revoke Sandwich Isles Communications, Inc.'s Commission Authorizations*, Public Notice, 32 F.C.C.R. 1362 (2017).

would approve of Waimana's acquisition of SIC's communications authorizations. Given these facts, Plaintiff was well within its discretion to consider the HTI Bid a better option for the Hawaiian Home Lands than Waimana's.

**B.     There Are No Conditions in the HTI Bid that Are Inconsistent with the Procedures Order.**

It is fundamental to any sale that the purchaser understand what it is buying. While a sale of assets, such as this one, may be done "as is, where is," that does not mean that the buyer should be in the dark as to what assets are being sold. The Procedures Order recognizes this by providing that "SIC will provide reasonable due diligence information requested by prospective purchasers," including "information about what assets owned by SIC affiliates are used in providing service to SIC customers on Hawaiian Home Lands." Procedures Order, Ex. 1 "Execution Sale Term Sheet" ¶¶ 4-5. The provision in the HTI Bid that asks SIC and its affiliates to confirm in writing that SIC owns the Acquired Assets is a due diligence request consistent with the Procedures Order.

HTI has good reason to ask that SIC confirm ownership of the Acquired Assets. After the Paniolo Sale was approved, SIC, Waimana and other affiliates controlled by Al Hee refused to turn over certain purchased assets and interfered with HTI's use and enjoyment of others based on claims the assets belonged to affiliates other than Paniolo or SIC or that those affiliates retained rights against the property. This forced HTI to commence exhaustive (and to-date successful)

10

litigation. The diligence provision in the HTI Bid is intended to avoid a similar shell-game followed by lengthy, post-sale litigation. For this reason, HTI believes that it is in the best interest of the Court, the Plaintiff, the Marshal, HTI and SIC and its affiliates for SIC to clarify its position as to the ownership of the Acquired Assets. Nonetheless, HTI is willing to waive its diligence request and is prepared to go forward with the sale without it. Masutomi Dec. ¶ 22.

### C. HTI's Request that SIC Cooperate in Porting Numbers Does Not Violate the Communications Act.

In its objection, SIC construes paragraph 14(d) of the HTI Bid, which provides that the Sale Order (as defined in the HTI Bid) require cooperation on any "number porting requests," as inconsistent with 47 U.S.C. § 251(f)(1) (the "Rural Exemption" to the Communications Act). SIC claims this statutory provision exempts SIC from having to move its customers and port their numbers to another carrier "if doing so causes economic harm." SIC Objection at 4, n.2 and 8.

SIC's claim expressly contradicts the FCC's Emergency Order dated June 7, 2024 (the "Emergency FCC Order") that both affirms SIC's porting obligations and waives the "number porting rules, requirements and related processes to facilitate uninterrupted telephone service for Hawaiian Home Lands residents desiring to port their telephone numbers away from [SIC] to a new service provider." Masutomi Dec. Ex. M-8 ¶ 1. The FCC, aware that SIC was "blocking current [SIC] customers' ability to port their current [SIC] telephone numbers to their new service providers"

11

issued the Emergency FCC Order to permit customer and number porting without SIC's cooperation or consent and "regardless of any objection from or other obstacle that [SIC] may attempt to create." *Id.* ¶¶ 3, 5. The Emergency FCC Order not only makes clear the FCC's jurisdiction over SIC and SIC's obligation to cooperate in the porting of numbers, but also eliminates the need to wait for SIC's cooperation.

Even if SIC's argument was not mooted by the Emergency FCC Order, the argument is incorrect as a matter of law. The Rural Exemption provides that "subsection (c) of [section 251] shall not apply to a rural telephone company." 47 U.S.C. § 251(f)(1). Number portability, however, is not codified in subsection (c) but appears in section 251(b), which applies to all local exchange carriers ("LEC"). Therefore, under the plain language of the Rural Exemption, as enforced by the FCC, "rural LECs remain subject to the section 251(b) number portability obligations even if they also are subject to section 251(f)(1)'s rural exemption."[6] The Rural Exemption does not apply to number portability because Congress "did not intend to insulate smaller or rural LECs from competition, and thereby prevent subscribers

---

[6] *Petition of CRC Communications of Maine, Inc. and Time Warner Cable Inc. for Preemption Pursuant to Section 253 of the Communications Act, as Amended,* Declaratory Ruling, 26 F.C.C.R., 8259, 8261 para. 5 (2011).

in those communities from obtaining the benefits of competitive local exchange service."[7]

### D. The HTI Bid Does Not Violate the Hawaiian Homes Commission Act.

SIC claims that the HTI Bid violates the Hawaiian Homes Commission Act ("HCCA") because "HCCA *leases* are immune from 'levy, or sale upon court process'" pursuant to HHCA Section 208(5). SIC Objection at 9 (emphasis added). As SIC acknowledges, it made this same argument after the Paniolo Sale, and it was rejected both by the bankruptcy court and by Judge Otake on appeal. Specifically, as Judge Otake found, the "HHCA plainly delineates between leases and licenses" and License 372 was granted by the DHHL to Waimana under Section 207(c)(1) of the HHCA as a license. Paniolo Decision at 63. Judge Otake based her decision, in part, on a state court ruling in an action brought by SIC and its affiliates against DHHL, which also concluded that License 372 was a license and not "a conveyance of fee simple interest nor a lease," and does not grant the SIC Parties "any possessory or ownership rights" over any portion of the Hawaiian Home Lands.[8] Because the

---

[7]*Implementation of the Local Competition Provisions in the Telecommunications Act of 1996*, First Report and Order, 11 F.C.C.R. 15499, 16118 par. 1262 (1996) (*subseq. hist. omitted*).

[8] *See Waimana Enters. Inc. v. Dep't of Hawaiian Home Lands*, Civil No. 1CCV-22-0000617, 2022 Haw. Trial Order LEXIS 1953 (Hawaii Circuit Court, First Circuit, Nov. 3, 2022), at *7–8.

13

restriction on "levy, or sale upon court process" in section 208(5) of the HHCA only applies to leases, it is inapplicable to License 372. *Id.* at 60-61.

SIC also argues that HTI cannot purchase only that portion of License 372 necessary to operate the Conduit System, but this is precisely what was approved in the Paniolo Sale, where HTI purchased that portion of License 372 necessary to operate the purchased assets that were located on the Hawaiian Home Lands (including conduits that are interconnected to the Conduit System). Paniolo Order at 37 ("The Court therefore finds no error in the Bankruptcy Court's conclusion . . . that Hawaiian Telcom acquired 'those certain portions of the 372 License [] pertaining to the Paniolo Network and/or the Paniolo Premises that were formerly held by SIC.'"). The outcome here should be no different. SIC only owns that portion of License 372 that was assigned to it by Waimana (*see* Masutomi Dec. Ex. M-4), so SIC's argument that HTI cannot similarly acquire a portion has no merit.

### E. SIC's Remaining Arguments Are Without Merit.

The SIC Objection also asserts various other arguments, including that the HTI bid violates the Rural Electrification Act, that it contains contingencies that allow HTI to walk away from the sale and that Waimana's bid is better because it factors in costs of servicing. These arguments are all derivative of SIC's other arguments and should be denied for the reasons stated above. The HTI Bid does not contain any contingencies that are inconsistent with the Procedures Order. The HTI

14

Bid is superior to Waimana's bid and is consistent with the purpose behind the Rural Electrification Act because HTI is a proven operator that can improve telecommunication service to the Hawaiian Home Lands. Unlike Waimana, HTI has the financial capability to maintain and improve the Conduit System, with the goal of integrating it into HTI's existing infrastructure and making it available to carriers deploying modern communications services. The sale to HTI is the best option for the beneficiaries of the Hawaiian Home Lands, provides fifty times more consideration to the Plaintiff than the Waimana bid, and the HTI Bid is the only bid that offers a potential return on the RUS's investment that is consistent with the purpose behind the Rural Electrification Act – to provide long-term, stable, state-of-the-art telecommunications services to the Hawaiian Home Lands.

## IV. CONCLUSION

The Plaintiff was well within its discretion in determining that the HTI Bid is highest and best. For the foregoing reasons, successful bidder HTI requests that the Court overrule the SIC Objection and grant the Confirmation Motion by entering the proposed Sale Order submitted by the Plaintiff, which has been approved by HTI and authorizes the clerk to issue a Writ of Possession and a Writ of Assistance in favor of HTI upon HTI's request.

DATED: Honolulu, Hawaii, June 27, 2024.

**PETTIT LAW HAWAI'I LLLC**

_/s/ Ted N. Pettit_
TED N. PETTIT
and
ANDREW J. GALLO *(Pro Hac Vice)*
MORGAN, LEWIS & BOCKIUS LLP

Attorneys for
HAWAIIAN TELCOM, INC.

16