Of Counsel:
ASHFORD & WRISTON LLLP

KEVIN W. HERRING          6722-0
First Hawaiian Center
999 Bishop Street, Suite 1400
Honolulu, Hawaii 96813
Telephone: (808) 539-0400
FaxL (808) 533-4945
Email: kherring@awlaw.com

Attorney for Interested Party
Department of Hawaiian Home Lands

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>SANDWICH ISLES COMMUNICATIONS, INC., *et al*<br><br>Defendants. | CIV. NO. 18-00145 JMS-RT<br><br>INTERESTED PARTY DEPARTMENT OF HAWAIIAN HOME LANDS' MEMORANDUM IN SUPPORT OF THE UNITED STATES OF AMERICA'S MOTION FOR ORDER APPROVING CONFIRMATION OF EXECUTION SALE (ECF 544); DECLARATION OF JAREN TENGAN; EXHIBITS H1-H3; CERTIFICATE OF SERVICE<br><br>HEARING:<br>DATE:   July 2, 2024<br>TIME:   10:00 a.m.<br>JUDGE:  Hon. J. Michael Seabright |

3386384

# INTERESTED PARTY DEPARTMENT OF HAWAIIAN HOME LANDS' MEMORANDUM IN SUPPORT OF THE UNITED STATES OF AMERICA'S MOTION FOR ORDER APPROVING CONFIRMATION OF EXECUTION SALE (ECF 544)

The State of Hawaii, Department of Hawaiian Home Lands ("DHHL"), an interested party, hereby respectfully submits this statement in support of the United States of America's Motion for Order Approving Confirmation of Execution Sale (ECF 544) (the "Confirmation Motion").

A.  **The Department of Hawaiian Home Lands and License 372**

"DHHL is responsible for managing the Hawaiian home lands for the benefit of native Hawaiians under the Hawaiian Homes Commission Act of 1920, as amended. Thousands of families reside on the Hawaiian home lands, which are comprised of approximately 203,000 acres[.]" In re Connect America Fund; Sandwich Isles Communications, Inc., Federal Communications Commission, WC Docket No. 10-90; CC Docket No. 96-45 (FCC 17-85, July 3, 2017). "Pursuant to the HHCA, DHHL has authority over access to and uses of the Hawaiian home lands, including authority to grant licenses as easements for telephone lines." Id. (internal punctuation omitted); *accord* HHCA Sec. 207(c)(1)(A) (authorizing licenses for railroads, telephone lines, electric power and light lines, gas mains, and the like). Licenses issued under HHCA Sec. 207(c) "shall be subject to such terms, conditions, and restrictions as the department shall determine and shall not restrict the areas required by the department in carrying on its duties, nor interfere in any

way with the department's operation or maintenance activities." HHCA Sec. 207(c)(3).

"In 1995, and pursuant to that authority, DHHL issued "License Agreement No. 372" ("License 372") to Waimana Enterprises, Inc. ("Waimana")." Sandwich Isles Communications, Inc. v. Hawaiian Telcom, Inc., No. AP 22-90008, 2023 WL 6378626, at *2 (D. Haw. Sept. 29, 2023), reh'g denied, No. AP 22-90008, 2023 WL 7861533 (D. Haw. Oct. 27, 2023) (appeal pending). "In 1996, Waimana assigned part of License 372 to SIC, specifically 'those certain rights, title and interest necessary to provide IntraLata and Instrastate telecommunication services.'" Id.

Courts in Hawaii have confirmed that License 372 is a license as distinguished from a lease. See Waimana Enterprises Inc. v. Dept. of Hawaiian Home Lands, 2022 WL 22826709, at *3 (Hawai'i Cir.Ct.) (appeal pending). License 372 does not grant SIC "any possessory or ownership rights over any portions of Hawaiian home lands, much less the right to exclude others from said lands." Id. Section 208 of the HHCA does not apply to the levy or execution sale of License 372. See Sandwich Isles Communications, Inc. v. Hawaiian Telcom, Inc., Civ. No. 22-00435 JAO-KJM, 2023 WL 6378626, at *21-25 (D. Haw. Sept. 29, 2023) (appeal pending).

In 2017, the Federal Communications Commission expressly ruled that the exclusivity provisions of License 372 violated Section 253 of the Communications Act, 47 U.S.C. § 151 et seq., and were accordingly preempted and non-enforceable under Section 253(d) of the Act. In re Connect America Fund; Sandwich Isles Communications, Inc., Federal Communications Commission, WC Docket No. 10-90; CC Docket No. 96-45 (FCC 17-85, July 3, 2017). . As stated by the FCC:

> [W]e find that an exclusive license to "build, construct, repair, maintain, and operate" a network to provide telecommunications services that was granted by the State of Hawaii, Department of Hawaiian Home Lands . . . to Waimana Enterprises, Inc. . . . and then assigned to its subsidiary, Sandwich Isles Communications, Inc. . . . violates Section 253 of the Communications Act . . . we preempt enforcement of its exclusivity provision pursuant to 253(d) of the Act.

Id.

As a result of the regulatory termination of the exclusivity provisions, License 372 is now a non-exclusive license. In its discretion, DHHL has allowed, and will continue to allow, other telecommunications providers entry on, across, and under DHHL lands for such purposes as deemed necessary and appropriate, including the provision of last-mile telecommunications services to DHHL facilities, beneficiaries, and lessees.

### B. SIC and Waimana's Financial, Legal and Regulatory Woes Began Years Ago, and Were Self-Inflicted

In July of 2015 the "manager of SIC and its parent company, Waimana – was convicted of violating the tax code." Sandwich Isles Communications, Inc. v.

United States, 992 F.3d. at 1359. Specifically, the manager "was found guilty of improperly categorizing certain personal expenses as business expenses[.]" Id. "Waimana paid $4,063,294.39 of [the manager's] personal expenses, which he improperly designated as business expenses." Id. These expenses included "personal massages, college tuition for his children, [and] family vacations to France, Switzerland, Tahiti, Disney World, and the Mauna Lani resort." Hee v. United States, 2018 WL 4609932 at *1, (D. Haw. Sept. 25, 2018).

"Shortly after [the] conviction" an "audit revealed that SIC received millions of dollars of USF funds that it should not have received." Sandwich Isles Communications, Inc. v. United States, 992 F.3d. at 1359. Following further Federal investigations, "the FCC issued an order finding that SIC improperly received payments in the amount of $27,270,390." Id. at 1360. FCC Commissioner's Mignon Clyburn and Ajit Pai described SIC's conduct as being "egregious" and noted that millions of dollars in Federal subsidies "intended to benefit the people of the Hawaiian Homeland … instead lined the pockets of the company's owner." In the Matter of Sandwich Isles Communications, Inc., 31 F.C.C. Rcd. 12999 (2016); In the Matter of Sandwich Isles Communications, Inc., 31 F.C.C. Rcd. 12947 (2016) (describing "SIC's egregious misconduct" and recommending a forfeiture in the amount of $49,598,448); In the Matter of Sandwich Isles Communications, Inc., No. 201732080004, 2020 WL 5905313, at

\*19 (OHMSV Oct. 1, 2020) (opining that $49 million forfeiture was justified by the "egregious nature and extent of SIC's violations" together with "SIC's, Waimana's and Hee's efforts to conceal the violations" and the "substantial harm" that resulted).

### C. SIC's Service Disruptions and Unlawful Disconnection Notices Emphasize the Need to Move Forward with Alternative, Reliable Providers

SIC's service disruptions began well before the auction. In April of 2024, DHHL was notified by beneficiaries of SIC telecommunications outages in the Puukapu community on Hawaii island. See Declaration of Jaren Tengan (*Tengan Dec.*), ¶4. DHHL followed up with beneficiaries and SIC to determine the cause of the service outage and also conducted on-site inspections.

DHHL learned that outages in Puukapu had been occurring sporadically since January of 2024. SIC attributed the most recent outage in April to a failed breaker. DHHL continued to follow up, concerned that SIC was not making progress on restoring service. Tengan Dec. ¶5.

On Tuesday, May 14, 2024 DHHL's contracted engineers from Oceanit went to the Puukapu Central Office. Id. ¶6. They observed an SIC technician named Jason removing equipment which he said he was taking back to Honolulu. Id. The SIC technician named Jason also said he was headed to Hilo to remove a piece of equipment that would also be brought back to Honolulu. Id. Jason further

indicated that there was a problem with the power feed (cable) between Puukapu and an area identified as Puukapu East. Id. The Department's contracted engineers proceeded to the Puukapu East location and found that electrical disconnects on both sides of the transformer were in the off position. Id. They were able to verify that the equipment at the site had no power and that the batteries were also dead. Id.

To date, service has not been restored to Puukapu. This SIC service outage is believed to impact approximately 30 households. Id. at ¶9. It was not "caused" by or a result of the auction or Hawaiian Telcom's bid.

DHHL is informed by its consultants that restoring telecommunications service to Puukapu could be expedited if alternative telecommunications providers had access to the SIC-controlled telecommunications conduits that serve the area. Id. at ¶9. If the sale to Hawaiian Telcom is confirmed, the resultant access will facilitate the restoration of service in Puukapu.

After the auction on May 20, 2024, DHHL's SIC-provided phone and data service was interrupted and then restored. Id. at ¶10. In the days that followed, DHHL experienced regular, intermittent disruptions that typically began at approximately 9 am and ended at approximately 3 pm. Id. The offices that were impacted by these outages varied from day to day. Id.

SIC began abdicating its duties and obligations almost immediately after the auction, and ostensibly, before it even knew of the details of Hawaiian Telcom's bid[1]. On May 21, 2024, DHHL and other SIC customers received an email that was sent at 4:07 p.m. Id. at ¶11. The email refers to the auction and states "This is to notify you that should you experience service interruptions, SIC is unable to help." A true and correct copy of the email is attached as Exhibit H1.

At 9:38 p.m. on May 30, 2024, DHHL and other SIC customers received the first in a series of unlawful disconnection notices. Id. at ¶12. A true and correct copy of the email is attached as Exhibit H2. The email states in, capital letters, "It is with great difficulty that we must inform you that it appears that your internet and voice services with Sandwich Isles will end on June 1." Id. The notice was unlawful because it was made without obtaining permission from either the FCC or the Public Utilities Commission. See e.g. Haw. Admin. R. § 6-80-123 (requiring a minimum of thirty days' notice "to the commision, the consumer advocate, and its affected customers").

SIC's unlawful efforts to terminate services without regulatory authority triggered an immediate and appropriate response from governmental authorities. On May 31, 2024, the Governor of the State of Hawaii issued an Emergency

---

[1] A hearing was held before the Public Utilities Commission of the State of Hawaii on June 17, 2024. Albert Hee testified, that it was on "May 24th when we were allowed to see the results of the auction". 6/17/24 Tr., 94:16-17.

Proclamation Relating to Telecommunications Services on Hawaiian Home Lands ("Emergency Proclamation"). Id. at ¶16. The Emergency Proclamation required all entities providing telecommunications services to customers on Hawaiian Home Lands to preserve their "facilities, infrastructure, networks, systems, records, devices, information, and property to prevent any disruption or interruption of telecommunication and broadband services." Id. at ¶16. That same day, the Public Utilities Commission issued a Notice of Violation and Order to Show Cause ("Order to Show Cause"). The Order to Show Cause requried SIC to "not terminate service", to "[c]ontinue to provide service", and [a]ffirmatively maintain and preserve [its] Equipment so that it is in good working order." Id. at ¶17.

Despite the Emergency Proclamation and Order to Show Cause, additional SIC outages and disruptions have continued to occur. Significant outages continue to impact Puukapu, Kahikinui, and Keokea. Id. at ¶18. Other outages and disruptions have been reported to DHHL on Molokai. Id. DHHL itself has continued to experience sporadic outages of SIC service. Id. The only DHHL offices that have not experienced any outages or disruptions are located on Kauai and utilize a different telecommunications provider. Id.

Adding to scope and breadth of the emergency response to SIC's unlawful actions, on June 3, 2024, the FCC sent SIC a cease and desist letter[2]. SIC was instructed to stop improper disconnection notices and to come into compliance with Federal law. To mitigate the impacts of SIC's inaction, on June 6, 2004, the FCC issued an Emergency Order in CC Docket No. 95-116 to facilitate uninterrupted telephone service for Hawaiian Home Lands residents desiring to port their telephone numbers away from SIC to a new service provider. These emergency steps were necessary because through inaction, SIC was delaying the ability of consumers to "port" or switch their numbers to new providers. See id. at ¶19-20.¶

On June 26, 2024, DHHL was contacted by a contractor for Ulupalakua Ranch on Maui. Id. at ¶21. The contractor had identified an SIC microwave relay at a location identified as Keonehunehune. Id. This site is believed to provide connectivity to the Kahikinui community. Id. The contractor provided photographs of the site and confirmed that it was without power and that batteries at the site had not been maintained. Id. True and correct copies of the photographs are attached as Exhibit H3. Contrary to the Emergency Proclamation and the Order to Show

---

[2] Letter from Trent Harkrader, Chief, Wireline Competition Bureau, Federal Communication Commission to Lex R. Smith

Cause, it does not appear that the Keonehunehune microwave relay station has been properly maintained to prevent disruptions of service.

SIC and its parent, Waimana, have had four years to resolve the judgment that led to the auction. Id. at ¶23. They were unable to do that. Worse, their inappropriate and unlawful actions resulted in disruptions in essential services and caused a state of emergency. In a hearing before the Public Utilities Commission on June 17, 2024, Mr. Hee attempted to explain the abrubt discontinuation notices as an effort to get "out of the way."[3] However, SIC remains in the way: out of money[4], subject to an FCC cease and desist directive, subject to a PUC order to show cause, unable to restore service, unable to maintain equipment, unwilling to allow alternative providers access to conduits in accordance with Federal law, and unwilling to properly assist in porting customers to reliable providers. Under these circumstances, SIC should not be permitted to veto the proposed sale to Hawaiian Telcom and further delay the restoration of vital services. Id. at ¶25.

Hawaiian Telcom already provides telecommunications services to customers within the Hawaiian Home Lands and surrounding areas and it has conduit access agreements already in place that will facilitate reasonable, reliable,

---

[3] 6/17/24 Tr., 29:9; Tengan Dec. ¶25.

[4] 6/17/24 Tr., 109:3-5 ("We terminated service because we ran out of money. We didn't research anything. We ran out of money."); Tengan Dec. ¶24.

and competitive telecommunications services as required by Federal law. Id. at ¶27.

DHHL believes that it is in the best interest of its beneficiaries to bring this chapter of uncertainty and regulatory non-compliance to a swift close by granting the pending Confirmation Motion. Tengan Dec. at ¶26. Given all of the present circumstances, DHHL anticipates that a reliable, well-capitalized, and regulatory-compliant provider such as Hawaiian Telcom provides a better path forward. Id. at ¶26.

DATED: Honolulu, Hawaii, June 27, 2024.

                                                          /s/ Kevin W. Herring
                                                          KEVIN W. HERRING
                                                          Attorneys for
                                                          DEPARTMENT OF HAWAIIAN
                                                          HOME LANDS, STATE OF HAWAI'I