IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>SANDWICH ISLES COMMUNICATIONS, INC., *et al*<br><br>Defendants. | CIV. NO. 18-00145 JMS-RT<br><br>DECLARATION OF JAREN TENGAN |

## **DECLARATION OF JAREN TENGAN**

I, JAREN TENGAN, hereby declare as follows:

1. I am employed by the State of Hawaii, Department of Hawaiian Home Lands in the position of Broadband Coordinator. I am authorized to make this declaration on behalf of the Department of Hawaiian Home Lands (the "Department").

2. I make this declaration based upon my personal knowledge, unless otherwise stated, and am competent and qualified to testify on the matters set forth below.

3. As the Broadband Coordinator, my work focuses on telecommunications services within the Hawaiian Home Lands, including more recently responding to and seeking to mitigate the impacts of service disruptions

1

impacting customers of Sandwich Isles Communications ("SIC") within the Hawaiian Home Lands.

4.  On April 22, 2024, I was notified that beneficiaries in the Puukapu community on Hawaii Island had lost telecommunications services provided by SIC. We followed up with beneficiaries and SIC to determine the cause of the service outage and also conducted on-site inspections.

5.  We learned that outages in Puukapu had been occurring sporadically since January. SIC attributed the most recent outage in April to a failed breaker.

6.  On Tuesday, May 14, 2024 the Department's contracted engineers from Oceanit went to the Puukapu Central Office. They observed an SIC technician named Jason removing equipment which he said he was taking back to Honolulu. The SIC technician named Jason also said he was headed to Hilo to remove a piece of equipment that would also be brought back to Honolulu. Jason further indicated that there was a problem with the power feed (cable) between Puukapu and Puukapu East. The Department's contracted engineers proceeded to the Puukapu East location and found that electrical disconnects on both sides of the transformer were in the off position. They were able to verify that the equipment at the site had no power and that the batteries were also dead.

7.  The events of May 14 occurred prior to the auction on May 20. The Puukapu service outage predates the auction by approximately one month.

8.  As of the writing of this declaration, service to Puukapu has not been restored.  This SIC service outage is believed to impact approximately 30 households.

9.  Restoring telecommunications service to Puukapu could be expedited if alternative telecommunications providers had access to the SIC-controlled telecommunications conduits that serve the area.

10.  After the auction on May 20, 2024, the Department's SIC-provided phone and data service was interrupted and then restored.  The following days that week the Department experienced intermittent disruptions that typically began at approximately 9 am and ended at approximately 3 pm.  Different sets of offices were impacted on different days.

11.  On May 21, 2024 I received an email that was forwarded from info@sandwichisles.com.  The email indicates it was sent at 4:07 p.m.  The email refers to the auction and states "This is to notify you that should you experience service interruptions, SIC is unable to help."  A true and correct copy of the email is attached as Exhibit H1.

12.  On May 30, 2024, I received an email that was forwarded from info@sandwichisles.com.  The email indicates it was sent at 9:38 p.m.  The email states in, capital letters, "It is with great difficulty that we must inform you that it

3

appears that your internet and voice services with Sandwich Isels will end on June 1." A true and correct copy of the email is attached as Exhibit H2.

13. The significance of the June 1 is unknown and appears to be arbitrary or at best merely for SIC's convenience.

14. To my knowledge, prior to sending the notice, SIC did not seek or obtain permission from the Federal Communications Commission or the Hawaii Public Utilities Commission to discontinue or suspend service.

15. Notifying beneficiaries that their essential telecommunications services would be arbitrarily terminated on less than 48-hours notice and without regulatory permission is unreasonable and potentially dangerous.

16. As a result of SIC's abrupt and improper disconnection notice, on May 31, 2024, the Governor of the State of Hawaii issued an Emergency Proclamation Relating to Telecommunications Services on Hawaiian Home Lands ("Emergency Proclamation"). The Emergency Proclamation required all entities providing telecommunications services to customers on Hawaiian Home Lands to "preserve its facilities, infrastructure, networks, systems, records, devices, information, and property to prevent any disruption or interruption of telecommunication and broadband services."

17. On May 31, 2024, the Public Utilities Commission issued a Notice of Violation and Order to Show Cause ("Order to Show Cause"). The Order to Show

Cause required SIC to "not terminate service", to "[c]ontinue to provide service", and [a]ffirmatively maintain and preserve [its] Equipment so that it is in good working order."

    18.    Despite the Emergency Proclamation and Order to Show Cause, additional SIC outages and disruptions have continued to occur. There are significant outages impacting Puukapu, Kahikinui, and Keokea. Other outages and disruptions have been reported to the Department on Molokai. The Department itself has continued to experience sporadic outages of SIC service. The only Department offices that have not experienced any outages or disruptions are located on Kauai and utilize a different telecommunications provider.

    19.    I am aware that multiple beneficiaries and SIC customers attempted to switch their service to other more reliable providers. However, efforts to "port" or switch their number were often delayed because of inaction by SIC.

    20.    On June 3, 2024, the FCC sent SIC a cease and desist letter. SIC was instructed to stop improper disconnection notices and to come into compliance with Federal law. To mitigate the impacts of SIC's inaction, on June 6, 2004, the FCC issued an Emergency Order in CC Docket No. 95-116 to facilitate uninterrupted telephone service for Hawaiian Home Lands residents desiring to port their telephone numbers away from SIC to a new service provider. The Department believes that this order has provided important assistance to

beneficiaries and has helped to mitigate the impacts of SIC's service outages and disruptions.

21. On June 26, 2024 I was contacted by a contractor for Ulupalakua Ranch on Maui. The contractor had identified an SIC microwave relay at a location identified as Keonehunehune. This site is believed to provide connectivity to the Kahikinui community. The contractor provided photographs of the site and confirmed that it was without power and that batteries at the site had not been maintained. True and correct copies of the photographs are attached as Exhibit H3.

22. Contrary to the Emergency Proclamation and the Order to Show Cause, it does not appear that the Keonehunehune microwave relay station has been properly maintained to prevent disruptions of service.

23. I understand that a judgment was entered in this case against SIC in 2020 in an amount in excess of $138 million. SIC has had four years to resolve that judgment but it, and its parent company, Waimana, have apparently been unable to pay that judgment.

24. At a hearing before the Public Utilities Commission on June 17, 2024, Albert Hee testified that "We terminated service because we ran out of money. We didn't research anything. We ran out of money." This confirms that the disruptions and service outages did not occur because of the auction on May 20, but rather because in Mr. Hee's words they "ran out of money".

25. Mr. Hee also testified that SIC's termination of services was an effort to get "out of the way." However, SIC remains in the way: out of money, subject to an FCC cease and desist directive, subject to a PUC order to show cause, unable to restore service, unable to maintain equipment, unwilling to allow alternative providers access to conduits in accordance with Federal law, and unwilling to properly assist in porting customers to reliable providers. Under these circumstances, SIC should not be permitted to veto the proposed sale to Hawaiian Telcom.

26. The Department believes that it is in the best interest of its beneficiaries to bring this chapter of uncertainty and regulatory non-compliance to a close by approving the proposed sale. Given all of the present circumstances, the Department anticipates that a reliable, well-capitalized, and regulatory compliant provider such as Hawaiian Telcom provides a better path forward.

27. Hawaiian Telcom already provides telecommunications services to customers within the Hawaiian Home Lands and surrounding areas and it has conduit access agreements already in place that will facilitate reasonable, reliable, and competitive telecommunications services as required by Federal law.

28. The Department believes that if a competent provider is in control of the conduits, reliable, improved, modern service can be delivered in a commercially reasonable time-frame. This is a superior alternative to the current

state of uncertainty and unreliability and a superior alternative to being forced to rely on what has become an antiquated and degraded system that relied on Federal subsidies that are no longer available.

 I declare under penalty of law that the foregoing is true and correct to the best of my knowledge, information, and belief.

 DATED: Honolulu, Hawaiʻi, June 27, 2024.

                    _____
                    JAREN TENGAN