KIRK T. MANHARDT
SHANE HUANG
MINIARD CULPEPPER JR.
United States Department of Justice
P.O. Box 875
Ben Franklin Station
Washington, DC 20044-0875
Telephone: (202) 616-0341
Email: shane.huang@usdoj.gov

Attorneys for the United States

UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>SANDWICH ISLES COMMUNICATIONS, INC., *et al*<br><br>Defendants. | CIV. NO. 18-00145 JMS-RT<br><br>ORDER (1) GRANTING THE UNITED STATES OF AMERICA'S MOTION FOR ORDER APPROVING CONFIRMATION OF EXECUTION SALE; AND (2) CONFIRMING EXECUTION SALE |

## ORDER (1) GRANTING THE UNITED STATES OF AMERICA'S MOTION FOR ORDER APPROVING CONFIRMATION OF EXECUTION SALE; AND (2) CONFIRMING EXECUTION SALE

The Court, after finding that due and adequate notice of the Motion having been given and that no other or further notice being needed under the circumstances, and after consideration of the Motion, the Memorandum in Support

of the Motion, the Declaration of Channing Iwamuro, the Declaration of Counsel, and the exhibits attached thereto, finds and determines that:

  i. On April 22, 2024, Hon. Rom A. Trader, United States Magistrate Judge, entered that certain Order Approving the United States of America's Unopposed Motion for Order Approving Execution Sale Procedures [Docket No. 535] (the "Sale Procedures Order").

  ii. Pursuant to the Sale Procedures Order, on May 13, 2024, Hawaiian Telcom, Inc., a Hawaii corporation, ("HTI" or the "Buyer") submitted a qualifying bid (the "HTI Bid") to purchase certain personal property assets (as defined below, the "Purchased Assets") of defendant Sandwich Isles Communications, Inc. ("SIC" or "Defendant").

  iii. Pursuant to the Sale Procedures Order, at 12:00 p.m. on May 20, 2024, the United States Marshal for the District of Hawaii (the "Marshal") conducted the execution sale ("Execution Sale") by public auction of the personal property assets of SIC identified in the Writ of Execution [ECF. No. 260] pursuant to the applicable provisions of Chapter 651 of the Hawaii Revised Statutes (the "Auction") and determined that (a) the HTI Bid was the highest and best bid for the Purchased Assets; and (b) there were no other bids for the remainder of the SIC assets for sale.

iv. On June 10, 2024, the Plaintiff filed The United States of America's Motion for Order Approving Confirmation of Execution Sale (the "Motion"), ECF No. 544.

v. The Motion came on for hearing on July 2, 2024 (the "Confirmation Hearing").

The Court, after finding that due and adequate notice of the Motion has been given, and that no other or further notice is needed under the circumstances, and after consideration of the Motion, the Memorandum in Support of the Motion, declarations, supporting exhibits, any and all objections filed to the Motion, and the arguments made at the Confirmation Hearing, hereby finds and determines that:

A. The Execution Sale was properly conducted in accordance with the Sale Procedures Order and applicable law, and due and adequate notice of the Execution Sale was given, consistent with the terms of the Sale Procedures Order;

B. HTI has complied in all respects with the provisions of the Sale Procedures Order, and HTI's Bid was consistent and complied with the provisions of the Sale Procedures Order;

C. HTI's Bid of $500,000.00 (the "Purchase Price"), is the highest and best bid for the following personal property assets of SIC identified in the Writ of Execution (collectively, the "Purchased Assets"):

   i. All conduits, ducts, subducts, innerducts, manholes, handholes, pullboxes, riser conduits, connected panel boxes and the like which are generally interconnected and capable of protecting and housing underground communications cables and facilities used in the provision of telephone service, in each case to the extent such assets have not already been purchased by HTI (collectively, the "Conduit System").

   ii. All existing and pending entitlements to the extent not already owned by HTI, including, SIC's interests in all memoranda of agreement, easements, leases, license agreements (including any interest in Department of Hawaiian Home Lands License Agreement No. 372 dated May 9, 1995), letters of approval, special area management permits, franchises, and rights of way or rights of interest, necessary to build, construct, repair, maintain, and operate the Conduit System.

  D. The Purchase Price is fair and equitable, constitutes fair consideration, and is the highest price that could be obtained for the Purchased Assets under the circumstances;

  E. The levying procedures used by the Marshal to levy upon the Purchased Assets was appropriate and consistent with all applicable law, including applicable laws of the State of Hawaii;

  F. Sale of the Purchased Assets to HTI pursuant to the terms of this Order (the "Sale") is warranted under the circumstances;

  It is THEREFORE ORDERED, ADJUDGED and DECREED that:

  1. All objections to the Motion are hereby OVERRULED, and the Motion is APPROVED in all respects.

  2. The Execution Sale by the Marshal is hereby ratified, approved and confirmed by this order (the "Sale Order").

  3. The Marshal is ordered and directed to make good and sufficient conveyance of the Purchased Assets to HTI by way of a quitclaim deed, quitclaim bill of sale (certificate of purchase or such other document or deed) or such other conveyance documents in a form acceptable to Plaintiff and HTI (collectively the "Conveyance Documents").  The Marshal is authorized and directed to make, execute and deliver to the order of HTI such conveyances of the Purchased Assets as may be requested by HTI.

  4. Upon the closing of the Sale pursuant to the Conveyance Documents (the "Closing"), all of SIC's right, title and interest in and to the Purchased Assets shall be transferred to HTI free and clear of any and all liens, encumbrances, claims,

debts, liabilities of any kind, obligations, mortgages, restrictions, hypothecations, charges, instruments, leases or subleases, licenses, options, deeds of trust, security interests, other interests, conditional sale or other title retention agreements, pledges, other liens (including mechanic's, materialman's, possessory and other consensual and non-consensual liens and statutory liens), judgments, demands, easements, servitudes, rights-of-way, encroachments, restrictive covenants, restrictions on transferability or other similar restrictions, rights of first refusal, offsets, contracts, recoupment, rights of recovery, or rights of use or possession, in each case with respect to those items listed above, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under doctrines of successor liability (collectively the "Interests or Claims").

5.      Upon the Closing, all entities or persons, including SIC and any party claiming through SIC including any affiliate of SIC, are permanently and forever prohibited, barred, estopped, and permanently enjoined from asserting against HTI, and its permitted successors, designees, and assigns, or property, including the Purchased Assets, any Interests or Claims of any kind or nature whatsoever arising

6

out of or relating to the Purchased Assets and arising prior to the Closing Date, including, without limitation, under any theory of successor or transferee liability, *de facto* merger, alter ego or continuity liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated.

6. The Purchased Assets include all elements of the Conduit System identified in the Writ of Execution as used by SIC to offer and provide telephone and other telecommunications services from time to time including tariffed voice, long-distance, VOIP, bundled internet and data, including all such assets (a) as described and financed by the Rural Utility Service (the "RUS") (or as replacements as set forth in the loan documents between RUS and SIC) and (b) as evidenced by SIC's public tariff as being used historically by SIC to provide telephone service to customers on the Hawaiian Home Lands including voice, bundled internet, long-distance, VOIP, and data services, each as more fully set forth in SIC's PUC Tariff No. 1 and its amendments. SIC owns all exclusive right, title and interest in and to the Purchased Assets necessary to transfer and convey the Purchased Assets in their entirety.

7. Subject to this Sale Order, the transfer of Purchased Assets to HTI pursuant to the Conveyance Documents and the consummation of the Sale and any related actions contemplated thereby do not require any consents other than as

specifically provided for in this Sale Order and constitute a legal, valid, and effective transfer of the Purchased Assets, and will vest HTI with all of SIC's right, title, and interest in and to the Purchased Assets free and clear of all Interests or Claims.

8. Upon the Closing, SIC, any affiliate of SIC, and any and all other persons or entities in possession and/or control of the Purchased Assets shall relinquish possession of and are hereby directed to turn over the Purchased Assets to HTI.

9. Upon the Closing, SIC, its affiliates and all persons claiming by, through or under them shall be perpetually barred of and from any and all right, title, interest, and claims at law or in equity, in and to the Purchased Assets and every part thereof.

10. The HTI Bid complied with all provisions of the Sale Procedures Order. The proposed use of property will extend and accelerate the ability to provide modern communications services (including broadband), information services and associated communications services to residents of the Hawaiian Home Lands. HTI is a good faith purchaser, and the Purchase Price is fair and reasonable and is not less than the value of the Purchased Assets. The Auction and Sale are free from collusion of any kind.

11. HTI is not and shall not be deemed a "successor" to SIC or any affiliate of SIC by virtue of the Sale. HTI will not, *de facto* or otherwise, merge with or into

SIC or SIC's affiliates, and is not, nor shall not be deemed, a mere continuation, alter ego or substantial continuation of SIC or any of SIC's affiliates under any theory of law or equity as a result of the Sale. As a result of the Sale, HTI shall not have any successor liability for any Claims or Interests asserted against SIC.

12. HTI shall not have any liability, responsibility or obligation relating to Purchased Assets prior to the closing of the Sale, and SIC shall continue to operate the Purchased Assets in compliance with law and in the ordinary course of business until the closing of the Sale. Specifically, and without limitation, SIC and any affiliate of SIC shall promptly process and honor all conduit occupancy requests up to the closing of the Sale in the ordinary course of business consistent with all applicable laws and regulations. Further, SIC and any affiliate of SIC shall promptly process and honor all number porting requests in the ordinary course of business both before and after the Sale.

13. HTI shall not assume any liabilities, duties or obligations with respect to any assets of SIC that are not Purchased Assets. HTI is not assuming any of SIC's customer relationships through the Sale and, as a result of the Sale, shall have no responsibility for continuity of service to SIC's existing customers, other than providing access to the Conduit System to SIC and/or other providers as is necessary to service those customers, with such access to be consistent with HTI's current

policies, regulatory obligations and any existing or future agreements between HTI and such parties that allow for such access.

14. In connection with the Closing, a certified copy of this Sale Order evidencing the release, cancelation and termination provided herein of any Interests or Claims of record on the Purchased Assets may be filed, recorded with or provided to the appropriate filing agents, filing officers, administrative agencies or units, governmental departments, secretaries of state, federal, state and local officials and all other persons, institutions, agencies and entities who may be required by operation of law, the duties of their office or contract, including, for the avoidance of doubt, the Department of Hawaiian Home Lands.

15. The Sale may not close until all regulatory approvals, if any, necessary for the transfer of the Purchased Assets to HTI have been obtained from applicable governmental authorities.

16. Notwithstanding any other provision of this Sale Order or any other Order of this Court, no sale, transfer or assignment of any rights and interests of SIC in any federal license or authorization issued by the Federal Communications Commission ("FCC") shall take place prior to the issuance of FCC regulatory approval for such sale, transfer or assignment pursuant to the Communications Act of 1934, as amended, and the rules and regulations promulgated under such statutes. The FCC's rights and powers to take any action pursuant to its regulatory authority,

including, but not limited to, imposing any regulatory conditions on such sales, transfers and assignments and setting any regulatory fines or forfeitures, are fully preserved, and nothing herein shall proscribe or constrain the FCC's exercise of such power or authority to the extent provided by law.

17. HTI shall pay the Marshal's fees and costs in the total amount to be finalized and agreed upon between the Marshal and HTI after Closing, plus all reasonable costs and expenses incurred in connection with the Closing of the Sale, including without limitation, the cost of conveyance, including preparation of the conveyance documents, payment of conveyance tax (if any), escrow and recording fees, any proof of title or insurance and any notary fees.  In the event the Marshal and HTI cannot come to agreement on the amount of fees and costs, either party may bring the issue to the Court for resolution.

18. The Clerk of Court shall issue a Writ of Possession and Writ of Assistance with respect to the Purchased Property in favor of HTI upon HTI's request.

19. In the event of any conflict between this Sale Order and the Conveyance Documents or any prior orders of this Court, this Sale Order shall control in all respects.

20. This Sale Order shall be effective and enforceable immediately upon entry.  Any party objecting to this Sale Order must exercise due diligence in filing

an appeal and pursuing a stay within the time prescribed by law and prior to the Closing Date or risk its appeal being foreclosed as moot.

21.   This Court shall retain exclusive jurisdiction over any matters relating to the Sale and for the purposes of interpretation, implementation and enforcement of this Order.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, July 2, 2024



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*United States of America v. Sandwich Isles Communications, Inc., et al.*, Order (1) Granting the United States of America's Motion for Order Approving Confirmation of Execution Sale; and (2) Confirming Execution Sale