IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>SANDWICH ISLES<br>COMMUNICATIONS, INC., et al.<br><br>　　　　　Defendants. | CIV. NO. 18-00145 JMS-RT<br><br>ORDER EXPLAINING REASONS<br>FOR OVERRULING OBJECTIONS<br>TO CONFIRMATION OF<br>EXECUTION SALE |

### ORDER EXPLAINING REASONS FOR OVERRULING OBJECTIONS TO CONFIRMATION OF EXECUTION SALE

On July 2, 2024, the court issued an "Order (1) Granting the United States of America's Motion for Order Approving Confirmation of Execution Sale; and (2) Confirming Execution Sale" ("Confirmation Order"). *See* ECF No. 566.[1] The Confirmation Order approved a bid by Hawaiian Telecom, Inc. ("HTI") for certain assets of Defendant Sandwich Isles Communications, Inc. ("SIC"), and confirmed the corresponding May 20, 2024 execution sale. The substance of the Confirmation Order was discussed in great detail at the July 2, 2024 hearing, with

---

[1] The Confirmation Order resulted from a Motion to Confirm by Plaintiff United States of America ("Plaintiff" or "the United States"), ECF No. 544, an execution sale conducted pursuant to an April 22, 2024 "Order Approving the United States of America's Unopposed Motion for Order Approving Execution Sale Procedures" (the "Procedures Order"), ECF No. 535.

the proposed form of the Confirmation Order having been prepared by counsel after negotiations regarding the form of the Order.  *See* ECF No. 565.  And at the July 2, 2024 hearing, the parties agreed that the court could issue a separate order briefly explaining in writing—in addition to the reasons discussed at the hearing—why the court was overruling objections to confirmation of the execution sale made by SIC and by co-Defendant/bidder Waimana Enterprises, Inc. ("Waimana").[2]  Accordingly, this Order provides brief additional explanations for overruling the objections.  Because the parties are familiar with the objections and their context, the court proceeds directly to its explanations.

1. **Section 4(d)(ix) of the Procedures Order Does Not Require Qualified Bids to Assume All of SIC's Obligations**

    SIC and Waimana argue that HTI's bid is not qualified because it violates Section 4(d)(ix) of the Procedures Order which requires a bidder to:

    > Document the proposed use of the Property, including how the proposed use of the Property shall benefit the residents of the Hawaiian Home Lands and the bidder's capability to provide continuity of service in accordance with Sandwich Isles Communications, Inc.'s License from the date the court confirms the purchase.

ECF No. 535 at PageID.9340.  This section does not require a bidder to continue to

---

[2] SIC is a wholly-owned subsidiary of Waimana.  *See United States v. Sandwich Isles Commc'ns, Inc.*, 398 F. Supp. 3d 757, 764 (D. Haw. 2019), *aff'd*, 833 F. App'x, 718 (9th Cir. 2021) (mem.).

provide service to all of SIC's current customers. The section requires a bidder—like HTI's bid does—to document its proposed use of the bid-for property, and explain how that proposed use benefits the residents of Hawaiian Home Lands and the bidder's capabilities regarding continuity of service. HTI has done that, most particularly as detailed in sections A.4 and B.10 of its bid. *See* ECF No. 544-5 at PageID.9391–9392, 9395.

       The Procedures Order specifically contemplates that a qualified bid may purchase "all or a portion of the Property." ECF No. 535 at PageID.9339; *see also id.* at PageID.9340 (allowing bid for "any subset, lot, or package thereof"). This is exactly what HTI did in purchasing the conduit system and entitlements necessary to own and operate the conduit system. *See* ECF No. 544-5 at PageID.9392–9393. HTI's bid documents how such a purchase benefits residents of the Hawaiian Home Lands, and gives several reasons why HTI's decision not to purchase SIC's other assets would best enhance continuity of service. *Id.* at PageID.9391–9392. Regarding continuity, HTI further explained that:

> it is committed to providing nondiscriminatory access to the Conduit System to other carriers, including SIC and any subsequent owners of SIC's customer relationships, in order to ensure continuity of service to beneficiaries. HTI's acquisition of the Conduit System will allow HTI the ability to integrate it with HTI's existing infrastructure, and an appropriate return on [the Rural Utilities Service's ("RUS")] significant investment in the Hawaiian Home Lands can therefore be preserved and

> amplified. By placing the Acquired Assets . . . in the hands of a responsible, experienced local operator, RUS can assure that the assets are more rapidly deployed in a manner which will result in the Hawaiian Home Lands' beneficiaries having a modern, superior choice for their telecommunications and broadband needs.

*Id.* at PageID.9392. In short, HTI more than complied with § 4(d)(ix) of the Procedures Order.[3]

### 2. HTI's Bid Is Not Subject to Contingencies or Conditions

SIC and Waimana also object because HTI's bid contains "contingencies or conditions," contrary to § 4(d)(v) of the Procedures Order.

---

[3] It is important to recognize that, as for continuity of service, the Department of Hawaiian Home Lands specifically agrees that confirming the execution sale is "in the best interest of its beneficiaries," and that "a reliable, well-capitalized, and regulatory compliant provider such as Hawaiian Telcom provides a better path forward." ECF No. 561 at PageID.9873. If anything, § 4(d)(ix), in conjunction with § 4(e)(vi) of the Procedures Order, confirms that the United States has discretion to consider how the selected bid would best benefit residents of Hawaiian Home Lands. *See* ECF No. 535 at PageID.9341 (Section 4(e)(vi) of the Procedures Order stating that "Plaintiff may, in its discretion, take into consideration the bid's benefits to the residents of the Hawaiian Home Lands.").

In that regard, the court disagrees with Waimana's position asserted at the July 2, 2024 hearing that such discretion is given only to "Topping Bids" as defined elsewhere in the Procedures Order. The discretion is in § 4(e)(vi), which is titled "Successful Bid," and refers to Plaintiff's "determining which bid is the highest and best bid for the Property or any subset, lot, or package thereof." *Id.* The discretion is plainly given in Plaintiff's selection of a "bid," not just a "Topping Bid."

In any event, after reviewing the evidence submitted by all parties on the Motion to Confirm, the court agrees with Plaintiff's argument that "Sandwich Isles has not identified any alternative to the proposed sale that would be more likely to continue service [to all residents of the Hawaiian Home Lands]." ECF No. 557 at PageID.9444. Indeed, the evidence demonstrates that *Waimana's* backup bid is not in compliance with § 4(d)(ix) of the Procedures Order in that Waimana has not "[d]ocument[ed] . . . [Waimana's] capability to provide continuity of service in accordance with [SIC's] License from the date the court confirms the purchase." ECF No. 535 at PageID.9340.

HTI's bid indeed contained language (1) requiring "due diligence" (stating as a "material element to the Bid" that "[a]s set forth in Paragraph 4 of the Term Sheet [attached to the Procedures Order], . . . 'SIC Parties' will confirm in writing that SIC is the sole owner of the Acquired Assets"), ECF No. 544-5 at PageID.9394; and (2) requiring that a confirmation order be "not subject to appeal," *id.* at PageID.9398.[4]  Even assuming these provisions could constitute "contingencies or conditions" placed on HTI's bid, HTI agreed at the July 2, 2024 hearing (and/or in its statement filed on June 27, 2024, ECF No. 559) to waive the "due diligence" provision, and clarified the intent of the "no appeal" language.  Accordingly, no such language was included in the Confirmation Order.  The sale to HTI is not contrary to § 4(d)(v) of the Procedures Order.

3.     **Other Grounds Asserted by SIC and Waimana Are Not Persuasive**

SIC and Waimana also argue that HTI's bid violates the Federal Communications Act ("FCA"), the Rural Electrification Act ("REA"), and the Hawaiian Homes Commission Act ("HHCA").  *See* ECF Nos. 549 at PageID.9412–9413; 558 at PageID.9466–68.  Although SIC's objections in this regard are less than clear, SIC appears to have admitted at the July 2, 2024 hearing

---

[4] Neither SIC nor Waimana specifically objected to the "no appeal" provision, although the court questioned whether it could impose such a term absent consent.  Nevertheless, the "not subject to appeal" term is not included in the Confirmation Order.

that these arguments rise or fall based upon the same—mistaken—belief that the Procedures Order requires a qualifying bid to assume SIC's obligations to provide continuity of service to all residents of Hawaiian Home Lands.  But, in any event, the court agrees with arguments of the United States, the Department of Hawaiian Home Lands, and HTI that HTI's bid does not violate those statutes.  *See* ECF Nos. 557 at PageID.9440–9443; 559 at PageID.9550–9554; 561 at PageID.9863–9865.

In particular, SIC's argument that certain "porting requests," ECF No. 549 at PageID.9412, violate 47 U.S.C. § 251(f) of the FCA is inconsistent with the Federal Communications Commission's Emergency Order dated June 7, 2024, which among other things "waives the [FCC's] number porting rules, requirements, and related processes to facilitate uninterrupted telephone service for Hawaiian Home Lands residents desiring to port their telephone numbers away from [SIC] to a new service provider."  ECF No. 559-9 at PageID.9853; *see also* ECF No. 559 at PageID.9551 (explaining why § 251(f)(1)'s "Rural Exemption does not apply to number portability"); ECF No. 557 at PageID.9441 n.6 (similar explanation).  And HTI's bid is consistent with the REA's purpose to furnish and improve telephone service in rural areas set forth in 7 U.S.C. § 921.  *See* ECF Nos. 557 at PageID.9442; 559 at PageID.9553–9554.

Finally, the court agrees with the United States, HTI, and the

Department of Hawaiian Home Lands that HTI's bid does not violate "License 372" and the HHCA.  *See* ECF Nos. 557 at PageID.9442–9443; 559 at PageID.9552–9553; 561 at PageID.9864–9865.  This question was resolved in detail in *Sandwich Isles Communications, Inc. v. Hawaiian Telcom, Inc.*, 2023 WL 6378626, at *25 (D. Haw. Sept. 29, 2023) (explaining why the HHCA does not apply to the levy or execution sale of License 372, as the HHCA "plainly delineates between leases and licenses").  The court agrees with and will not revisit that decision in this proceeding.

For the foregoing reasons, as well as those discussed at the July 2, 2024 hearing on the Motion to Confirm, the court overruled SIC's and Waimana's objections and issued its July 2, 2024 Confirmation Order.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, July 10, 2024.



 /s/ J. Michael Seabright
J. Michael Seabright
United States District Judge


*United States of America v. Sandwich Isles Communications, Inc., et al.*, Civ. No. 18-00145 JMS-RT, Order Explaining Reasons for Overruling Objections to Confirmation of Execution Sale